**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

        v.                                                          15-CR-33-A
                                                                    **DECISION AND ORDER**

JULIO CONTRERAS,

        Defendant.
_____

This case is before the Court on Defendant Julio Contreras' motions for severance and an immediate trial. For the reasons stated below, the Court denies the motions.

## BACKGROUND

Contreras is one of five Defendants charged in a fifteen-count superseding indictment involving the alleged activities of the Schuele Boys, an alleged gang that operated on the East Side of Buffalo. Resolving Contreras' motions for severance and an immediate trial requires familiarity with the procedural history of this case. The Court will therefore recount that history in detail.

This case began on February 20, 2015, when a grand jury handed up a one-count indictment against Aaron Hicks and Marcel Worthy. _See_ Docket No. 1. The indictment charged Hicks and Worthy with conspiring to possess with intent to distribute, and to distribute, cocaine. Magistrate Judge Scott, to whom the Court referred this case for all pretrial matters, arraigned Hicks and Worthy and set oral argument on all pretrial motions for July 22, 2015.

A month before oral argument, however, the grand jury handed up a superseding indictment charging Contreras, as well as Hicks, Worthy, and two other defendants, with

1

a number of crimes, including a RICO conspiracy, a narcotics conspiracy, firearms offenses, and murder in aid of racketeering.

Contreras is charged in three of the superseding indictment's fifteen counts. Contreras is first charged in Count 1, which charges all five Defendants with a RICO conspiracy. *See* 18 U.S.C. § 1962(d). Specifically, Count 1 alleges that the Schuele Boys was an "enterprise" within the meaning of RICO. The superseding indictment further alleges that the Schuele Boys operated for nearly fifteen years on the East Side of Buffalo, and that they also "maintained associates in other areas of Western New York, Western Pennsylvania, Northern Georgia, and Southern Texas." Docket No. 24 at 2-3. The superseding indictment alleges that the Schuele Boys engaged in, among other illegal activities, narcotics distribution and the threatened and actual use of violence—including murder. *Id.* at 3-4.

The superseding indictment then lists forty-one overt acts that some or all of the Defendants allegedly committed in furtherance of the alleged racketeering conspiracy.[1] Contreras is alleged to have been involved in ten of those acts. Most of Contreras' alleged activity involves travel between Texas and Buffalo and cocaine distribution in and around Buffalo. Count 1 also alleges as an overt act that Contreras "possessed equipment and machinery for manufacturing and modifying parts, including lower receivers, of AK-47 rifles." *Id.* at 11.

---

[1] "To prove a RICO conspiracy under 18 U.S.C. § 1962(d), the Government need not prove 'overt acts' as it must, for example, under the general conspiracy statute, 18 U.S.C. § 371." *United States v. Nance*, 168 F. Supp. 3d 541, 546 n.2 (W.D.N.Y. 2016) (citing *Salinas v. United States*, 522 U.S. 52, 63 (1997)). "[T]hese additional allegations," however, "do not render the Superseding Indictment defective." *Id.* (quotation marks omitted). To the contrary, overt act allegations in a RICO conspiracy may lessen the need to order a bill of particulars. *See id.* at 547 (noting that, in cases alleging a RICO conspiracy, the Government may have an 'obligation to particularize the nature of the charge' more so than the Government 'might . . . in the prosecution of crimes of more limited scope'") (quoting *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988)).

Count 2 of the superseding indictment, which is also brought against all five Defendants, alleges a conspiracy to distribute cocaine, cocaine base, and marijuana over an approximate fifteen-year period. *See* 21 U.S.C. § 846. Finally, the last charge against Contreras, Count 4, alleges that over a five-year period he possessed a firearm in furtherance of drug trafficking activity. *See* 18 U.S.C. § 924(c)(1)(A).

On July 8, 2015—approximately four months after the grand jury handed up the original indictment—Judge Scott arraigned all Defendants, other than Contreras, on the superseding indictment. Several days later, the Government notified Judge Scott that Contreras had been apprehended in Mexico (*see* Docket No. 94 at 2), and slightly more than a month later, on August 20, Judge Scott arraigned Contreras in this District on the superseding indictment. In the interim, Hicks and Worthy both obtained new counsel.

A week after Contreras' arraignment in this District, Judge Scott held a detention hearing and ordered Contreras detained pending trial. Because all Defendants had, by that point, been arraigned, Judge Scott also rescheduled oral argument on all Defendants' pretrial motions for November 24. Over the next several months, Judge Scott granted several requests by Arrington, Hicks, and Worthy for extensions of time to file pretrial motions, ultimately rescheduling oral argument for all five Defendants for May 25, 2016.

As the date for oral argument approached in spring 2016, several other developments further delayed this case. On April 21, 2016, Worthy requested an extension of time to file pretrial motions, and his second attorney moved to withdraw because of other professional commitments. Counsel for Arrington also moved for Judge Scott to determine whether counsel's prior representation of another client

conflicted him from continuing to represent Arrington.  On June 1, 2016, Judge Scott relieved counsel for Worthy and determined that Arrington (who had consulted with *Curcio* counsel[2]) had knowingly and voluntarily waived his attorney's potential conflict. Judge Scott then rescheduled oral argument on all pretrial motions for August 29, 2016. On August 1, however, Arrington and Worthy moved for another extension of time to file pretrial motions.  Judge Scott granted those motions and again rescheduled oral argument on pretrial motions for all five Defendants for October 11, 2016.  Judge Scott held oral argument on that date.

As these events occurred, Contreras began asserting his speedy trial rights.  On April 19, 2016, Contreras made a demand for an immediate trial pursuant to the Speedy Trial Act "as well as the United States Constitution."  Docket No. 75.  And on May 12, 2016, Contreras moved to sever his case from those of his codefendants.  Beginning on that date, Contreras also began objecting to the continued exclusion of time under the Speedy Trial Act.  *See* Docket Nos. 87, 96, & 106.  Contreras has not filed any pretrial motions before Judge Scott.  He instead requests an immediate trial.

## DISCUSSION

The Speedy Trial Act "imposes a unitary time clock on all co-defendants joined for trial."  *United States v. Vasquez*, 918 F.2d 329, 337 (2d Cir. 1990).  As a result, "delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants."  *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986).  The Act, however, contains an exception for cases such as this one: it excludes from the speedy trial clock "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run

---

[2]  *See United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982).

and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). As its language suggests, the Speedy Trial Act's codefendant exclusion is triggered *only* "[i]f a defendant makes a motion for severance that is denied." *Vasquez*, 918 F.2d at 337. In that case, the defendant "is entitled to the benefit of the reasonableness limitation" in § 3161(h)(6). *Id.*

Contreras, as noted, has moved for severance. If the Court denies that motion (as it will, for the reasons explained below), the Court must then "examine the reasonableness of any delay caused by [Contreras' co-defendants] before time under the Speedy Trial Act can be excluded as against" Contreras. *United States v. Lockwood*, No. 11-CR-085, 2012 WL 6204194, at *3 (W.D.N.Y. 2012). If § 3161(h)(6)'s reasonableness limitation is not satisfied, it may be appropriate to sever Contreras on speedy trial grounds.

### A.  Whether to grant Contreras' severance motion

Federal courts have a "preference . . . for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). A number of equitable and practical considerations support this preference. Joint trials "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Joint trials also "enable[e] more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit." *Id.* In addition, joint trials promote an efficient use of the Court's resources, as well as the time and resources of the Government and witnesses. *Cf. id.* (noting that separate trials require "that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to

repeat the inconvenience (and sometimes trauma) of testifying").  And, finally, joint trials prevent gamesmanship, because severing defendants has the effect of "randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand."  *Id.*  In short, "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together."  *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).  Thus, "[j]oint trials are particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy."  *Id.*

These considerations are not absolute, however.  Federal Rule of Criminal Procedure 14(a) allows a court to sever trial of multiple defendants where joint trial "appears to prejudice a defendant."  But given the importance of the policies discussed above, severance under Rule 14(a) is available in only limited circumstances: "The Supreme Court has instructed that a district court should grant a Rule 14 severance motion only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (quoting *Zafiro*, 506 U.S. at 539).

Contreras has not met the standard for severance under Rule 14(a).  Although he identifies no "specific trial right" that might be impaired by joint trial, the only one that appears to be applicable here—Contreras' right to a speedy trial—has not yet been impaired, for the reasons discussed below.

Nor does Contreras argue that joint trial with his codefendants would result in spillover prejudice—that is, that joint trial might "prevent the jury from making a reliable

judgment" about Contreras' own "guilt or innocence." *Zafiro*, 506 U.S. at 539. This is for good reason: "[s]pillover prejudice may justify a severance . . . only where there is a risk that 'evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.'" *Nance*, 168 F. Supp. 3d at 554 (quoting *Zafiro*, 506 U.S. at 539). It is therefore irrelevant that Contreras is not alleged to have engaged in *all* aspects of the charged conspiracies, because Contreras cannot be prejudiced by evidence the Government uses to prove the scope and activities of the conspiracies of which the Government alleges Contreras was a member. In other words, if Contreras were tried on Counts 1 and 2 separately from his codefendants, the Government would still be permitted to introduce much of the same evidence it could introduce in a joint trial. Severance is rarely, if ever, warranted in such cases. *See United States v. Diaz,* 176 F.3d 52, 103 (2d Cir.1999) (holding that severance based on alleged spillover prejudice was not justified where "such [allegedly prejudicial] evidence would have been admissible against all . . . defendants [charged with RICO violations] even if each had been tried separately"). In short, the preference for joint trial is "particularly strong" (and the basis for severance is particularly weak) where codefendants "are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998).

Efficiency considerations also strongly favor joint trial in this case. As described above, Contreras is charged in Counts 1, 2, and 4 of the superseding indictment's fifteen counts. Count 1 alleges that Contreras and his codefendants engaged in a wide-ranging RICO conspiracy that spanned many years. Count 2 alleges that, over a time

period that almost entirely overlaps with the time period in Count 1, Contreras and his codefendants conspired to possess with intent to distribute, and to distribute, cocaine, cocaine base, and marijuana.  The efficiency of trying Contreras on Counts 1 and 2 at the same time that his codefendants are tried on Counts 1 and 2 is obvious: as to those Counts, all Defendants are alleged to have engaged in related and overlapping conspiracies that both spanned a number of years.  Trying the same case twice is inefficient, but the inefficiency is far greater when, as in this case, severance would require trying large, complex, and overlapping conspiracy cases multiple times.

Only as to Count 4, which is brought only against Contreras, might it make some sense to try Contreras separately.  But Count 4 also overlaps significantly with Counts 1 and 2.  As noted, Count 4 alleges that Contreras possessed a firearm in furtherance of drug trafficking crimes during a period that partially overlaps with the time periods at issue in Counts 1 and 2.  Thus, the reasons for trying Contreras with his codefendants on Counts 1 and 2 justify trying Count 4 at the same time as Counts 1 and 2: all three counts appear to be intertwined, and it would make little practical sense to try them separately.

There is therefore no basis to sever Contreras' trial from that of his codefendants.  His severance motion is therefore denied.

### B.  Whether delay attributable to Contreras' codefendants is reasonable

Because Contreras has made a severance motion that has now been denied, "he is . . . entitled to the benefit of the reasonableness limitation on delays affecting co-defendants" in § 3161(h)(6).  *Vasquez*, 918 F.2d at 337.

8

Few cases in the Second Circuit have interpreted § 3161(h)(6)'s reasonableness limitation. The Second Circuit, however, has suggested (but, it appears, never explicitly held) that "reasonableness is judged from the totality of the circumstances prior to trial." *United States v. Tobin*, 840 F.2d 867, 870 (11th Cir. 1988). *See United States v. Gambino*, 59 F.3d 353, 362 (2d Cir. 1995) ("The only inquiry [under § 3161(h)(6)] in . . . multiple defendant cases is whether the delay is 'reasonable'") (citing *Tobin*, 840 F.2d at 869-70)). Further, "[t]he reasonableness requirement" of § 3161(h)(6) "must be assessed in light of the strong presumption in favor of joint trials." *United States v. Jones*, 143 F. Supp. 3d 78, 91 (W.D.N.Y. 2015) (quotation marks omitted). *See also United States v. Pena*, 793 F.2d 486, 489-90 (2d Cir. 1986) (noting that Congress "intended that reasonable speedy trial time be excludable under Section 3161(h)[(6)] when necessary *to enable joint trials to go forward*") (emphasis added); *United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983) (noting that the Second Circuit's "one clock" rule for codefendants "is completely consistent with the legislative history of the Speedy Trial Act, which indicates that 'the purpose of [§ 3161(h)(6)] is to make sure that [the Act] does not alter the present rules of severance of defendants by forcing the government to prosecute the first defendant separately or be subject to a speedy trial dismissal motion.'") (quoting S. Rep. No. 1021, 93d Cong. 2d Sess. 38 (1974)) (first bracket modified to account for renumbering of codefendant exclusion).

The "starting point" for the Court's reasonableness analysis "is to determine what the speedy trial deadline" for Contreas "would have been had [he] not been indicted jointly with [his codefendants], and then to assess whether any delay beyond that deadline is reasonable." *United States v. Van Sichem*, No. SS 89 CR. 813 (KMW),

1990 WL 41746, at *1 (S.D.N.Y. Apr. 2, 1990). *See also United States v. Nguyen*, 94-CR-241 (LLS), 1995 WL 380122, at *1 (S.D.N.Y. June 26, 1995) ("One benchmark used to assess whether such delay is reasonable is the time that would have elapsed on [the objecting defendant's] speedy trial clock had it not been altered by joinder of new defendants") (citing *Piteo*, 726 F.2d at 52-53). Contreras had his initial appearance in the Southern District of Texas on July 14, 2015. *See* Docket No. 125 at 1.[3] Because he made no pretrial motions, and assuming time was not otherwise excluded, Contreras would have been entitled to trial seventy days later—that is, by September 22, 2015. *See* 18 U.S.C. § 3161(c)(1). The question, then, is whether the thirteen-and-a-half months that have passed since September 22, 2015 are reasonable under "the totality of the circumstances." *Tobin*, 840 F.2d at 870.

After considering the factors set forth above, the Court concludes that the time that has elapsed since September 22, 2015 is "reasonable" under § 3161(h)(6). Severance on speedy trial grounds is, therefore, not warranted. This period is reasonable, first, because it has resulted from Contreras' codefendants proceeding through typical motion practice so that they, too, will be ready for trial. Contreras, of course, is not charged with every crime alleged in the superseding indictment and, from his viewpoint, delay caused by his codefendants may seem unreasonable. But the Court must assess the reasonableness of the time that has passed in light of the fact that Congress included § 3161(h)(6) in the Speedy Trial Act so that time would be "excludable . . . when necessary to enable joint trials to go forward." *Pena*, 793 F.2d at

---

[3] The docket sheet from the Southern District of Texas does not state whether Contreras was arraigned on the superseding indictment at his initial appearance, but the Court assumes that to be the case.

489-90.   In other words, § 3161(h)(6) excludes the time it has taken Contreras'

codefendants to arrive at the trial-ready stage, provided that that time is reasonable.

The Court finds that that time is reasonable because, in the Court's extensive

experience with RICO prosecutions in this District in recent years, this case has moved

forward with "customary promptness . . . . given the presence of multiple defendants,

the large number of allegations and the complexity of the racketeering case."  *United*

*States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012) (rejecting a Sixth Amendment speedy

trial claim where twenty-two months elapsed between indictment and trial).

The delay in this case has had two main causes, both of which are attributable

only to Contreras' codefendants: requests to continue the pretrial motions schedule, and

issues concerning attorney representation.   The Court has carefully considered the

nature and length of each type of delay, and the Court concludes that, under "the totality

of the circumstances," *Tobin*, 840 F.2d at 870, the delay caused by these two factors

has been "reasonable."  18 U.S.C. § 3161(h)(6).

First, the multiple continuances requested by Contreras' codefendants resulted in

an approximate eleven-month delay between the date Judge Scott first set for oral

argument on all Defendants' pretrial motions and the date argument ultimately

occurred.[4]  The Court recognizes that at least some minimal delay due to constraints on

counsels' time is almost always inevitable, especially in a case, like this one, involving a

number of attorneys.   Even so, however, the period of counsel-requested delay in this

case approaches the edge of "reasonableness" under § 3161(h)(6).   Nonetheless, the

Court notes that Judge Scott recently held oral argument on all Defendants' pretrial

---

[4]   The Court relies on the oral argument date for pretrial motions because that date generally triggers a court's thirty-day advisement period under the Speedy Trial Act.  *See* 18 U.S.C. § 3161(h)(1)(H)).   That date therefore provides a rough estimate of when a case is approaching the trial-ready stage.

motions. The case is therefore approaching a trial-ready position, and any further counsel-related delay of the length that has already occurred is unlikely. (In this regard, the parties are advised that the Court will likely disfavor extensive requests for extensions of time to object to Judge Scott's eventual Report and Recommendation.)

The second reason for delay in this case is the need for Judge Scott to resolve a number of issues concerning attorney representation. Again, the Court is cognizant that delays of this type inevitably occur in large gang-related RICO cases, particularly in a District, such as this one, with a relatively small federal criminal defense bar. But given the structural importance of ensuring each Defendant conflict-free counsel, and given the clear benefits of resolving choice-of-counsel issues earlier rather than later, the representation-related delay in this case has been reasonable. In considering this delay, the Court notes that, when entertaining representation-related issues, Judge Scott has also been sensitive to the delay that would result from granting such a request. *See, e.g.*, Docket No. 114 at 7:18-25 (Tr. of Aug. 18, 2015 proceedings before Judge Scott regarding representation of Defendant Worthy). Thus, the period of delay caused by representation-related issues is "reasonable." 18 U.S.C. § 3161(h)6).

The time it has taken Contreras' codefendants to arrive at a trial-ready position is also "reasonable" under § 3161(h)(6) for two other reasons. First, Contreras and his codefendants are relatively similarly situated. Put differently, although Contreras does not face the more serious murder charges contained in the superseding indictment,[5] Contreras' situation is not so different in kind from his codefendants' that severance

---

[5]    Defendants Worthy and Arrington are charged in Counts 5, 6, 7, and 9 with murder in aid of racketeering (*see* 18 U.S.C. § 1959(a)(1)) and discharge of a firearm in furtherance of a crime of violence causing death. *See* 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(j)(1). Both charges carry the possibility of a death sentence, but the Government has not sought such a sentence against any Defendant in this case.

might be warranted on speedy trial grounds. *See United States v. Byrd*, 466 F. Supp. 2d 550, 553 (S.D.N.Y. 2006) (noting, as part of § 3161(h)(6) analysis, that "there is a clear preference in the judicial system for jointly trying defendants who are indicted together, chiefly on efficiency grounds," but severing the only defendant out of six who was not death-penalty eligible and who would therefore be "subject to delays of months, or, more likely, years" due to death penalty-related considerations for other five defendants).

Nor, finally, is there any suggestion that the delay in this case is attributable to the Government's bad faith. *See Van Sichem*, 1990 WL 41746, at *2-4 (suggesting that this might be a factor in analyzing reasonableness under § 3161(h)(6)). To the contrary, the Government has not requested any continuances, and the Government represents that it provided the Defendants with the discovery required by Rule 16 over a year ago. *See* Docket No. 94 at 2.

Contreras makes three more arguments for severance. First, Contreras relies heavily on the Ninth Circuit's decision in *United States v. Hall*, 181 F.3d 1057 (9th Cir. 1999). In *Hall*, the Ninth Circuit held that a 77-day delay was unreasonable where the delay was sought to enable the defendant's codefendant to continue plea negotiations with the Government. The codefendant pled guilty five days before trial pursuant to a plea agreement in which he agreed to testify against the defendant. *Hall* is distinguishable on its facts. At oral argument, the Government represented that it had discussed a plea *only* with Contreras. Thus, assuming that *Hall*'s somewhat cabined view of reasonableness under § 3161(h)(6) is the law in the Second Circuit[6] (an issue

---

[6] *But see Gambino*, 59 F.3d at 362.

the Court need not, and does not, address), *Hall*'s concerns are not applicable in this case.

Second, Contreras makes reference to the length of time he has been detained pending trial. The Court is sensitive to this concern, but a defendant's "incarceration alone will not support a claim of prejudice sufficient to warrant severing him from the other defendants in this case." *Lockwood*, 2012 WL 6204194, at *4. Rather, if Contreras "is seeking release from pretrial detention, his claims would have been more appropriately raised in an application for bail." *Id.*

And third, in addition to the Speedy Trial Act, Contreras makes an unadorned reference to "the United States Constitution" as the basis for his severance request. Docket No. 75. Among the factors a Court must consider in assessing whether a Sixth Amendment speedy trial violation has occurred is "the length of delay," which "operates as a threshold inquiry: a *Barker* [*v. Wingo*, 407 U.S. 514 (1972)] analysis is triggered only if a delay is so long as to be 'presumptively prejudicial.'" *United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015) (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)). The Second Circuit has held that a twenty-two month delay between indictment and trial did not satisfy the first *Barker* factor where, as in this case, the delay was largely attributable to "the presence of multiple defendants, the large number of allegations and the complexity of the racketeering case." *Cain*, 671 F.3d at 296. Thus, because Contreras has not satisfied the "threshold" *Barker* inquiry, the Court need not address the remaining *Barker* factors.

Thus, for all the reasons set forth above, the Court finds that the time that has elapsed since Contreras would have been entitled to trial had he been indicted

individually is "reasonable."  18 U.S.C. § 3161(h)(6).  Contreras' motion for severance on speedy trial grounds is therefore denied.

## CONCLUSION

For the reasons stated above, Contreras' motions for severance and an immediate trial (Docket No. 86) are denied without prejudice.

**SO ORDERED.**


Dated: November 1, 2016                    *s/Richard J. Arcara*
      Buffalo, New York                    HONORABLE RICHARD J. ARCARA
                                    UNITED STATES DISTRICT JUDGE