UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

UNITED STATES OF AMERICA,


     v.                                                                    **DECISION AND ORDER**
                                                                                      15-CR-33-A
RODERICK ARRINGTON,

                     Defendant.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯


       Pending before the Court are various pretrial motions filed by *pro se* Defendant

Roderick Arrington and the Government, following the Second Circuit's remand for a

new trial after vacating Defendant's judgment of conviction.  The Second Circuit

determined that the trial evidence was sufficient to support each count of conviction, but

Defendant's Sixth Amendment right to conflict-free counsel was violated.  Oral

argument was heard on the pending pretrial motions on October 12, 2021.

       Initially, the Court is not fully persuaded that the Second Circuit, which remanded

this case for a new trial, intended that this Court also permit the filing of further pretrial

motions.  The Government's position since the Mandate was issued has been that "re-

litigating" pretrial matters, motions, or hearings, or permitting further discovery, is

improper, as the case was "remanded for trial" and no other purpose.  (Dkt. No. 541, p.

2; Dkt. No. 545, pp. 2-3; Dkt. No. 588, p. 37; Dkt. No. 635, ¶ 24; Dkt. No. 644).

       This Court is well-aware of the mandate rule, which is part of the "law of the

case" doctrine.  *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002);

*United States v. Stanley*, 54 F.3d 103, 107 (2d Cir. 1995).  Where a case is remanded

to the district court for further proceedings, such as a new trial here, the mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).  The mandate rule also prohibits consideration of issues that could have been, but were not, raised at the time of the initial appeal "unless the mandate can reasonably be understood as permitting [the district court] to do so."  *Id*.  On the other hand, the mandate rule does not bar a party from raising an issue on remand that the party had no opportunity or incentive to raise at the original proceeding.  *See Quintieri*, 306 F.3d at 1229-1230.  For example, where a particular argument would have no practical effect in light of the district court's original ruling but "becomes relevant only after appellate review," it may be raised on remand even if it was not raised at the original proceeding.  *United States v. Thorn*, 446 F.3d 378, 385 (2d Cir. 2006).

The Government may be right that the Second Circuit did not intend for any further pretrial litigation before a new trial in this case,[1] but in the interest of caution and because the Court permitted *pro se* Defendant to file pretrial motions and the Court heard oral argument on the motions, the Court analyzes each motion, below.

For the reasons that follow, it is hereby ORDERED that Defendant's motion (Dkt. Nos. 534, 540, 542) for search-warrant related discovery, motion to compel and motion to dismiss (Dkt. No. 596) based on alleged irregularities in the grand jury proceedings, and motion (Dkt. No. 598) to amend the protective order are DENIED.  Defendant's

---

[1] During oral argument, the Government asked for a ruling on the merits (while holding firm its belief that the mandate rule precludes further pretrial motions), considering that the motions proceeded to oral argument.

motion (Dkt. Nos. 534, 542) based on double jeopardy and issue preclusion is DENIED without prejudice.  Moreover, Defendant's motion (Dkt. No. 610) to file a document and assign a docket number and Defendant's motion (Dkt. No. 631) for a waiver of fees are DENIED as MOOT.  As to the Government's motion to seal (Dkt. No. 599) Defendant's motion to compel and any other filings that discuss or quote the grand jury testimony, that motion is GRANTED.  Defendant's motion (Dkt. No. 636) for funds to retain a private investigator is GRANTED, IN PART.  Last, the Government's motion (Dkt. No. 635) to set a date certain for trial is DENIED, without prejudice.

## **BACKGROUND**

The Court assumes the parties' familiarity with the facts they have proffered, the procedural history, and the issues on review.  The Court refers to those proceedings and its rulings only as is necessary to explain the reasoning that follows.

As explained by the Second Circuit in its summary of the evidence at the first trial, this case centers on the drug trafficking of the Schuele Boys – a violent gang in Buffalo, New York comprised of Defendant, and his co-defendants Aaron Hicks, Marcel Worthy, and LeTorrance Travis, and witnesses Jerome Grant and Demario James, who grew up together in the same neighborhood.  Defendant's role at the first trial was described as the "enforcer", and the Second Circuit rejected Defendant's sufficiency challenge to Defendant's murder of Quincy Balance and attempted murder of Damon Hunter on August 30, 2012, in aid of racketeering activity—noting "the strong evidence that [Defendant] shot them".  These were acts of retaliation, as the Schuele Boys believed Balance and Hunter were involved in shooting and killing Schuele Boys member and drug dealer Walter "Matt" Davison (Hicks's best friend) four days earlier.

3

Defendant was initially arrested via criminal complaint and indicted in 14-CR-204-A (*see* 14-CR-204-A, Dkt. Nos. 1, 9).  He was charged alone with violations relative to a search warrant executed at his mother's residence on or about October 31, 2014 (*see* 14-CR-204-A, Dkt. No. 9).  On February 20, 2015, a grand jury in this District returned an Indictment charging Hicks and Worthy (again, who were to become Defendant's co-defendants in this case), with one count of narcotics conspiracy, in the instant case, 15-CR-33-A (Dkt. No. 1).  Approximately four months later, on June 19, 2015, a grand jury returned a 15-count Superseding Indictment in 15-CR-33-A (Dkt. No. 17), charging Defendant and co-defendants with racketeering conspiracy, narcotics conspiracy, murder and attempted murder in aid of racketeering, and various firearm offenses.  The Superseding Indictment also included all four charges from the Indictment in 14-CR-204-A, in Counts 9 through 12.  The Indictment in 14-CR-204-A was then dismissed by the Government with leave of the Court (*see* 14-CR-204-A, Dkt. No. 40), and the Government proceeded against Defendant and to trial on the Superseding Indictment in 15-CR-33-A.

Defendant's first jury trial was held in September 2017, over a period of nine days.  The trial resulted in a conviction on Counts 1 through 8 of the Superseding Indictment,[2] and an acquittal on Counts 9 through 12, the four remaining drug and gun possession charges related to the search warrant executed at Defendant's mother's residence on or about October 31, 2014.  Defendant was sentenced on December 20,

---

[2] Those charges are racketeering conspiracy (Count 1), narcotics conspiracy (Count 2), possession of firearms in furtherance of a crime of violence or drug trafficking crime (Count 3), murder in aid of racketeering activity (Count 4), two counts of discharge of a firearm in furtherance of crimes of violence (Counts 5 and 8), discharge of a firearm causing death in furtherance of a crime of violence (Count 6), and attempted murder in aid of racketeering activity (Count 7).

2017 to an aggregate term of two terms of life imprisonment to run consecutively, plus a 30-year consecutive sentence (Dkt. Nos. 309, 310).  On November 20, 2019, the Second Circuit issued the Mandate (Dkt. No. 523) that vacated Defendant's conviction and remanded the case for a new trial.  The Second Circuit held that while the trial evidence was sufficient to support each count of conviction, Defendant's Sixth Amendment right to effective assistance of counsel was violated when the Court did not "ensure that [he] understood the full scope of the consequences arising from his counsel's conflict of interest, including disadvantages of a trial severance that counsel proposed."  (Dkt. No. 523).

After the Mandate was issued on November 20, 2019, Defendant was appointed CJA counsel, Joseph LaTona, Esq., on January 13, 2020, after a status conference was held on December 2, 2019 regarding the issuance of the Mandate and whether Defendant qualified for Court-appointed counsel.  On January 27, 2020, Mr. LaTona reported that he had reviewed all the trial transcripts and found it necessary to file pretrial motions, and Defendant had informally sent the Government a Rule 12 motion for access to warrant application materials.  At that juncture, the Court set a schedule for pretrial motions.

Mr. LaTona subsequently filed some motion papers before filing a motion to withdraw as counsel (Dkt. Nos. 547, 579).  Mr. LaTona stated that "it would be impossible to effectively represent Mr. Arrington" because he learned that Defendant had sent a letter directly to the Court complaining there was a "lack of communication between he and counsel with regard to motion practice."  Mr. LaTona also noted that Defendant indicted his desire to proceed *pro se* and to be appointed standby counsel,

and that Defendant intended "to engage in additional motion practice which would include a motion to dismiss the indictment against him for a violation of his constitutional right to a speedy trial."

Mr. LaTona was then relieved of his appointment on December 17, 2020, and the Court appointed Kevin Spitler, Esq. to represent Defendant, his second CJA counsel after the remand.  Approximately six weeks later, on January 29, 2021, the parties appeared for a status conference.  Mr. Spitler reported that while he had reviewed almost the entirety of the file he received from Mr. LaTona, and had three telephone conferences with Defendant, the day before, Defendant told Mr. Spitler of his intent to appear *pro se*.  Mr. Spitler had explained to Defendant the consequences of appearing *pro se* and what Mr. Spitler's role would be should he transition to standby counsel. The Court directed that further discussions on this issue occur between Mr. Spitler and Defendant and adjourned the matter for two weeks.

On February 10, 2021 (Dkt. 588 [transcript of proceeding held on 2/10/2021), the Court engaged in a *Faretta* colloquy with Defendant, pursuant to *Faretta v. California*, 422 U.S. 806, 835 (1975).  At that proceeding, Mr. Spitler reported that he had further counseled Defendant about the implications of proceeding *pro se*.  Defendant affirmed to the Court that he understood Mr. Spitler and had no complaints with his advice, yet he intended to move forward *pro se*.  He stated that he wished to file a motion pursuant to Federal Rule of Criminal Procedure 6 to challenge the "genuineness of the indictment" and matters that occurred before the grand jury, but his attorneys did not want to file that motion.  Defendant relayed that no attorney would make the prosecutorial misconduct argument he wanted to make, stating, " . . . I'm left to do it on

my own, your Honor."  The Court explained that Defendant would be bound by the

Court's decisions on the law, despite what he may believe, as a layperson, he is entitled

to.  The Court also explained that Defendant may not have access to certain sensitive

information that his attorney had access to, and Mr. Spitler discussed the protective

order, which Defendant stated he understood.

The Court engaged in an extensive inquiry with Defendant as to his personal

background and informed Defendant of his right to representation by counsel.  It stated

that while Defendant has a Constitutional right to represent himself, it was considered

"highly inadvisable", and further explained the potential pitfalls of self-representation.  At

the close of the proceeding, the Court found Defendant mentally competent in his

decision to proceed *pro se* in this matter, and that the decision was made voluntarily

and knowingly.  Mr. Spitler was appointed as standby counsel.  The Court then issued a

scheduling order for the filing of pretrial motions, although cautioned Defendant that

certain rulings prior to his first trial may be binding on him during this stage before the

retrial, and that the Court would not permit litigation of matters it had already decided.

A month later, on March 11, 2021, Defendant filed a motion (Dkt. No. 593) for the

Court's recusal from this case, which was based on words by the Court during the

*Faretta* colloquy that he took out of context to misinterpret that the Court had prejudged

the outcome of the retrial and concluded the Government would prevail.  The Court

subsequently denied this motion (Dkt. No. 627).  An appeal by Defendant on the motion

for the Court's recusal is currently pending at the Second Circuit (*see* Dkt. No. 632;

Second Circuit Docket No. 21-2131).

On August 19, 2021, after Defendant filed further motions, the Court held a status conference in which it, among other things, addressed submissions to the Court by Defendant complaining of issues he had with Mr. Spitler continuing in his role as standby counsel (Dkt. No. 628).[3]  That same date, Mr. Spitler relayed an irretrievable breakdown of the attorney-client relationship and asked to be relieved from that position.  The Court indicated it was inclined to do so, and thereafter made efforts to find conflict-free standby counsel for Defendant (*see* CM/ECF Minute Entry, 08/19/2021; CM/ECF Minute Entry, 09/02/2021).

On September 29, 2021, the Court granted Mr. Spitler's motion to withdraw as standby counsel due to an irretrievable breakdown of the attorney-client relationship, and Robert Singer, Esq. was appointed as CJA standby counsel in his stead.

Amid these multiple changes in counsel, Defendant, both *pro se* and through his counsel and standby counsel, filed somewhat voluminous motions, which prompted several motions by the Government, as well.  The crux of Defendant's arguments concern alleged prosecutorial misconduct and perjury committed during the grand jury proceedings in this case.  The motions are addressed below.

## DISCUSSION

The Court has organized the parties' motions into separate "categories" of motions, for ease of review.  The pertinent docket numbers are set forth in corresponding footnotes, along with the individual who filed the motion, *i.e.*, whether Defendant's prior attorneys, *pro se* Defendant, or standby counsel on Defendant's behalf while he has been proceeding *pro se*.

---

[3] Those papers have been filed under seal due to the sensitive nature of the allegations against Mr. Spitler.

I.    **MOTIONS REGARDING ACQUITTED COUNTS AND RELATED EVIDENCE**[4]

As stated above, at Defendant's first trial, he was found guilty on Counts 1 through 8, but not guilty on Counts 9 through 12.  Counts 9 through 12 allege conduct occurring on or about October 31, 2014 when a search warrant was executed at Defendant's mother's residence, 82 Girard Place, rear unit, Buffalo, New York, and Defendant was arrested.  The acquitted counts allege possession of heroin with intent to distribute (Count 9), maintaining a drug-involved premises (Count 10), possession of a firearm in furtherance of drug trafficking crimes (Count 11), and possession of a firearm and ammunition by a convicted felon (Count 12).

While Counts 9 through 12 will not be retried, Count 1 (racketeering conspiracy) alleges Overt Act 29 essentially summarizing the conduct underlying Counts 9 through 12: "On or about October 31, 2014, RODERICK ARRINGTON possessed a loaded firearm . . . and a quantity of heroin at 82 Girard Place, Buffalo, New York, near the neighborhood controlled by the Schuele Boys."  (Dkt. No. 239 [redacted, Superseding Indictment], ¶ 29).  Count 2 charges a narcotics conspiracy (*i.e.*, cocaine, cocaine base, and marijuana) beginning in or before 2000, and continuing until on or about February 24, 2015.

Defendant's first appointed CJA counsel after the Second Circuit remand, Mr. LaTona, filed motions on February 25 and March 13, 2020 seeking permission from the Court to file pretrial motions concerning discovery issues.  Defendant moved, on *pro se*,

---

[4] *See* Docket Nos. 534, 540, 542 (motions by defense counsel LaTona), 541, 545, and 565; *see also* Docket No. 605, filed by standby counsel Spitler on Defendant's behalf.

on April 15, 2021, to adopt the motions filed by Mr. LaTona.[5]  In sum, the defense

sought (1) any *in camera* testimony and/or affidavit of an informant (but not the *identity*

of any confidential informant) that led to the issuance of the search warrant for 82 Girard

Place relative to Counts 9 through 12 of the Superseding Indictment, so that defense

counsel could "decide whether or not a [Fourth Amendment-based] suppression motion

should be filed on Mr. Arrington's behalf"; and (2) to preclude evidence related to the

search of 82 Girard Place, as well as to redact Counts 9 through 12, and Overt Act 29 of

Count 1, from the Superseding Indictment, based upon double-jeopardy/ issue

preclusion grounds.

### A.  Motion for Search Warrant-Related Discovery

As to search warrant discovery, on March 16, 2020, the Government opposed

the requested relief, reasoning, among other things, that the "practical effect" of

disclosure of any State *in camera* search warrant would result in disclosure of the

confidential informant's identity, whose safety could be compromised should Defendant

discern his or her identity.[6]  The Government clarified during the October 12, 2021

argument that if the confidential informant is called to testify at the second trial, the

Government will provide this documentation as *Jencks* material.  Furthermore, the

---

[5] *See* Docket No. 605, filed by standby counsel Spitler, on Defendant's behalf.  Defendant refers to Docket Nos. 534, 565, and 575 in his motion, but the Court notes that Docket No. 575 is merely a motion for a status conference.

[6] Mr. LaTona indicated that he would not oppose a protective order concerning the search warrant materials, including, among other things, limiting access to defense counsel and prohibiting him from discussing the content of the application with Defendant or any other person.  Mr. LaTona later filed a motion (Dkt. No. 565), at Defendant's request, to strike this portion of the response (with proposed terms of a protective order as to the *in camera* materials), stating "[o]bviously, Mr. Arrington does not trust counsel to review and provide him with an appropriate legal opinion regarding the search warrant" (meaning Defendant wanted to review those materials himself).  According to Mr. LaTona, this was one reason why there was discord between himself and Defendant, and why his motion to withdraw as counsel should be granted.

Government argues that Defendant has failed to assert Fourth Amendment standing in this case.

It is apparent from the docket in this case and in 14-CR-204-A that Defendant did not file any affidavit of standing to challenge the search at 82 Girard Place (*see* 14-CR-204A, Dkt. Nos. 18, 32; CM/ECF Minute Entry, 06/08/2015) before the first trial, which the Government asserts was "consistent with prior counsel's strategy."  Even upon remand of this case from the Second Circuit, no affidavit of standing from Defendant was filed, only an attorney affidavit from Mr. LaTona that alleges Defendant "was present in the premises when the warrant was executed" and thus, he has standing to challenge the search (Dkt. No. 540, p. 2).

It is well settled that these allegations alone do not confer standing, which is Defendant's burden to establish.  *See United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."); *see also Rakas v. Illinois*, 439 U.S. 128, 132-133 (1978) (to have standing, it is not enough that a defendant is "legitimately on the premises" where the search occurs); *United States v. Montgomery*, 17-CR-6005 (FPG), 2017 U.S. Dist. LEXIS 142149, *25-26 (W.D.N.Y. July 21, 2017) ("An attorney affidavit is insufficient to establish standing - the privacy interest must be based on personal knowledge . . .").

During the October 12, 2021 oral argument before this Court, Defendant raised, for the first time, his argument that he was a guest at 82 Girard Place—and later in the argument, he asserted that he has two police reports that state he was an "overnight guest."

A non-resident of a private home *may* have a reasonable expectation of privacy in the premises, depending on the factual circumstances.  For example, an overnight guest in a residence has standing to challenge unlawful entries and searches of a residence.  *See Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990).  However, there is a caveat in that the expectation of privacy for an overnight guest "will not always extend to the entire premises . . . [to include] those areas of the host's home that are off limits to the guest or of which the guest has no knowledge."  *Osorio*, 949 F.2d at 41-42.

The Court hereby DENIES Defendant's motion (Dkt. Nos. 534, 540, 542).  Up until the date of the oral argument, only Defendant's presence in 82 Girard Place was alleged, and by attorney affidavit.  Moreover, Defendant did not file affidavit of standing. Therefore, Defendant has failed to establish that he had a subjective and reasonable expectation of privacy in his mother's residence at 82 Girard Place.  Defendant failed to carry his threshold burden to establish standing to assert any challenge to the search of that residence, and thus he has no right to access the search warrant affidavit.  *See United States v. Pennick*, 17-CR-15-RJA-MJR, 2018 U.S. Dist. LEXIS 106754, *8-14 (W.D.N.Y. Feb. 23, 2018) (denying defendant's motion for disclosure of confidential informant testimony where defendant "lack[ed] standing to challenge the searches authorized by the warrant" and "[d]isclosing the search warrant application [would] allow [defendant] and other individuals to identify the confidential informant, thus jeopardizing his or her safety"), *adopted by United States v. Pennick*, 2018 WL 3120570, 2018 U.S. Dist. LEXIS 106456, *3 (W.D.N.Y. June 26, 2018) ("Although a residence has special status under the Fourth Amendment . . ., standing to challenge the search of a residence is neither automatic nor presumed.").

### B. **Double Jeopardy Motion**

Preliminarily, the Court first concludes that the mandate rule does not bar Defendant from raising the issue of double jeopardy on remand. *See generally Thorn*, 446 F.3d at 385 (an argument may be raised for the first time on remand when it "becomes relevant only after appellate review"); *Quintieri*, 306 F.3d at 1229-1230; *see* Dkt. No. 534, ¶ 11 ("Unquestionably, a double jeopardy-based application did not arise until the jury verdict. Obviously, former trial counsel could not have made any such pre-trial motion.").

Defendant asserts that because he was acquitted of Counts 9 through 12 of the Superseding Indictment in the first trial, this evidence cannot be admitted in the second trial. He also argues that Counts 9 through 12, and Overt Act 29 of Count 1, should be stricken from the Superseding Indictment.

This argument was not fully developed. Mr. LaTona, who filed the motion, simply sought "the opportunity to submit a motion seeking to persuade this Court that the issue preclusion component of the double jeopardy clause should apply to this case." Defendant thereafter went *pro se*, and he has not supplemented the motion. No further briefing was done or ordered on this potentially complex legal issue, although the Court indicated in a March 3, 2020 text order (Dkt. No. 536) that the parties would later be required to file memoranda of law on the issue should the Court grant permission for Defendant to advance this argument. At the outset of the oral argument on October 12, 2021, Defendant stated that he seeks the trial transcripts and the entirety of the record from the first trial to make his double jeopardy argument.

The Government argues in opposition that Defendant's argument is meritless and double jeopardy does not apply here, pursuant to the Supreme Court's test in *Blockburger v. United States*, 284 U.S. 299 (1932), because overt acts are not required to prove either a RICO or narcotics conspiracy.  In addition, Defendant was acquitted of substantive offenses and double jeopardy does not bar using that evidence to prove a racketeering or narcotics conspiracy.  The acquittal on substantive Counts 9 through 12, the Government explains, did not "necessarily decide[ ] an essential element of RICO conspiracy in Arrington's favor".

"It is firmly established that collateral estoppel applies to criminal prosecutions as an element of the double jeopardy clause, *Ashe v. Swenson*, 397 U.S. 436 (1970); *United States v. Cala*, 521 F.2d 605, 607 (2d Cir. 1975), and that the Government is precluded from relitigating an issue decided in defendant's favor by a valid final judgment."  *United States v. Mespoulede*, 597 F.2d 329, 332 (2d Cir. 1979).  There are "two phases" to the application of the collateral estoppel principal:  the initial determination of "what the first judgment decided" and second, "how that determination bears on the second case."  *Id.* at 333.

"The defendant bears the burden of persuading 'the court that the issue he seeks to foreclose was necessarily decided in his favor by the prior verdict.'"  *United States v. Hicks*, Docket No. 19-590-cr, 2021 U.S. App. LEXIS 21069, **9, quoting *United States v. McGowan*, 58 F.3d 8, 12 (2d Cir. 1995); *see United States v. Clark*, 613 F.2d 391, 400 (2d Cir. 1979) (reviewing this issue on appeal, and noting "[t]his court on appeal is summoned to the substantial task of determining what the jury in the first trial decided and how that determination bears on the judgment in the second case.").

14

This analysis requires "study of the pleadings, evidence, and charge in the prior trial." *Mespoulede*, 597 F.2d at 333.  The Court finds that Defendant has failed to meet his burden on this motion yet finds that this issue—whether Counts 9 through 12 of the Superseding Indictment, and Overt Act 29 of Count 1, are barred by the collateral estoppel component of the Double Jeopardy clause—requires further briefing.  *See, e.g., United States v. Boyle*, S1 08 CR 523 (CM), 2009 WL 5178525, 2009 U.S. Dist. LEXIS 120948, *5-7 (S.D.N.Y. Dec. 23, 2009) (issue addressed as a *motion in limine*). The Court arrives at this conclusion based on the particular facts and circumstances of the instant case, namely, prior defense counsel addressing this issue in a cursory manner as he was seeking permission to file such a motion, and Defendant's claim at oral argument that he did not have access to the materials required to advance such a motion.[7]  Thus, the motion (Dkt. Nos. 534, 542) is DENIED without prejudice to renewal, with supplemental briefing.

## II.  MOTION TO COMPEL AND MOTION TO DISMISS, AS TO ALLEGED GRAND JURY IRREGULARITIES[8]

The grand jury issue comprises the bulk of Defendant's *pro se* filings and touches upon his assertion that he did not murder Quincy Balance, or attempt to murder Damon Hunter.

Initially, the Court finds that the Second Circuit Mandate in no way suggests that this Court should revisit (or visit) any issues bearing upon the grand jury proceedings in

---

[7] Defendant is reminded, however, that he may not have access to certain sensitive information that is covered by the protective order in this case.

[8] Defendant's motion to compel production of Rule 6 material was filed by standby counsel Spitler on behalf of *pro se* Defendant (*see* Docket Nos. 596); *see also* Dkt. Nos. 602, 608.

this case.  Indeed, the case previously proceeded to trial on the Superseding Indictment that Defendant takes issue with, and the Second Circuit determined that the trial evidence was sufficient to support each count of conviction.

Defendant moved (Dkt. No. 596) on April 1, 2021, *pro se*, for "unredacted inspection and disclosure [of] all grand jury proceedings", and requested that "all of the grand jury materials be disclosed", including grand jury minutes and instructions, voting attendance of all 12 jurors voting "yes" to a true bill on June 19, 2015, and unredacted grand jury transcripts from two grand jury witnesses.  He also requested a hearing and/or an *in camera* review of the grand jury proceedings held on February 20, 2015 and June 19, 2015, based on his alleged showing that grounds may exist for dismissal of the Superseding Indictment due to what he alleges occurred before the Grand Jury (citing Fed. R. Crim. P. 6(e)(3)(E)(ii)).

The Government argues that Defendant has not shown a particularized need for disclosure of the grand jury materials he seeks or for the Court's review of the grand jury materials *in camera*, and that there are no grounds alleged by Defendant for dismissal of the Superseding Indictment.  The Court agrees.

The tradition that grand jury proceedings are conducted in secret is long-established, and "older than our Nation itself."  *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973).  Federal Rules of Criminal Procedure 6(e)(6) "implements this policy of secrecy by requiring that 'all records, orders, and subpoenas *relating to* grand jury proceedings [must] be sealed.'"  *United States v. Ulbricht*, 858 F.3d 71, 106-107 (2d Cir. 2017) (internal citation omitted) (emphasis in original).

16

There are several reasons for grand jury secrecy.[9]  Defendant argues that because time has passed and he has already been tried once before, many of the justifications or policies for continued secrecy of the grand jury proceedings are no longer pertinent in this case.  "Although most of these concerns are inapplicable to a grand jury proceeding that has closed with an indictment, particularly following trial, . . . encouraging candor by grand-jury witnesses -- is pertinent even in those circumstances."  *Barone v. United States*, 12cv4103 (LAK) (MHD), 2015 U.S. Dist. LEXIS 186469, *12 n.4 (S.D.N.Y. Oct. 29, 2015).  In other words, encouraging witnesses to come forward and testify without fear of retribution, and safeguarding grand jurors and their deliberations from outside pressure and influences, remain valid purposes of maintaining grand jury secrecy even when a case has already been tried and is pending a retrial.

Grand jury proceedings are presumed to be lawful and regular.  *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974).  Accordingly, a defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of government misconduct."  *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).  To be entitled to disclosure of grand jury proceedings, a defendant must show a "particularized need" that outweighs the strong government and public policy interests in the secrecy of grand jury proceedings.  *Ulbricht*, 858 F.3d at 107.  Indeed, "[g]rand jury

---

[9] Those reasons are: "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."  *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958).

proceedings carry a 'presumption of regularity'[,] . . . [and] [a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 232-233 (2d Cir. 1990).  Similarly, the supervisory power of courts to create rules of grand jury procedure "'is a very limited one, not remotely comparable to the power [courts] maintain over their own proceedings.'" *United States v. Fisher*, 225 F. Supp. 3d 151, 164 n.5 (W.D.N.Y. Dec. 21, 2016), quoting *United States v. Williams*, 504 U.S. 36, 50 (1992).

Defendant advances a litany of arguments about what he believes constituted improper conduct during the grand jury proceedings.

This case is atypical in that Defendant moves for disclosure, but it is apparent he has already accessed many of the grand jury materials in this case, albeit those from the return of the February 20, 2015 Indictment against his two co-defendants.  He quotes at length and summarizes the grand jury transcripts in his motion papers.  The Government explains that after the Court entered a protective order (Dkt. No. 132) on December 20, 2016, applicable to § 3500 material and pretrial submissions, on August 23, 2017 (about three weeks before jury selection on the first trial), the Government provided § 3500 materials to Defendant's trial counsel, subject to that protective order. Defendant states that Mr. LaTona, after the remand, provided all grand jury materials in his possession to Defendant at Defendant's request.  Motions relative to the protective order are discussed, *infra*, at III.

The Court concludes that, even if the Court were to consider Defendant's motion on the merits, it would find that Defendant is not entitled to the disclosure he seeks.

Contrary to Defendant's position, the Government is not required to disclose all grand jury transcripts.  *See* Fed. R. Crim. P. 16(a)(3) ("This rule does not apply to the discovery or inspection of a grand jury's recorded proceedings, except as provided in Rules 6, 12(h), 16(a)(1), and 26.2."); *United States v. Jackson*, 345 F.3d 59, 76 (2d Cir. 2003) ("[t]he Jencks Act categorically concerns statements made by 'a witness . . . [who] has testified,' 18 U.S.C. § 3500(b), and it mandates disclosure only after 'said witness has testified on direct examination in the trial of the case,' 18 U.S.C. § 3500(a). Thus, it does not normally mandate disclosure of statements made by a person who does not testify.").

Defendant's speculation that the Government did not obtain a "valid" indictment against him in this case cannot overcome the burden he shoulders with respect to disclosure of grand jury materials.  "[I]t is well-established that an indictment that is valid on its face cannot be dismissed on the ground that it is based on inadequate or insufficient evidence . . .The indictment here is sufficient on its face . . . [and] [t]he time to advance a motion based on insufficiency of the evidence is after the government has presented its case at trial."  *United States v. Davis*, 18-CR-6119CJS, 2019 WL 3037937, 2019 U.S. Dist. LEXIS 115658, *4 (W.D.N.Y. May 1, 2019), *adopted by United States v. Davis*, 2019 WL 3033131, 2019 U.S. Dist. LEXIS 115448 (W.D.N.Y. July 11, 2019); *United States v. Schlegel*, 687 Fed. Appx. 26, 30 (2d Cir. 2017) (summary order) ("While [the defendant] contends that the absence of any Jencks Act material suggests that no evidence was presented to the second grand jury, the absence of Jencks material does not, by itself, mean that no evidence was presented to the grand jury.").

As to Defendant's speculative deduction that the grand jury must have refused to charge him on June 19, 2015 because the Government did not indict him with racketeering on February 20, 2015, the Government may not have sought to indict him on the racketeering and other charges until June 19, 2015, when the Superseding Indictment was returned against him.  Even if an earlier indictment was sought, "a failure of a grand jury to indict does not prevent a subsequent grand jury from doing so, on the same or similar facts."  *United States v. Tabi*, 05 Cr. 471 (LMM), 2007 U.S. Dist. LEXIS 13255, *10 (S.D.N.Y. Feb. 22, 2007) (rejecting the defendant's argument that "once the earlier grand jury had not indicted him, his case should not have been put before a second grand jury").

Defendant also argues that the prosecutor "committed outrageous prosecutorial misconduct" in his presentation of the case to the Grand Jury, enough to warrant dismissal of the Superseding Indictment.  He claims that the prosecutor presented perjured testimony and engaged in various kinds of wrongdoing.

Without belaboring this point, Defendant misinterprets statements made by the prosecutor, engages in guesswork, makes illogical conclusions, and demonstrates a misunderstanding of the law.  For example, he fails to recognize that "[d]ifferences in recollection do not constitute perjury" (*United States v. Josephberg*, 562 F.3d 478, 494 (2d Cir. 2009) (internal quotation marks and citations omitted)), or that "courts decline . . . to enforce the hearsay rule in grand jury proceedings" (*United States v. McGrady*, 18-CR-138 (JLS) (MJR), 2021 WL 4846221, 2021 U.S. Dist. LEXIS 200352, *11-12 (W.D.N.Y. Oct. 18, 2021) (concluding that the defendant "cite[d] nothing to suggest that the Government misled the grand jury into thinking that hearsay testimony was first-

hand testimony, or that eyewitness testimony would have made it significantly less likely that the grand jury would indict her"); *see United States v. Smith*, 3:00-CV-1261, 2000 WL 1739305, 2000 U.S. Dist. LEXIS 16698, *7 (N.D.N.Y. Nov. 4, 2000), citing *United States v. Ruggiero*, 934 F.2d 440, 447 (2d Cir. 1991).

At the October 12, 2021 oral argument, Defendant asserted that in the grand jury transcripts he reviewed, two witnesses exonerated him and two did not; meaning there were "conflicting stories" at the grand jury.  What Defendant does not appear to appreciate is that "[t]he grand jury exists not to determine guilt or innocence, but to assess whether there is an adequate basis for bringing a criminal charge."  *United States v. Yarborough*, 06-CR-190(A), 2007 WL 962926, 2007 U.S. Dist. LEXIS 23198, *41 (W.D.N.Y. Mar. 28, 2007) (internal citation omitted).

In sum, there is no basis here to disclose grand jury proceedings either to Defendant, or to this Court for *in camera* review.  There is no indication of Government misconduct and Defendant has not shown a particularized need for this material. Defendant's multiple claims predicated on speculation are plainly insufficient to warrant intrusion into grand jury proceedings.  Thus, Defendant's motion (Dkt. No. 596) for disclosure of the grand jury minutes and instructions or *in camera* review of grand jury material is DENIED.

Pursuant to Federal Rules of Criminal Procedure 6(e)(1), grand jury deliberations and voting may not be recorded.  Thus, Defendant's request (Dkt. No. 596) for disclosure of the Grand Jury voting records is DENIED.

As to Defendant's motion (Dkt. No. 596) to inspect Grand Jury attendance records, that motion is likewise DENIED.  *See, e.g., Yarborough*, 2007 U.S. Dist. LEXIS

23198, at *46, citing *United States v. Colasurdo*, 453 F.2d 585 (2d Cir. 1971) (rejecting the defendants' request aimed generally at confirming the Government's compliance with the twelve-juror minimum requirement set forth in Fed. R. Crim. P. 6(f), *cert. denied*, 406 U.S. 917 (1972)).

## III.     MOTION TO SEAL, AND MOTION TO AMEND THE PROTECTIVE ORDER[10]

### A.  Motion to Seal

On April 7, 2021, in reaction to Defendant's motion to compel all grand jury materials, the Government filed a motion to seal (Dkt. No. 599) Defendant's motion, as well as any subsequent filings that discuss grand jury testimony.  The Government argues that Defendant quoted the grand jury testimony of eight witnesses "verbatim and with accuracy", and although some witnesses testified at the first trial and therefore their names are on the public Docket, one witness did not testify at the trial and the Government needs to maintain secrecy of that witness's identity and testimony.

Defendant, in turn, wants all these documents to remain unsealed and on the public Docket, and argues that otherwise his due process rights are violated.  He argues that the one grand jury witness who did not testify at trial was on the Government's trial witness list but did not end up testifying because he "went rogue", and a warrant was issued for his arrest.  Defendant then explains that his trial attorney informed him that said witness was going to be charged with obstruction of justice for failing to testify at Defendant's trial.  Defendant states that this witness is "irrelevant" to his Rule 6 motion, and that the actual impetus of the Government's motion to seal is that the prosecutors

---

[10] The Government's motion to seal Defendant's motion and any filings that address Grand Jury testimony is at Docket No. 599; *see also* Docket Nos. 604, 608.  The motion to amend the protective order was filed by standby counsel Spitler (*see* Docket Nos. 598; *see also* Dkt. Nos. 609, 643, 648).

are trying to cover up prosecutorial misconduct by the prosecutor who was involved in the grand jury proceedings and the first trial.

Upon review of the parties' papers, the Court hereby GRANTS the Government's motion to seal (Dkt. No. 599) Defendant's motion to compel and any other filings that discuss or quote the grand jury testimony.

**B.  Motion to Amend the Protective Order**

A protective order was entered in this case on December 20, 2016 (Dkt. No. 132).  The protective order directs, among other things, that counsel for the defendants were not to "make or provide copies for the defendants or any third-parties of § 3500 material, Giglio/ impeachment information, the government's pretrial memorandum, witness list, and exhibit list."  The protective order also directs that at the close of trial, counsel for the defendants were to return all of these materials to the Government other than those documents received in evidence, and

> counsel for the defendants shall maintain copies of the government's pre-trial memorandum, the government's witness list, the government's protected witness list, the government's exhibit list, and/or the government's protected exhibit list in the attorney's file only *and shall not provide copies to the defendants or any third parties upon the conclusion of the trial* (emphasis added).

On April 7, 2021, Mr. Spitler filed a motion to amend the protective order (Dkt. No. 598) so that he could turn over to Defendant (as requested by Defendant) the "complete contents" of three boxes of case materials that Mr. Spitler received from Mr. LaTona, that contained documents covered by the protective order.

On April 23, 2021, the Government opposed the motion, but consented to a proposed, amended protective order (attached as Exhibit A to Dkt. No. 609), to account

for Defendant's *pro se* status.  In sum, the Government objected to Defendant's

"unfettered access" to protective and sensitive materials, demanding Defendant's

immediate return of those materials in his possession (or, alternatively, that the Court

order jail staff to immediately collect the protected materials currently within Defendant's

possession and retain those for his review under the terms of an amended protective

order).  The Government stated its concern about witness intimidation or "acts of

reprisal", particularly because of testimony and evidence from the first trial that showed

Defendant's attempts to influence witness's testimony.  It argued that despite

Defendant's decision to represent himself, a protective order remains necessary.

Specifically, the Government argues, (1) Defendant faces a mandatory life

sentence if convicted, so he may feel he has "nothing to lose" by intimidating witnesses;

(2) Defendant is charged with, and was previously convicted of, murdering a victim in

furtherance of a gang racketeering enterprise, among other crimes; (3) the Government

is concerned that materials could be disclosed and/or circulated among third parties

inside or outside the jail, or to third parties who are not in custody; and (4) witnesses

who are serving sentences elsewhere will be returning to this District for Defendant's

retrial and will be housed in the same or neighboring facilities, which is a genuine safety

concern.  The Government does not want hard copy documents being circulated

throughout the jails that show witness cooperation with law enforcement, regardless of

whether those witnesses testified at the grand jury or at trial, and regardless of whether

the documents have already been made public.

The Government further argues that adopting the proposed protective order will

not adversely affect Defendant's ability to prepare for trial, as he will have access to

materials in a controlled and monitored setting.  In that vein, on September 30, 2021, the Government filed an updated response to the motion to amend the protective order, stating that on that same date, the prosecutors spoke with a jail official who confirmed the jail has a computer without Internet access or a printer, which Defendant could use to review documents.

Defendant is opposed to the proposed, amended protective order and the motion to seal.  He claims that the requested documents are already in the public domain, which the Government questions.  He argues that the motions to seal/ protective orders are "limiting [his] ability to defend [him]self."  He further argues that the case has been litigated for seven years, and there has not been a single instance of witness threats, intimidation, influence, or retaliation.  Defendant states, "No influence or retaliation or any harm will ever be brought upon any witnesses involved in this case."  Thus, it appears Defendant is asking the Court to take him at his word in this regard.

The Government states in its motion papers regarding the protective order that it is apparent from Defendant's motion, which quotes accurately and summarizes extensively from the grand jury transcripts, that he has already accessed many of the grand jury materials in this case--which is in clear violation of the protective order,[11] and the Government asks that the Court order the "immediate return" of those materials.

---

[11] In one of Defendant's lengthy filings, he explains that former defense counsel LaTona, provided all grand jury materials in his possession at Defendant's request, following the Second Circuit remand.  He argues that because Mr. LaTona "handed . . . over" these transcripts to him, he "thought" that meant the protective order was "automatic[ally] off" once the case had already been tried the first time.  He also asserts that he has prior correspondence between himself and Mr. LaTona that indicates the grand jury transcripts were being sent to him.  See Dkt. No. 608-1, pp. 8-10; see also Dkt. No. 608-1, pp. 32-34 (correspondence between Mr. LaTona and Defendant, regarding the grand jury transcripts and issues, and an "Attorney Work Product" memorandum regarding Defendant's "beliefs" concerning the grand jury issues, which Defendant appears to misconstrue as Mr. LaTona's own "beliefs" on these "meritorious issues").  Defendant asserts that he "didn't steal the 3500 materials" as Mr. LaTona sent them to him, and

The Court hereby DENIES Defendant's motion (Dkt. No. 598) to amend the protective order, finding that a protective order is still warranted in this case for the reasons set forth by the Government.  The Court directs the Government to prepare an edited, proposed and amended protective order that adequately accounts for the rulings made by the Court in this Decision and Order and that, like in Exhibit A to Docket Number 609, accommodates Defendant's *pro se status* and permits Defendant's access to case materials at the jail in a controlled environment.

## IV.    MOTION TO FILE DOCUMENT/ ASSIGN A DOCKET NUMBER[12]

On May 3, 2021, Defendant also made a motion (Dkt. No. 610) simply asking that the Court docket on CM/ECF a mailing from Defendant that was "signed for by the Clerk of the Court on April 22, 2021".  It appears that the referenced mailing is likely what the Court docketed under seal at Docket Number 628, based on dates in that mailing, which was Defendant's motion for a status conference regarding his motion for the Court's recusal, a Decision and Order on his motion for recusal, and "recusal" of Mr. Spitler as standby counsel.  During oral argument, Defendant argued that certain exhibits were not attached to the motion or filed, yet he did not identify what exhibits he was referring to.  Nevertheless, the motions have been resolved, and thus the motion (Dkt. No. 610) to file a document and assign a docket number is DENIED as MOOT.

---

he questions how he could not violate the protective order while also seeking to say something about the perceived issues at the grand jury and "prove [his] innocents [sic]."  See Dkt. No. 608-1, p. 15.
At oral argument on the pending motions, the Government stated that it is clear from Defendant's filings that Mr. LaTona provided Defendant the grand jury material, in violation of the protective order in this case.

[12] This motion was filed by standby counsel Spitler (*see* Docket No. 610).

## V.    MOTION FOR WAIVER OF FEES[13]

Defendant further requests, in a motion filed September 2, 2021, that all fees associated with motion filings be waived, as well as copies of all transcripts and any documents filed on the Docket.  He specifically requests transcripts from the May 21, 2021 and August 19, 2021 proceedings, and the "Master Docket sheet" for the days that mention his recusal motion, to use in his Second Circuit appeal of this Court's Decision and Order denying his motion for the Court's recusal.  Standby counsel Singer has since re-submitted this motion as a CJA request, and therefore the motion (Dkt. No. 631) is DENIED as MOOT, and any further request for "waiver of fees" shall be addressed on the CJA system, on a case-by-case basis.

## VI.    MOTION FOR A PRIVATE INVESTIGATOR[14]

Defendant moved (Dkt. No. 636) on September 13, 2021, for $5,000 to hire a private investigator (what he says is a $5,000 retainer for 40 hours of work, at $125 per hour).  Defendant cites to 18 U.S.C. § 3006A(e)(1)-(2).[15]  He argues that an investigator is "reasonably necessary" to investigate three issues explained in his motion.

---

[13] *See* Docket No. 631 (submitted by Defendant, *pro se*).

[14] *See* Docket No. 636 (submitted by Defendant, *pro se*).  Standby counsel Singer has since filed this request in the CJA system.

[15] Subsection (e)(1) states that "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services."  Subsection (e)(3) states that compensation for such services "*shall not exceed $2,400, exclusive of reimbursement for expenses reasonably incurred*, unless payment in excess of that limit is certified by the court . . . as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit" (emphasis added).

The Court has reviewed the motion (Dkt. No. 636) and hereby GRANTS it, IN PART.  The Court hereby authorizes $2,400 in funds for Defendant to retain a private investigator.  Should Defendant provide further documentation or break-down of the requested $5,000 retainer, showing what the investigator needs any additional monies for (*e.g.*, "reimbursement of expenses reasonably incurred" during the investigation), the Court may then authorize further funds, up to the full $5,000 requested.

## VII.   MOTION TO SET A DATE FOR TRIAL[16]

The Government filed a motion (Dkt. No. 635) on September 10, 2021, asking the Court to, among other things, set a trial date as early as this Winter so that the parties can begin preparing the case for trial.  The other requested relief by the Government in this motion is largely moot.  Defendant sent in voluminous papers whereby he opposes the relief requested in the Government's motion, reiterating many of the same arguments he has made in his other motion papers.

At the oral argument on October 12, 2021, the Court indicated its intent to set a trial date as early as November 2021.  However, various concerns were raised about setting a trial to begin then, to include: (1) Defendant's pending Second Circuit appeal of the Court's denial of his motion for the Court's recusal; (2) standby counsel's recent appointment on the case and need to review the record in the event he needs to step in as counsel during the trial; (3) the trial schedule of both Assistant United States Attorneys; and (4) defense concerns that should the Court grant Defendant's motion for private investigator funds, then the investigator will require sufficient time to perform her duties in advance of trial.

---

[16] *See* Docket Nos. 635, 637, 640, 642, and 649.

For the above reasons, and because the Court has granted, in part, Defendant's motion for funds to hire a private investigator, and based on the Court's understanding that Defendant has not had an opportunity to review the materials he represents he would to renew and expand upon his double jeopardy motion, the Government's motion (Dkt. No. 635) to set a date certain for trial is DENIED, without prejudice.

## CONCLUSION

The Court has considered all of Defendant's remaining arguments within his motion papers and determine that they are without merit.

Upon issuance of this Decision and Order, all pretrial motions pending on the Docket as of the October 12, 2021 oral argument date have been resolved.[17]

Defendant has since filed a motion to dismiss based on violations of the Sixth Amendment and the Speedy Trial Act,[18] which is the only remaining pretrial motion on the Docket with the issuance of this Decision and Order.  At the status conference scheduled for November 18, 2021, the Court will issue a briefing schedule for Defendant's speedy trial motion.

Based on the foregoing, it is hereby ORDERED that Defendant's motion (Dkt. Nos. 534, 540, 542) for search-warrant related discovery is DENIED; and it is further

ORDERED that Defendant's motion (Dkt. Nos. 534, 542) based on double jeopardy and issue preclusion is DENIED without prejudice; and it is further

---

[17] At oral argument on the pretrial motions, the parties agreed that all the motions pending on that date, October 12, 2021, had been argued.

[18] The motion is dated November 4, 2021 and was received at the Courthouse on November 9, 2021.

ORDERED that Defendant's motion (Dkt. No. 596) to compel and motion to dismiss based on alleged irregularities in the grand jury proceedings is DENIED; and it is further

ORDERED that the Government's motion to seal (Dkt. No. 599) Defendant's motion to compel and any other filings that discuss in detail or quote grand jury testimony is GRANTED; and it is further

ORDERED that Defendant's motion (Dkt. No. 598) to amend the protective order is DENIED, and the Government is to prepare an edited, proposed and amended protective order, as elucidated above; and it is further

ORDERED that Defendant's motion (Dkt. No. 610) to file a document and assign a docket number and Defendant's motion (Dkt. No. 631) for a waiver of fees are DENIED as MOOT; and it is further

ORDERED that Defendant's motion (Dkt. No. 636) for funds to retain a private investigator is GRANTED, IN PART, and the Court hereby authorizes $2,400 in funds to Defendant for this purpose, but notes that Defendant may request further funds upon further showing, as explained above; and it is further

ORDERED that the Government's motion (Dkt. No. 635) to set a date certain for trial is DENIED, without prejudice.


**SO ORDERED.**


_S/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   November 18, 2021

30