UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

UNITED STATES OF AMERICA,

      v.

RODERICK ARRINGTON,

               Defendant.

**DECISION AND ORDER**
15-CR-33-A

═══════════════════════════════════

      Defendant Roderick Arrington, *pro se*, has moved to dismiss (Dkt. No. 661)

the Superseding Indictment (Dkt. No. 17), with prejudice, based primarily on Sixth

Amendment and statutory speedy trial grounds.  The Government filed opposition

papers (Dkt. No. 667) and Defendant filed a reply (Dkt. No. 675).  The Court

deemed the matter submitted on the papers.  For the reasons stated below, the

Court finds that Defendant's Sixth Amendment speedy trial right has not been

violated, and Defendant has not carried his burden to show that his statutory speedy

trial rights were violated.  Therefore, the motion to dismiss is DENIED.

## BACKGROUND

      Prior proceedings in this case are described in the Court's Decision and Order

issued on November 18, 2021, *see United States v. Arrington*, 15-CR-33-A, 2021

WL 5369824, 2021 U.S. Dist. LEXIS 223296 (W.D.N.Y. Nov. 18, 2021), Dkt. No.

657, which decided various, pending pretrial motions.  As previously touched upon

in in that Decision and Order (Dkt. No. 657, pp. 1-2), the Court has taken a very

broad approach to permitting pre-trial motions by Defendant after the remand to

accommodate Defendant's *pro se* status and ensure fairness in determination of those issues.  Indeed, the Court has expended considerable judicial time and resources on adjudicating Defendant's motions, and much time has also been consumed by the Court seeking out new Court-appointed and non-conflicted defense attorneys—which are limited in number in this District—to assign to Defendant since the remand.

Constitutional speedy trial protections, as well as the statutory speedy trial rules, are designed to protect a defendant's right to a speedy trial but also to ensure the public's interest in an expeditious trial.  "It must be remembered that a speedy trial is not only viewed as necessary to preserve the rights of defendants.  Just as significant is the protection it accords to society's interest in bringing criminals to justice promptly . . . the public has a strong interest in prompt trials because it reduces the defendant's opportunity to manipulate the criminal justice system." *United States v. Caparella*, 716 F.2d 976, 981 (2d Cir. 1983).

The Court also notes that in this case, Defendant has at times both objected to any exclusion of time for speedy trial purposes while simultaneously asking the Court to decide his copious pre-trial motions (including, for example, a pending motion for reconsideration as to a motion that was previously decided).  Thus, to an extent, Defendant has sought to use the Speedy Trial Act as both "a shield and a sword." *Williams v. United States*, 123 F. Supp. 2d 100, 104 (E.D.N.Y. 2000).[1]

---

[1] *See id.* (noting the situation where "a defendant seeks to use the Speedy Trial Act as a shield and a sword, and treats the protection the Act was designed to afford as a game of strategy by requesting delays and then attempting to utilize those delays to demand dismissal of the indictment"); *see United States v. Green*, 12-CR-83S (1)(2)(3), 2018 WL 786185, 2018 U.S. Dist. LEXIS 21074, *33 n.8 (W.D.N.Y. Feb. 8, 2018), *aff'd sub nom. United States v. Black*, 918 F.3d 243 (2d Cir. 2019) ("Courts must . . . be

Keeping these general principles in mind, the Court henceforth builds upon the previously summarized procedural history to the extent necessary, assuming the parties' familiarity with all prior proceedings.

The Court has included an Appendix to this Decision and Order that lists the motions filed by the parties since the Second Circuit remand, as well as momentous events regarding changes in counsel and interlocutory appeals. The Appendix should serve as a guide to the overlapping periods of automatically excluded time, *i.e.*, "delay resulting from any pretrial motion" and any 30-day under-advisement periods. *See* 18 U.S.C. §§ 3161(h)(1)(D), 3161(h)(1)(H).

Defendant's first, nine-day jury trial was held in September 2017. The 15-count Superseding Indictment charged Defendant and co-defendants Aaron Hicks, Marcel Worthy, and LeTorrance Travis with racketeering conspiracy, narcotics conspiracy, murder and attempted murder in aid of racketeering, and various firearm offenses. Defendant was convicted on Counts 1 through 8, and acquitted on Counts 9 through 12, the latter being the remaining drug and gun possession charges related to the search warrant executed at Defendant's mother's residence on or about October 31, 2014. He was sentenced on December 20, 2017 to an aggregate term of two terms of life imprisonment to run consecutively, plus a 30-year consecutive sentence (Dkt. Nos. 309, 310).

---

wary of the defendant who seeks to use his speedy-trial right as both a shield and a sword by creating circumstances that may give rise to a constitutional speedy-trial violation."); *see, e.g., United States v. Cheruvu*, 14-CR-130S, 2018 U.S. Dist. LEXIS 77554, * 6-7 (W.D.N.Y. May 8, 2018) ("Defendant appears to attempt to use the pending state court matter as both a shield and a sword, arguing that this Court should not interfere in ongoing state proceedings, while simultaneously contending that the trial should move forward immediately without waiting for the outcome of those proceedings.").

On November 19, 2019, the Second Circuit issued the Mandate (Dkt. No. 523) that vacated Defendant's conviction and remanded the case for a new trial.[2]

After the Mandate was issued, Defendant was appointed CJA counsel, Joseph LaTona, Esq., on January 13, 2020, after a status conference was held on December 2, 2019 regarding the issuance of the Mandate and whether Defendant qualified for Court-appointed counsel.  On January 27, 2020, Mr. LaTona reported that he had reviewed all the trial transcripts and found it necessary to file pretrial motions, and Defendant had informally sent the Government a Rule 12 motion for access to warrant application materials.  At that point, the Court set a schedule for pretrial motions.

Mr. LaTona subsequently filed some pretrial motion papers before filing a motion to withdraw (Dkt. Nos. 547, 579) as counsel on March 27, 2020.  Mr. LaTona stated that "it would be impossible to effectively represent Mr. Arrington" because he learned that Defendant had sent a letter directly to the Court complaining there was a "lack of communication between he and counsel with regard to motion practice." Mr. LaTona also noted that Defendant indicated his desire to proceed *pro se* and to be appointed standby counsel, and that Defendant intended "to engage in additional motion practice which would include a motion to dismiss the indictment against him for a violation of his constitutional right to a speedy trial."

---

[2] The Second Circuit held that while the trial evidence was sufficient to support each count of conviction, Defendant's Sixth Amendment right to effective assistance of counsel was violated when the Court did not "ensure that [he] understood the full scope of the consequences arising from his counsel's conflict of interest, including disadvantages of a trial severance that counsel proposed."  (Dkt. No. 523).

The same month Mr. LaTona filed his motion to withdraw, on March 18, 2020, Chief Judge Frank P. Geraci, Jr. issued a General Order suspending criminal jury trials in this District due the COVID-19 outbreak and corresponding public health concerns, as well as the Court's "reduced ability to obtain an adequate spectrum of jurors."  That initial Order and subsequent Orders effectively stayed criminal trials from March 18, 2020 through July 15, 2020.  When the July 15, 2020 order was lifted, trials then proceeded on a limited basis until December 8, 2020, when they were stayed again through April 23, 2021 due to a resurgence of COVID-19 cases.[3] Between July 15, 2020 and December 8, 2020, only two criminal jury trials took place in this District, both which happened to be handled by this Court, *i.e.*, *United States v. Henry Lloyd and Roman Dunnigan*, 17-CR-119-RJA-JJM (two-week jury trial held in August and September 2020), and *United States v. Jawayne Watkins*, 18-CR-32- RJA-JJM (seven-day jury trial in October 2020).

Mr. LaTona was relieved of his appointment on December 17, 2020, and the Court appointed Kevin Spitler, Esq. to represent Defendant, his second CJA counsel after the remand.  Approximately six weeks later, on January 29, 2021, the parties appeared for a status conference.  Mr. Spitler reported that while he had reviewed almost the entirety of the file he received from Mr. LaTona, and had three telephone conferences with Defendant, the day before, Defendant informed Mr. Spitler of his intent to appear *pro se*.  Mr. Spitler had explained to Defendant the consequences of

---

[3] *See Court Operations during COVID-19 Pandemic Event*, United States District Court, Western District of New York, https://www.nywd.uscourts.gov/court-operations-during-covid-19-pandemic-event (last visited June 1, 2022), General Orders dated March 18, 2020, May 13, 2020, June 15, 2020, December 8, 2020, and February 24, 2021.

appearing *pro se* and what Mr. Spitler's role would be should he transition to standby counsel.  The Court directed additional discussions on this issue to occur between Mr. Spitler and Defendant and adjourned the matter for two weeks.

On February 10, 2021 (Dkt. 588 [transcript of 2/10/2021 proceeding]), the Court engaged in a colloquy with Defendant, pursuant to *Faretta v. California*, 422 U.S. 806, 835 (1975).  Mr. Spitler reported that he had further counseled Defendant about the implications of proceeding *pro se*.  Defendant affirmed to the Court that he understood Mr. Spitler and had no complaints with his advice, yet he intended to move forward *pro se*.  He stated that he wished to file a motion pursuant to Federal Rule of Criminal Procedure 6 to challenge the "genuineness of the indictment" and matters that occurred before the grand jury, but his attorneys did not want to file that motion.  Defendant relayed no attorney would make the prosecutorial misconduct argument he wanted to make, stating, " . . . I'm left to do it on my own, your Honor." The Court explained that Defendant would be bound by the Court's decisions on the law, despite what he may believe as a layperson he is entitled to.  At the close of the proceeding, the Court found Defendant mentally competent in his decision to proceed *pro se*, and that the decision was made voluntarily and knowingly, after explaining the potential pitfalls of self-representation and informing Defendant of his right to representation by counsel.  Mr. Spitler was appointed as standby counsel. The Court then issued a scheduling order for the filing of pretrial motions, although it cautioned Defendant that certain rulings prior to his first trial may be binding on him during this stage before the retrial, and the Court would not permit litigation of matters it had already decided.

A month later, on March 11, 2021, Defendant filed a motion (Dkt. No. 593) for the Court's recusal from this case, which was based on statements by the Court during the *Faretta* colloquy that he took out of context, to misinterpret that the Court had prejudged the outcome of the retrial and concluded the Government would prevail.  Defendant's motion for recusal was argued on May 21, 2021.  Between those two dates, Defendant filed a panoply of further motions, including a motion (Dkt. No. 596) to produce/ compel production of Federal Rule of Criminal Procedure 6 material ("Rule 6 motion"), filed on April 1, 2021.  The Court subsequently denied (Dkt. No. 627) the recusal motion on August 19, 2021 by way of Decision and Order.

On August 19, 2021, the Court also held a status conference at which it, among other things, addressed Defendant's submissions to the Court complaining of issues he had with Mr. Spitler continuing in his role as standby counsel (Dkt. No. 628).  Mr. Spitler orally relayed an irretrievable breakdown of the attorney-client relationship and asked to be relieved from that position.  The Court indicated it was inclined to do so, and thereafter made efforts to find conflict-free standby counsel for Defendant (*see* CM/ECF Minute Entry, 08/19/2021; CM/ECF Minute Entry, 09/02/2021).

On August 31, 2021, Defendant filed a notice of appeal (Dkt. No. 632; *see* Second Circuit Docket Number 21-2131) of the denial of his recusal motion.

On September 29, 2021, the Court granted Mr. Spitler's motion to withdraw as standby counsel, and Robert Singer, Esq. was appointed as CJA standby counsel in his stead, *i.e.*, the third-appointed CJA counsel following remand.

On October 12, 2021, oral argument was heard on various, pending pretrial motions, and on November 18, 2021, the Court issued its Decision and Order deciding the pretrial motions (Dkt. No. 657).  The following day, Defendant filed a notice of appeal (Dkt. No. 659; *see* Second Circuit Docket Number 21-2888) of the Court's Decision and Order, specifically its denial of his motion for grand jury materials (alleging prosecutorial misconduct and perjury committed during the grand jury proceedings in this case).  The two appeals filed by Defendant were later consolidated.

On November 22, 2021, Defendant filed the instant motion to dismiss (Dkt. No. 661) the Superseding Indictment on Speedy Trial Act and Sixth Amendment speedy trial grounds.  On December 9, 2021, Defendant filed a motion to preclude (Dkt. No. 671) certain evidence (*i.e.*, acquitted conduct) from introduction at the retrial, based on double jeopardy and issue preclusion grounds.[4]  The Court later granted (Dkt. No. 692) the Government's request (Dkt. No. 691) to hold that motion in abeyance until a trial schedule for motions *in limine* is set, because the motion concerns evidentiary issues and the Government represented it had not yet decided whether it intended to use that evidence at trial.

---

[4] In the instant motion, Defendant argues that a "violation" occurred at the October 12, 2021 oral argument on the pending pretrial motions because he had no "evidence," trial transcripts, or discovery, which he needed for his issue preclusion motion.  What Defendant omits is that the motion was denied, without prejudice, for that very reason (Defendant asserted at the argument that he had not yet reviewed all the case materials, which he needed to make that motion) in the Court's November 18, 2021 Decision and Order.  And then he re-filed the motion on December 9, 2021, which the Court permitted (Dkt. No. 671).

On December 16, 2021, the Court held a status conference at which it noted the two Second Circuit appeals were pending and suggested the case should be held on standby for about 30 days to await a determination on the appeals.  The Court reasoned that moving forward with pending motions and a trial would be futile in the event the Second Circuit recused the Court from the case.  Defendant did not object to this plan and did not object to an exclusion of time until the next-scheduled status conference.  He also asserted that he wanted to file a bail motion, and the Court indicated Defendant could do so at any time.

On January 13, 2022, Defendant filed a motion to dismiss (Dkt. No. 679) the Superseding Indictment for violation of his due process rights, and a motion to "recuse" his standby counsel, Mr. Singer.  This motion is related to an incident that occurred on December 22, 2021 at Cattaraugus County Jail, where Defendant was detained.

Briefly, for context, a Protective Order (Dkt. No. 132) had been entered prior to Defendant's first trial, with respect to § 3500 material and pre-trial submissions. Following the issuance of the Second Circuit Mandate and during adjudication of various motions filed by the parties, it came to the Court's attention that Defendant had not adhered to that Protective Order.  The Court granted the Government's request (Dkt. No. 609) to amend the Protective Order to account for Defendant's *pro se* status (Dkt. No. 666 [amended Protected Order]).  With that amended Protective Order in place, the Government took steps to enforce it, and Defendant has challenged that Government action as unconstitutional and violative of his due

9

process rights.  The motion to dismiss is pending and a hearing on this issue has been scheduled, as noted below.

On January 21, 2022, Mr. Singer filed a motion (Dkt. No. 684) to be converted from standby counsel to "advisory counsel" only, or in the alternative, to withdraw from the case entirely.  He noted a divergence of his and Defendant's strategic goals, which would pose an issue come retrial, and allegations made by Defendant against him in the motion relative to the December 22, 2021 incident.

At a status conference held on February 2, 2022, the Court noted the Second Circuit had dismissed Defendant's consolidated, interlocutory appeals because of lack of appellate jurisdiction.[5]  It also set a briefing schedule on Defendant's due process motion and oral argument on that motion for March 9, 2022.  Later, instead of holding argument on March 9, 2022, the Court instead determined that more briefing was required (Dkt. Nos. 692, 698).  In response to those directives, on March 23, 2022, Mr. Singer filed an affidavit concerning the events of December 22, 2021, and on April 25, 2022, the Government filed supplemental affidavits (Dkt. No. 704) from individuals regarding same.  Said motion is now under advisement.

In a Decision and Order docketed March 25, 2022 (Dkt. No. 698), among other things, the Court clarified that the instant speedy trial motion was deemed submitted and under review, and set a status conference for May 25, 2022 to address attorney-client issues.  The Court excluded time until that date for, among other reasons, "to permit sufficient time for the Court to explore the option and

---

[5] The Second Circuit Mandate concerning the appeals was docketed on February 9, 2022 (Dkt. No. 689).

feasibility of appointing new standby counsel to Defendant."  The parties were informed that they should be prepared to potentially set a trial date at the May 25th status conference.

More recently, Defendant filed two additional motions:  a motion (Dkt. No. 702) for "immediate release" from custody pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, and a motion for reconsideration (Dkt. No. 705) of Defendant's Rule 6 motion.  The Government responded to both of those motions on May 11, 2022 (Dkt. Nos. 707, 708).  On May 6, 2022, the Government filed a motion for miscellaneous relief (Dkt. No. 706), including setting a trial date in advance of the status conference held on May 25, 2022.  Defendant opposed that motion (Dkt. No. 712).  The Court denied (Dkt. No. 709) the Government's motion to set a trial date before the May 25, 2022 status conference, partly due to its determination that a hearing on the December 22, 2021 due process issue was necessary.

At the most recent status conference held on May 25, 2022, the Court granted Defendant's motion to "recuse" Mr. Singer as standby counsel and likewise granted Mr. Singer's motion to withdraw from the case.  The Court appointed Mark Foti, Esq. as new standby counsel.  Upon appointing Mr. Foti, Defendant expressed his desire to represent himself *pro se* until his pretrial motions are decided, and then to be fully represented by an attorney for the retrial should his pending motions to dismiss be denied.[6]  The Court indicated it would consider Defendant's request.  A further

---

[6] Defendant stated on the record that he sent the Court a letter in January 2022 to this effect, which was not on the Docket.  The Court noted it did not recall receiving such a letter, and Mr. Singer and the

status conference was set for June 2, 2022, so that Mr. Foti could meet with

Defendant in person and Mr. Singer could turn over his case files to Mr. Foti. [7]

On May 25, 2022, the Court also set dates for a hearing on Defendant's due

process motion to dismiss, *i.e.*, June 13 and June 14, 2022.[8]  Defendant argued that

certain video camera footage from December 22, 2021 was taped over and edited,

and indicated he intends to call a number of witnesses at the hearing.  The Court

noted that it would appoint independent counsel to Mr. Singer should he testify at

the hearing, per his request.

The Court then heard lengthy argument on Defendant's bail motion and Fifth

Amendment due process argument concerning the length of his pretrial detention,

which was deemed submitted.  Although the Court initially intended to limit argument

to Defendant's bail motion, Defendant also in substance argued his pending motion

---

AUSAs likewise seemed surprised by Defendant's proclamation.  Mr. Singer later forwarded the letter referenced by Defendant, which the Court realized had inadvertently not been docketed.  The letter has since been docketed (*see* Dkt. No. 719) and, in essence, contains Defendant's response to Mr. Singer's motion (Dkt. No. 684) to be converted from standby counsel to advisory counsel or to withdraw from the case.  Embedded within this response, Defendant explained that he and Mr. Singer had previously agreed that when he was finished with his speedy trial motion (in the event the Court denied that motion), Mr. Singer would "take over this case," suggesting that the plan had been for Mr. Singer to fully represent him at the retrial.  In a different section of this response, Defendant also stated, "I am respectfully requesting that this Court appoint me an [sic] trial attorney that will up hold [sic] the U.S. Constitution, and he/or [sic] she will up hold [sic] the professional code of conduct.  I can not [sic] proceed to trial with an attorney that is not in my best interest.  I am respectfully requesting this Court to appoint me with an [sic] trial attorney as soon as possible."

In context with the remainder of Defendant's letter, the Court construed this response as Defendant's request that the Court resolve his motion to "recuse" Mr. Spitler and appoint him new standby counsel in his place, because his stated plan to have Mr. Spitler fully represent him at the retrial had been mooted by the breakdown of their relationship.  As such, when the Court attempted to find another conflict-free attorney for Defendant, it was seeking out attorneys to represent him in standby counsel capacity only, not in full capacity for the retrial.

[7] Mr. Foti appeared remotely for the May 25, 2022 proceeding due to illness.

[8] The Court will file a Decision and Order on Defendant's due process motion to dismiss after the hearing.

for reconsideration of the Court's denial of his Rule 6 motion.  Defendant stated that

although he is ready to proceed to trial, he wants an *in camera* inspection of the

grand jury transcripts and for the Court to decide his pending motions first.

The Court noted Mr. Foti's unavailability for retrial during the months of July

and August, and Defendant acknowledged that if he is to potentially have an

attorney represent him at the retrial, that attorney will need time to familiarize himself

with the case and record before the case can proceed to retrial.  The Court set a

tentative date of September 27, 2022 for jury selection (depending on its

determination of Defendant's pending motions to dismiss).  The Court granted the

Government's motion to exclude Speedy Trial time until September 27, 2022, and

Defendant objected to that exclusion of time.

Amid the multiple changes in counsel and as briefly summarized above,

Defendant—both *pro se* and through his counsel and numerous standby counsel—

filed voluminous motions, which prompted several motions by the Government, as

well, as is set forth in the Appendix to this Decision and Order.

## **DISCUSSION**

Defendant moves to dismiss the Superseding Indictment on the ground that

his rights to a speedy trial under the Sixth Amendment and the Speedy Trial Act of

1974, 18 U.S.C. § 3161 *et seq*. (the "Act"), have been violated because of delays in

bringing him to trial.  Defendant argues that there has been an 84-month delay in

this case.  The Court notes that this 84-month calculation is made from the time of

Defendant's arrest in 2014 to the date Defendant filed the instant motion; this

timeframe is inclusive of previous pre-trial proceedings and the first trial, any post-

trial proceedings and Defendant's appeal of his judgment of conviction to the Second Circuit, and the remand by the Second Circuit and any proceedings thereafter.

**I.   Sixth Amendment Speedy Trial Claim**

The Sixth Amendment Speedy Trial Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  The Sixth Amendment right to a speedy trial embodies "one of the most basic rights preserved by our Constitution."  *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967).  It protects the accused from actual or possible prejudice due to inordinate delay, and serves to " 'prevent undue and oppressive incarceration prior to trial, . . . minimize anxiety and concern accompanying public accusation . . . [as well as] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' "  *United States v. Marion*, 404 U.S. 307, 320 (1971) (ellipses added), quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966).

While the Sixth Amendment speedy trial right is a basic right, it is "a more vague concept than other procedural rights."  *Barker v. Wingo*, 407 U.S. 514, 521 (1972).  The Supreme Court has identified four inter-related factors to be considered in determining whether a defendant's right to a speedy trial has been violated: " 'the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' "  *Doggett v. United States*, 505 U.S. 647, 651 (1992), quoting *Barker*, 407 U.S. at 530.  If a violation of an accused Sixth Amendment

speedy trial right is established, the pending charges are dismissed with prejudice. *See Strunk v. United States*, 412 U.S. 434, 438 (1973).

### A.    Length of Delay

"[T]he first of the *Barker* factors, the length of the delay, is in effect a threshold question[.]"  *United States v. Ghailani*, 733 F.3d 29, 43 (2d Cir. 2013) (internal quotation marks and citations omitted).  Ordinarily, delay approaching one year qualifies as "presumptively prejudicial" and justifies inquiry into the remaining *Barker* factors.  *Doggett*, 505 U.S. at 652 n.1 (1992).  In the Second Circuit, there is a "general consensus" that a delay of more than eight months is presumptively prejudicial and merits further inquiry.  *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992).  Approximately 30 months have elapsed since the Second Circuit Mandate was issued, vacating Defendant's judgment of conviction, and remanding the case for a new trial.  The Court concludes the length of the delay in this case triggers an analysis of the remaining *Barker* factors.

Excessive delay "cannot alone[, however,] carry a Sixth Amendment claim without regard to the other *Barker* criteria."  *Doggett*, 505 U.S. at 656.  It is also well-settled that "[t]hese [four] factors 'must be considered together with such other circumstances as may be relevant' and 'have no talismanic qualities.'"  *United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012), quoting *Barker*, 407 U.S. at 533; *see*, *e.g.*, *United States v. Gates*, 1:17-CR-00092 JLS (MJR), 2020 WL 6218707, 2020 U.S. Dist. LEXIS 197765, *23-24 (W.D.N.Y. Sept. 30, 2020) ("[T]he length of delay here, which will be over three years when [defendant's] trial commences, is significant and

15

merits further scrutiny . . . However, with respect to the *Barker* factors, it weighs only slightly against the Government."), *adopted by United States v. Gates*, 2020 WL 6205814, 2020 U.S. Dist. LEXIS 196810 (Oct. 22, 2020).

### B.    Reasons for the Delay

"[T]he second factor--reason for delay--is often critical.  The Sixth Amendment is rarely violated by delay attributable entirely to the defendant or by delay that serves some legitimate government purpose . . . By the same token, delay stemming from deliberate government misconduct weighs heavily in favor of finding a violation."  *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015).

There are three types of Sixth Amendment speedy trial delay:  deliberate, neutral, and valid.  *See Barker*, 407 U.S. at 531.  Deliberate delay, which is delay intended to confer an advantage over a defendant such as "[a] deliberate attempt to delay the trial in order to hamper the defense," weighs most heavily against the Government.  *Id.*  Neutral delay, which is delay resulting from government negligence and overcrowded court dockets, is less weighty, although "should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  *Id.*  Finally, valid delay in this context is when there is reasonable pretrial delay, "such as a missing witness" or delays attributable to the defendant, *id.*, "when it emanates from factors beyond the government's control," *United States v. Zhukov*, 18-CR-633(EK), 2020 WL 6302298, 2020 U.S. Dist. LEXIS 198888, *7 (E.D.N.Y. Oct. 26, 2020).

Defendant argues that all the delays in this case are attributable to the Government, the Court, and his attorneys.  He also speculates that the Government purposefully delayed the case for a "tactical advantage."  This assertion is related to Defendant's theory, raised in his Rule 6 motion, that prosecutorial misconduct occurred at the grand jury proceedings and the Government proceeded against him to trial on an "invalid indictment."  The Government disputes these allegations, arguing that while it is dedicated to trying this case expeditiously, Defendant has been delaying the case by filing a "litany of motions" and two interlocutory appeals, and cycling through attorneys, while simultaneously arguing that his speedy trial rights have been violated.  Thus, the Government asserts that Defendant's "attempt to use Speedy Trial as a sword and a shield should be rejected."

The Court concludes that the delays in this case were either neutral or valid, and this factor does not weigh in Defendant's favor.

As is explained in detail above, since remand, Defendant has now worked with four different attorneys, in different capacities.  He was first represented by Mr. LaTona, then Mr. Spitler, then Mr. Spitler as standby counsel when Defendant decided to proceed *pro se*, then Mr. Singer as his second standby counsel, and now Mr. Foti as his third standby counsel and possible trial counsel.

In sum, Mr. Foti is the fourth attorney appointed to Defendant since the Second Circuit remand and his third standby counsel.  Defendant has made allegations of misconduct as to two of his Court-appointed attorneys, including filing attorney grievances against them.  It should also be noted that during this

17

timeframe, Defendant filed a motion to recuse the Court, which was denied and then dismissed on appeal to the Second Circuit.

Of course, Defendant has both a Constitutional right to representation by counsel and a right to represent himself.  However, each time one of these changes in representation arises, the task of finding new conflict-free counsel for Defendant has inevitably become more difficult.  Moreover, the difficulty of assigning Defendant his second attorney was compounded by the onset of the COVID-19 pandemic, which coincided with his first attorney's motion to withdraw.  In addition, each time Defendant has decided to relieve one of his attorneys, new counsel has required some period to familiarize themselves with the case file.  Indeed, the Government explains that this has been no small feat, as the case history is "substantial" from proceeding to multi-week trials on three separate occasions.[9]  According to Defendant, his standby attorneys were assigned only to assist him, so there was no need for a delay for them to "get up to speed" on the case.  However, this role requires knowledge of the case in the event Defendant decides to end his self-representation and requests an attorney, either before or during the retrial.  Indeed, at the May 25, 2022 status conference Defendant stated that he intends to do just that—to relinquish his *pro se* status and have an attorney fully represent him—for purposes of the retrial.

---

[9] Defendant's first trial was held from September 12, 2017 through September 22, 2017.  Co-defendant Aaron Hicks' first trial was held from September 27, 2017 through October 13, 2017; a mistrial was declared as to Count 1, the racketeering conspiracy; and Hicks' second trial on the racketeering conspiracy count was held April 18, 2018 through May 2, 2018.

Defendant argues that he was "forced" to proceed *pro se* because none of his attorneys would file the Rule 6 motion that he wanted to file.  Defendant laments that "[o]nly if Mr. LaTona had respected Mr. Arrington's wishes and filed the Rule 6(e), we would not be here now."  He therefore reasons that any delay in that regard could not be attributable to him, and instead this delay "should weigh most heavily against the [G]overnment."

As observed by the Government, this argument aligns with Defendant's recurring argument since remand that all attorneys in this case are conspiring against him, including his Court-appointed counsel.  The attorneys appointed to represent Defendant declined to file the motion to produce grand jury materials, and Defendant filed it later *pro se*.  The Court then denied the Rule 6 motion in its Decision and Order (Dkt. No. 657).  The Court rejects Defendant's assertion that any delay from this attorney-client conflict is attributable to the Government.  *See*, *e.g.*, *United States v. Cain*, 05-CR-360A, 2008 U.S. Dist. LEXIS 13066, *2-3 (W.D.N.Y. Nov. 5, 2008) (rejecting defendant's meritless argument that he was "denied his constitutional right to a speedy trial when the government intentionally manufactured a conflict of interest between himself and his then-attorney," and that "by doing so, the government caused an intentional and unnecessary delay in the pretrial proceedings because he was forced to obtain a new attorney who then had to familiarize himself with the case").

Rather, the substitution of counsel, which has permeated this case since remand, weighs against granting Defendant's motion to dismiss.  *See*, *e.g.*, *United States v. Reyes-Batista*, 844 Fed. Appx. 404, 407 (2d Cir. Feb. 9, 2021) (summary

order) ("[t]o start, [the defendant] chose to replace his counsel on four separate occasions" and "[e]ach turnover in counsel was naturally accompanied by multiple weeks of delay as his new attorneys were required to get up to speed on the case"); *United States v. Lagasse*, 269 Fed. Appx. 87, 89 (2d Cir. Mar. 14, 2008) (summary order) (rejecting defendant's assertion that his Sixth Amendment right to a speedy trial was violated because "there were a variety of reasons for pretrial delay, not least of which was [defendant]'s decision twice to discharge his counsel"); *United States v. Ullah*, 04-CR-30A(F), 2005 WL 629487, 2005 U.S. Dist. LEXIS 12419, *66 (W.D.N.Y. Mar. 17, 2005) ("most of the delay . . . is attributed to motions filed on [defendant]'s behalf, [defendant]'s difficulties working with assigned counsel and his desire to proceed *pro se*, rather than to any lack of diligence by the Government in prosecuting the action.  Accordingly, the second *Barker* factor weighs in the Government's favor."), *adopted in part by United States v. Ullah*, 2006 WL 1994678, 2006 U.S. Dist. LEXIS 47994 (W.D.N.Y. July 14, 2006); *Davis v. Kelly*, 316 F.3d 125, 126-127 (2d Cir. 2003) (57-month delay caused by "repeated replacements of the defendant's attorney at his request").[10]

---

[10] Defendant argues that in one particular instance, Mr. Spitler as standby counsel filed a motion (Dkt. No. 591) for an extension of time to file pretrial motions without Defendant's consent.  The motion, filed on March 5, 2021, which the Court granted (Dkt. No. 592), explains that Mr. Spitler required more time for docketing Defendant's pretrial motions because Cattaraugus County Jail had initially been amenable to scanning and emailing documents between the Jail and Mr. Spitler's office, but had recently ended that practice and instead required paper mailings, which necessarily prolonged that exercise.  The Court concludes that the requested extension was made for Defendant's benefit and due to the practical realities of proceeding *pro se* and communicating with Defendant while he was detained; therefore, any delay in this regard counts as valid delay.  *See United States v. Tigano*, 880 F.3d 602, 616-17 (2d Cir. 2018) (explaining that, "[u]nless the record shows otherwise, we normally presume that a defense attorney is carrying out [the] client's chosen trial strategy and that any delays resulting from that strategy count against the defendant").

Additionally, Defendant has filed a multitude of non-dispositive and dispositive pretrial motions of varying levels of complexity following remand, which the Court has adjudicated.[11]  This delay is properly attributable to Defendant.  *See*, *e.g.*, *United States v. Swinton*, 797 Fed. Appx. 589, 594-595 (2d Cir. Dec. 23, 2019) (holding that "the primary responsibility" for a 51-month delay "lies with [defendant] because it arose from . . . his changes of counsel, and his filing of an omnibus motion, which included a complex motion to suppress.  Adjudication of that motion, with its many supplemental filings and hearings, took much of the time between issuance of the indictment and the start of the trial.").  Defendant also filed two interlocutory appeals during the pendency of this matter, one that was an appeal from the Court's denial of his recusal motion.  This factored into the Court's determination that the case was not ready for trial in November 2021, when it posed a tentative date of November 9, 2021 for jury selection, with the Court additionally observing that it had just granted Defendant's motion for funds to hire a private investigator and Defendant's investigator would need time to conduct his or her investigation.  *See* Dkt. No. 651 (CM/ECF Minute Entry, 10/12/2021).

Defendant argues that pandemic-related delays are attributable to the Government, focusing on the period between the March 27, 2020 motion to withdraw filed by his first attorney, Mr. LaTona, and the December 17, 2020 status conference at which the Court granted the motion and appointed Mr. Spitler as new

---

[11] The Court prefaced its November 18, 2021 Decision and Order on various pretrial motions by observing that the Second Circuit Mandate did not explicitly remand the case for both retrial and the filing of further pretrial motions, but concluded that, in light of Defendant's *pro se* status and having permitted Defendant to file the motions, the Court nevertheless decided them.  *See* Dkt. No. 657, pp. 1-2.

CJA counsel.  Defendant notes that several requests were made by the parties within that timeframe for a status conference to address the motion to withdraw (*see* Dkt. Nos. 552, 574, 577, 579), and that it should not have taken that long for the motion to be resolved.

The Government concedes that "both the government and the Court could have worked more diligently to obtain conflict-free counsel to the defendant during the months that Mr. LaTona's motion to withdraw was pending," but argues that "[t]he failure to do so was negligent at worst, . . . and [therefore] should be weighed less heavily against the government."

COVID-19 pandemic-related delays are generally not attributable to either party.  *See*, *e.g.*, *United States v. Akhavan*, 523 F. Supp. 3d 443, 451 (S.D.N.Y. 2021) (holding that a three-month delay was "not attributable to the Government but rather to the pandemic, a neutral reason outside of the Government's control"); *Zhukov*, 2020 U.S. Dist. LEXIS 198888, at *7 ("Thus far, the delay in bringing this case to trial is overwhelmingly attributable to one factor — the COVID-19 epidemic — that is surely beyond the prosecution's control.") (collecting cases); *United States v. Morgan*, 493 F. Supp. 3d 171, 219 (W.D.N.Y. 2020) ("The delay from March 2020 through July 2020 was necessary due to the COVID-19 pandemic . . . and the health and safety risks associated with it.").

Even so, the Court recognizes that "[p]ursuant to the Sixth Amendment, the court and the government owe an affirmative obligation to criminal defendants and the public to bring matters to trial promptly . . . This burden weighs particularly heavily on the government, which owe[s] the additional duty of monitoring the case

and pressing the court for a reasonably prompt trial." *United States v. Black*, 918 F.3d 243, 253-254 (2d Cir. 2019) (internal quotation marks and citations omitted). The Court acknowledges that the 8 months and 21 days it took to resolve Mr. LaTona's motion to withdraw was suboptimal, and that it should have handled the disposition of that motion much more aggressively despite its commitment to many pressing matters.  However, it analyzes that delay, which the Court concludes is neutral, in context.  Other motions were filed and pending during that period, and the delay was caused by negligence on the part of the Government, along with backlogged criminal cases and difficulties the Court had in finding conflict-free counsel at the inception of the pandemic.

In sum, there has been no indication of "deliberate government misconduct" regarding the delay in this case; as such, the delays have all been valid or neutral. The valid delays were from the substitution of defense counsel, motion practice by Defendant, and two interlocutory appeals, and the neutral delays stemmed largely from the suspension of jury trials by this District in the onset of the COVID-19 pandemic in conjunction with the Court's delayed action in handling Mr. LaTona's motion to withdraw.

### C.    Defendant's Assertion of the Right

"A defendant satisfies this prong by frequently, consistently, and explicitly asserting the right to a speedy trial." *Reyes-Batista*, 844 Fed. Appx. at 407 (internal citations omitted).  A "lack of timeliness, vigor or frequency" in asserting the right

does not waive the claim, but it undercuts it. *Rayborn v. Scully*, 858 F.2d 84, 93 (2d Cir. 1988).

Defendant argues that he has been "very vocal" about his speedy trial rights and associated concerns since the beginning of the case. According to Defendant, after the first 10 months of delays following remand, he "consistently" asserted his right to a speedy trial and made objections to any further delays or exclusions of time. Contrary to Defendant's recollection, the Government states that Defendant has failed to assert his right firmly or consistently, and when he has done so, it has been concurrent with his frequent filing of motions and interlocutory appeals, and substitutions of counsel.

Per the Docket, Defendant did not mention his right to a speedy trial until February 10, 2021, when the Court engaged Defendant in a *Faretta* colloquy and determined he could proceed *pro se*. Defendant did not object to the Government's motion for exclusion of speedy trial time, although he did inquire about whether previously excluded time was attributed to himself or the Government. *See* Dkt. No. 593, pp. 37-40.

Defendant first unequivocally professed his right to a speedy trial at a status conference on September 2, 2021, over 21 months after the remand.[12] *See*

---

[12] Defendant argues that he declared his right to a speedy trial much earlier than September 2021. In support of this argument, he attaches as an exhibit to his motion copies of letters, with intermittent dates from April 2020 through November 2020, that appear to have been sent to Mr. LaTona, this Court, former Chief Judge Frank P. Geraci, Jr., and Second Circuit Judge Raymond J. Lohier, Jr. *See* Dkt. No. 661-2. Of course, the Court was not privy to any letters sent to defense counsel or other judges if Defendant did not also send the Court those letters. The letters, which do not appear on the Docket other than as attachments to subsequent filings by Defendant, do reference Defendant's speedy trial rights and his concern about the slow progress of his criminal case. Even so, it looks like the primary objective of the letters was for the Court to address (1) Defendant's concerns about prosecutorial misconduct and

CM/ECF Minute Entry, 09/02/2021.  At almost every proceeding since then, Defendant has done the same.[13]  *See* Dkt. Nos. 644, 651, 664, 686 (Minute Entries from 9/29/2021, 10/12/2021, 11/18/2021, and 2/2/2021, respectively).

Even so, Defendant's speedy trial assertions have been, at times, incompatible with the delays in this case attributable to him.  For example, on September 10, 2021, the Government filed a motion (Dkt. No. 635) to set a date for trial.  Even though Defendant objected to any exclusion of speedy trial time a week beforehand on September 2, 2021, he filed a response to the Government's motion requesting that the Court deny it in its "entirety" because he wanted the Court to decide certain motions made by him, particularly his Rule 6 motion as to alleged prosecutorial misconduct.  *See* Dkt. No. 640, pp. 1, 6; Dkt. No. 642 (supplement to Defendant's response).  Similarly, on May 6, 2022, the Government filed a motion for miscellaneous relief (Dkt. No. 706), that included a request that the Court set a trial date in advance of the May 25, 2022 status conference to expedite the trial and

---

impropriety at the grand jury proceedings (he had not yet filed his Rule 6 motion), and, in tandem, (2) Defendant's possible inclination to proceed *pro se*.

[13] At a status conference on December 16, 2021, Defendant stated he had no objection to excluding time until the next-scheduled status conference because of his pending Second Circuit appeals, and he did not disagree with the Court's plan to hold the case on "standby" for about 30 days for this reason.  *See* Dkt. No. 674 (CM/ECF Minute Entry, 12/16/2021).  In his reply papers, Defendant now argues, in hindsight, that he made a "poor decision" at that status conference and now wishes he had objected.  He contends that he failed to object because of a COVID-19 infection and "brain fog," and lingering complications from receiving the COVID-19 vaccine.  Regardless of the reason for Defendant's lack of objection on December 16, 2021, the Court has considered the period from September 2021 until present in its entirety (along with the period from the remand until September 2021) in assessing whether Defendant has asserted his right to a speedy trial.  From September 2021 until present, at practically every proceeding Defendant has articulated his desire for a speedy trial (even if inconsistent with Defendant's request that the Court adjudicate certain matters).

to allow for sufficient time to move witnesses in Federal Bureau of Prisons custody to this District; Defendant opposed that motion (Dkt. No. 712).

Most recently, during the proceeding on May 25, 2022 when Mr. Singer was relieved as standby counsel and Mr. Foti appointed in his place, Defendant stated for the first time (*see supra*, pp. 11-12 n.6) that it was his intention to represent himself *pro se* until his retrial, and to then be represented fully by counsel for the retrial should his motions to dismiss be denied.  While acknowledging that if an attorney was to represent him fully at the retrial the attorney would need time to familiarize himself with the case and the record, as well as noting his understanding that retrial in that instance could not be "immediate," Defendant objected to the exclusion of speedy trial time until September 27, 2022, the tentative date for jury selection that was set by the Court.  Defendant also stated that he is ready to proceed to trial, but he wants the Court to first decide his pending motions and conduct an *in camera* inspection of the grand jury transcripts.

Moreover, the instant speedy trial motion was not filed until November 22, 2021, just about 2 years after the remand.  *See*, *e.g.*, *United States v. Black*, 845 Fed. Appx. 42, 48 (2d Cir. Feb. 26, 2021) (summary order) ("[T]he fact that it took [defendant] so long to raise the issue [of a speedy trial] weighs heavily in the government's favor."); *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) ("both defendants waited roughly 22 months before advancing their speedy trial claims, and this hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them").

The Court therefore concludes that this factor weighs against finding a Constitutional violation.  "Where the defendant seeks or benefits from a delay in proceeding to trial, it will militate against a finding that the defendant's Sixth Amendment right to a speedy trial has been violated."  *United States v. Zerbe*, 596 F. Supp. 2d 267, 273 (D. Conn. 2009) (collecting cases) ("Having sought the changes that caused the delays in proceeding to trial in the first place, [defendant] cannot now assert a claim that his Sixth Amendment right to a speedy trial has been violated on the basis of those delays."); *see Reyes-Batista*, 844 Fed. Appx. at 408 (holding the district court did not abuse its discretion in concluding defendant "had no serious desire for a speedy trial" because "invoked this right opportunistically," which "heavily discounted" his assertion under the *Barker* test).

### D.    Prejudice to Defendant

The fourth factor, prejudice to the defendant, "should be assessed in the light of the interests of defendant which the speedy trial right was designed to protect", namely, "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  *Barker*, 407 U.S. at 532.  Of these interests, the last is the "most serious".  *Id.*  Prejudice that is merely conjectural does not suffice to warrant dismissal.  *See United States v. Moreno*, 789 F.3d 72, 81 (2d Cir. 2015); *see also Barker*, 407 U.S. at 521.  Nevertheless, the presumption of prejudice inherent in a sufficiently lengthy delay also may be enough for a defendant to prevail on a Sixth

Amendment claim even absent "proof of particularized prejudice."  *Doggett*, 505 U.S.
at 655.

As the Government cannot deny, Defendant has been in custody for a
significant period time since his arrest in 2014, with much time spent in local jails.
However, as observed by the Government, Defendant spent "several years" in the
Federal Bureau of Prisons after his conviction and sentencing following his first trial,
and during the pendency of his Second Circuit appeal—and he has been detained in
this District for just about 30 months since the case returned on remand for a retrial.
In this sense, the prejudice in this case is distinguishable from the prejudice to
defendants in the cases relied upon by Defendant.  *Compare United States v.
Tigano*, 880 F.3d 602, 618 (2d Cir. 2018) ("Nearly seven years of pretrial detention
in local jails—before the defendant has been convicted of any crime—is precisely
the type of prejudice contemplated by the right to a speedy trial."); *United States v.
Pennick*, 10-CR-191-A, 2016 U.S. Dist. LEXIS 101216, *22 (W.D.N.Y. Aug. 2, 2016)
(finding prejudice "although there [was] no evidence [defendant]'s defense ha[d]
been affirmatively impaired as a result of the extraordinary delays," where defendant
had spent about 54 months in pretrial detention, and 25 months on electronically-
monitored home incarceration), *affirmed by United States v. Pennick*, 713 Fed.
Appx. 33 (2d Cir. Nov. 2, 2017) (summary order).

Aside from the length of his incarceration, Defendant argues that he has
endured an "[i]nexcusable amount of anxiety," as well as detention in local jails
during the COVID-19 pandemic, with no visits from family and twice being infected
by the virus.  The Court takes these concerns seriously while recognizing that they

28

are undoubtedly experienced to a degree by any pretrial detainee within the past couple years.

Defendant further argues that he has suffered "significant" prejudice that has hurt his trial strategy and "impaired his defense."  He also argues that two "material witnesses" favorable to his defense who are also family members have died in the past two years while the case has been pending retrial, and the Government has therefore benefitted from the delay at his expense.  Defendant refrains from describing much of the testimony he anticipated from those witnesses because he argues he does not want to disclose that testimony as part of his trial defense.

According to Defendant, the first witness, his stepfather who raised him and who died on April 14, 2021, would have testified "about numerous things . . . that would have disconnected [Defendant] from this conspiracy," as well as about the bias and hate co-defendant (and potential Government witness) Marcel Worthy had against Defendant due to jealousy.[14]  The Government responds that Defendant's claims are conjectural and self-serving.  In the alternative, the Government reasons that this topic of bias, "if founded, could easily be directed toward the witness himself, should that witness testify, or to anyone else who was aware of the circumstances surrounding the alleged incident that made the witness jealous."

Defendant asserts that the second witness, his first cousin from Columbus, Ohio and who died on October 1, 2021, would have testified about Defendant's life in Columbus from 2001 to 2005, and how he was never involved in gang activity and

---

[14] Marcel Worthy was a Government witness at Defendant's first trial.  *See* CM/ECF Minute Entry, 09/20/2017.

instead "hated gang members and how weak they were as men."  The Government

responds that this testimony would be "largely irrelevant to the question of whether

[D]efendant was associated with a gang in New York where he is alleged to have

engaged in gang-related activity beginning in 2005 through late 2014."

The Court recognizes that "the sort of prejudice contemplated by *Barker*'s

fourth factor . . . is . . .  impediments to the ability of the defense to make its own

case (*e.g.*, if defense witnesses are made unavailable due to the government's

delay)."  *United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008); *see Gonzalez v.*

*Superintendent, Sullivan Correctional Facility*, 761 F. Supp. 973, 979 (E.D.N.Y.

1991). ("Witnesses who die or disappear, or whose memories fade, may unfairly

prejudice a defendant whose case relies on their testimony.").

In this case, however, it is questionable whether the testimony of the alleged

witnesses Defendant names, at least one who appears to be a character witness,

would have been admissible at the retrial.  The Government also notes that neither

of these witnesses were called by the defense in his first trial on the same charges.

*See* CM/ECF Minute Entry, 09/20/2017 (only one defense witness, and it is neither

of the two Defendant now asserts are material and unavailable).  In addition,

Defendant has not demonstrated that the two witnesses would have testified at the

retrial, and he does not assert that he has no other witnesses who are prepared to

offer substantially the same testimony as these two witnesses.  Last, Defendant filed

several motions in April 2021, the month of his stepfather's passing, including his

Rule 6 motion and motion for the Court's permission to adopt the pretrial motions

filed before by Mr. LaTona.  As discussed above, Defendant did not explicitly assert

his right to a speedy trial until September 2, 2021.  And when his cousin passed away in early October 2021, the Court had not yet heard argument, or ruled on, Defendant's many pretrial motions that were pending.

As such, this claim regarding prejudice does not change the Court's calculus on whether there is a constitutional violation in this case.  *See*, *e.g.*, *United States v. Lasker*, 481 F.2d 229, 237 (2d Cir. 1973) (finding that claim of prejudice to defendant was "insubstantial" even though, among other things, two character witnesses for defendant died during the period of the delay, because defendant had not complained about the delay for months after their deaths and there was "conspicuously absent any allegation that [defendant was] unable to secure other character witnesses"), *cert. denied Lasker v. United States*, 415 U.S. 975 (1974); *United States v. Infanti*, 474 F.2d 522, 528 (2d Cir. 1973) (finding no violation of defendant's right to a speedy trial even though defendant alleged that two witnesses critical to his case had died, where "one assertion of prejudice in this regard [was] not substantiated"); *United States v. Stevens*, 04-CR-222S, 2009 WL 2381897, 2009 U.S. Dist. LEXIS 66926, *29-30 (W.D.N.Y. July 31, 2009) (defendant argued prejudice from the delay because a "material witness" had "died of natural causes" during the pendency of the case, who he generally claimed would have testified as an exculpatory witness, but the Court noted the witness died well before [defendant] asserted his speedy trial right" and defendant had not "demonstrated that [the witness] would have testified at all, let alone on his behalf").

Taken together, the Court finds that this factor does not weigh in either party's favor.  While Defendant's pretrial detention has been very lengthy, the Court must

31

consider the procedural history of this case and the fact that Defendant spent a number of those years in the custody of the Federal Bureau of Prisons in assessing the prejudice to Defendant.  Moreover, while Defendant argues he has demonstrated "strong proof of particularized prejudice," the Court concludes that the prejudice to which he refers, *i.e.*, unavailable witnesses, likewise does not warrant dismissal of the Superseding Indictment for the reasons stated above.

      **E.**      **Balancing the *Barker* Factors**

      The Court has given careful consideration to the proper weight to assign to the four inter-related *Barker* factors in assessing Defendant's Sixth Amendment speedy trial claims.  Balancing these factors and all related facts and circumstances in this case, the Court finds that the delays in bringing Defendant to trial have not impaired the fundamental fairness of the prosecution enough to warrant dismissal under the Sixth Amendment.

**II.**      <u>**Speedy Trial Act Claim**</u>

      The Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174, generally requires a defendant's trial to begin within 70 days of the defendant's first appearance before a judicial officer or the filing of an indictment, whichever occurs later.  *See* 18 U.S.C. § 3161(c)(1); *see also United States v. Oberoi*, 295 F. Supp. 2d 286, 289 (W.D.N.Y. 2003), *aff'd* 547 F.3d 436 (2d Cir. 2008).  The Speedy Trial Act also instructs that, as here, in the event of a retrial following a remand from the Second Circuit,

> If the defendant is to be tried again following an appeal…, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for

> retrial not to exceed one hundred and eighty days from the
> date the action occasioning the retrial becomes final if
> unavailability of witnesses or other factors resulting from
> passage of time shall make trial within seventy days
> impractical.  The periods of delay enumerated in section
> 3161(h) are excluded in computing the time limitations
> specified in this section.

18 U.S.C. § 3161(e).  Thus, the speedy trial clock restarts after a remand from the

Second Circuit.  *See United States v. Bryce*, 287 F.3d 249, 256 (2d Cir. 2002) ("The

Speedy Trial Act provides that a defendant shall be afforded a trial within seventy

days of indictment, first appearance, or *after remand from an appeal*.") (emphasis

added); *United States v. Shellef*, 718 F.3d 94, 96 (2d Cir. 2013) ("all parties

agree[d]" the "starting date for purposes of calculating time under the Speedy Trial

Act provision government retrials" was the date the Second Circuit's mandate was

issued); *United States v. Rivera*, 844 F.2d 916, 919 (2d Cir. 1988) ("In a case where

the appellate court orders a new trial after conviction, it is the appeal that constitutes

'the action occasioning the retrial', and the 70-day period begins to run, according to

§ 3161(e), on the date the appeal becomes final . . . Simply put, jurisdiction follows

the mandate . . . For Speedy Trial Act purposes the same rule applies whether the

case involves retrial following appeal or a pretrial interlocutory appeal.").

If the defendant is not brought to trial before the 70-day clock runs out, the

indictment "shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).

Dismissal of an indictment for a Speedy Trial Act violation may be with or without

prejudice to reinstatement of the charges.  *See* 18 U.S.C. § 3162(a)(2).

The Speedy Trial Act automatically excludes certain periods of delay from the

70-day clock, and they do not count against the 70-day time-to-trial clock.  *See, e.g.*,

33

18 U.S.C. § 3161(h)(1)(A)-(H).  Of note is 18 U.S.C. § 3161(h)(1)(D), which excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  *See United States v. Tinklenberg*, 563 U.S. 647, 660 (2011) (the filing of a motion automatically stops the speedy trial clock without regard to causation or the reasonableness of ensuing delay).  Other bases for the exclusion of time are up to thirty days "during which any proceeding concerning the defendant is actually under advisement by the court" (18 U.S.C. § 3161(h)(1)(H)); "any period of delay . . . if the judge . . . find[s] that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" (18 U.S.C. § 3161(h)(7)(A), under which the court must "set[] forth, in the record of the case, either orally or in writing, its reasons [for so finding]."); and a "delay resulting from any interlocutory appeal" (18 U.S.C. § 3161(h)(1)(C)).

The Government's position is that no more than 2 days have run on the statutory Speedy Trial Clock.  In stark contrast, Defendant argues that a total of 374 days, 400 days, or 468 days has run since issuance of the Mandate, depending on what periods of allegedly non-excludable time are or are not counted. The defendant bears the burden of proving a violation of the Speedy Trial Act on such a motion. *See* 18 U.S.C. 3162 (a)(2) (providing that "[t]he defendant shall have the burden of proof of supporting such motion . . ."); *see also United States v. Adams*, 448 F.3d

492, 503 (2d Cir. 2006).  The Court will examine each of the periods of alleged non-excludable time raised by Defendant, in turn.[15]

### A.    December 10, 2019 through January 13, 2020 – 2 days run

Defendant argues that 34 days ran when the case was remanded from the Second Circuit.

The Second Circuit Mandate was issued on November 19, 2019.  The next day, when the Mandate was docketed, the Court reopened the case.  On December 2, 2019, a status conference was held, and the Court conditionally appointed Mr. Latona as CJA counsel, pending Defendant's completion of a financial affidavit.  It was noted that Defendant was housed in Federal Bureau of Prisons custody at FCI Lewisburg, Pennsylvania.  The Court scheduled a further status conference for December 10, 2019, excluding time on the record until that date pursuant to 18 U.S.C. § 3161(h)(1)(F) ("delay resulting from transportation of any defendant from another district . . . except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable").

---

[15] In his initial motion papers, Defendant generally argues an 84-month delay in his case, discounting that the case is now back on remand for a retrial.  Moreover, Defendant begins the analysis of his motion with a heading, "Speedy Trial Act Claim" that contains general case law and no substantive discussion of the instant case.  What follows is the heading, "The Sixth Amendment Right to Speedy Trial," and then a substantive discussion of the application of each of the *Barker* factors.  Interspersed in that section are arguments concerning his motion to dismiss on statutory speedy trial grounds.  It is not until his reply papers that Defendant more explicitly sets forth his position on the periods of time that he argues are non-excludable.  The Court hereby addresses the periods raised by Defendant in both his initial papers and reply papers, viewing those together, in light of his *pro se* status, rather than concluding he waived the argument as suggested by the Government.  *See* Dkt. No. 667, p. 20.  In any event, the Government addressed the merits of Defendant's Speedy Trial Act motion in the alternative, "attempt[ing] to identify various places where the defendant appeared to argue about specific periods of time" in his initial motion papers.

On December 10, 2019, Defendant had not yet been produced for the proceeding, with the Court noting that he was being housed in Ohio.  Mr. LaTona noted that he would be out of the country until January 6, 2020.  The Court scheduled a status conference for January 10, 2020, again excluding time on the record until the date of the next Court proceeding, pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(iv), and (h)(1)(F).  *See* Dkt. No. 529 (Speedy Trial Order).  This exclusion of time was based on the parties' joint request for the Court to grant a continuance so that Defendant could be transferred to this District, to allow time for Mr. LaTona to review the case file, to maintain continuity of counsel despite Mr. LaTona's international travel plans, and to allow for plea negotiations.

On January 10, 2020, the Court issued a text order that Defendant had not been produced for the Court appearance scheduled for that day, "[d]ue to administrative oversight by court staff."  The Court rescheduled the matter for January 13, 2020.  On that rescheduled date, Defendant appeared, and he was found eligible for assigned counsel with Mr. LaTona accepting the appointment.

The Court concludes that a total of 2 days ran during this period, when the status conference was administratively taken off the Court's calendar and rescheduled.  *See* Dkt. No. 526; Fed. R. Crim. P. 45(a)(1)(A) ("When the period is stated in days . . . exclude the day of the event that triggers the period").

Defendant argues when it became apparent on December 10, 2019 that Mr. LaTona would be out of the country until January 6, 2020, the Court should have appointed a different attorney so the case could "continue to move forward."  What Defendant disregards, however, is that the exclusion of time was based on more

than just Mr. LaTona's travel plans, including Mr. LaTona's need to review the case file, and that finding a different CJA counsel at that juncture would have likely delayed the proceedings even further.

**B.     March 27, 2020, through December 17, 2020 – 0 days run**

Defendant argues the next sequential period that accrued was from March 27, 2020 through December 17, 2020, *i.e.*, what he calculates as 300 days, or 10 months,[16] from the date Mr. LaTona filed his motion to withdraw to the date the Court granted his motion and assigned new CJA counsel, Mr. Spitler.

As discussed above in the "Background" section of this Decision and Order, nine days before Mr. LaTona filed his motion to withdraw as counsel, on March 18, 2020, the District issued a General Order suspending criminal jury trials due to the COVID-19 outbreak in the District.  This Order and successive ones automatically excluded time in all cases under the Speedy Trial Act from March 18, 2020 through July 15, 2020.  Because of the pandemic, no jury was empaneled in this District after March 18, 2020 until late summer and early fall of 2020.

Defendant argues that no exclusions were made on the record pursuant to the Speedy Trial Act between March 27, 2020 and December 17, 2020.  To be sure, no such exclusions were made on the Docket but from March 27, 2020 until July 15, 2020, the District's standing orders automatically excluded time in all criminal cases under the Speedy Trial Act due to the COVID-19 outbreak.  Thus, the timeframe at issue is actually July 15, 2020 until December 17, 2020, or a period of 154 days.

---

[16] The Court has independently calculated this timeframe as 8 months and 21 days, or 266 days.

The Court finds that during that 154 days, Mr. LaTona's pending motion (Dkt. No. 547), as well as other motions pending on the Docket (Dkt. Nos. 534, 540, 565), automatically excluded time as a matter of law pursuant to 18 U.S.C. § 3161(h)(1)(D).

Again, the Government's position is that only 2 days total have run on the speedy trial clock.  In the context of analyzing this March 27, 2020 through December 17, 2020 period, however, the Government requests that pursuant to 18 U.S.C. § 3161(e) the Court nevertheless make findings that "factors resulting from passage of time" made trial within 70 days "impractical" and therefore the time-to-trial clock should be extended to 180 days.  Dkt. No. 667, p. 22 n. 8; *see Shellef*, 718 F.3d at 101, 112 (holding that "the findings necessary to extend the prescribed period for retrial from 70 to 180 days under 18 U.S.C. § 3161(e) can be made after the initial 70-day period for retrial has passed . . . as long as it is based on 'factors resulting from passage of time' arising within that 70-day period").

While the Court deems this unnecessary because of its conclusion on the Speedy Trial Act motion to dismiss, it hereby makes this finding in the alternative (and in the interest of a complete record and because the issue has been raised by the Government), in the event the 154 days identified by Defendant *have* run, contrary to the Court's finding here.  The factors supporting such an extension are based on the events that took place within the March 27, 2020 through December 17, 2020 period, namely, the change of counsel issue that coincided with the outbreak of COVID-19 cases in this District, as well as a multitude of motions filed by the parties.

### C.   May 21, 2021, through August 19, 2021 – 0 days run

Next, Defendant argues that the period he calculates as 74 days,[17] from May 21, 2021, when the Court heard oral argument on his motion to recuse the Court, through August 19, 2021, when a Decision and Order was issued denying that motion, is non-excludable time under the Speedy Trial Act.  Defendant argues that the Court exceeded the 30-day advisement period and did not enter the appropriate Speedy Trial Act finding to extend that automatically excluded period.

Section 3161(h)(1)(H) of Title 18 United States Code permits the exclusion of 30 days once a motion is taken "under advisement" by the Court.  A motion is taken under advisement "once the court has everything it expects from the parties prior to making [its] decision."  *United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983), *cert. denied*, 466 U.S. 905 (1984), citing *United States v. Bufalino*, 683 F.2d 639, 642-645 (2d Cir. 1982), *cert. denied*, 459 U.S. 1104 (1983).  The motion to recuse the Court was taken under advisement on May 21, 2021, when the motion was argued (*see* CM/ECF Minute Entry, 08/05/2021 [the Court "reserve[d] decision" on the motion]).  This means that the 30-day under-advisement period concluded on June 21, 2021.  It then took the Court an additional 58 days to issue a Decision and Order deciding the motion.

Even so, the Court instead finds that zero days ran during that timeframe, because in addition to the recusal motion (Dkt. No. 593), there were many other motions pending (*see infra*, Appendix) that automatically excluded time pursuant to

---

[17] The Court has independently calculated the period differently, as 58 days of time that Defendant argues are non-excludable (subtracting the 30-day advisement period).

18 U.S.C. § 3161(h)(1)(D).  Although the oral argument was held with respect to the recusal motion on May 21, 2021, the Court had not yet held a "hearing" on the remaining, pending motions.  Indeed, the Court chose to adjudicate the recusal motion first, apart from Defendant's other motions, because if it granted the motion the Court would not then decide Defendant's remaining motions as the case would need to be assigned to a different Judge.

### D.  July 22, 2021 through September 29, 2021 – 0 days run

Finally, Defendant argues that a period partly overlapping the last-contested period, namely, July 22, 2021 through September 29, 2021, was not excluded.  Defendant calculates that period as 60 or 64 days.  Defendant explains that the precipitating event of this non-excludable period was the beginning of his conflict with Mr. Spitler on July 22, 2021, and September 29, 2021 was when Mr. Spitler was relieved as standby counsel and Mr. Singer was appointed in his place.  He argues that he was "stuck helpless and could not move forward" because of his issues with Mr. Spitler.

Defendant's motion for "recusal" of Mr. Spitler (Dkt. No. 628) is stamped as having been received by the Court on July 22, 2021.  On August 5, 2021, the Court set a status conference for August 12, 2021.  The Court then adjourned the status conference to August 19, 2021, upon informal request by Defendant.  On August 19, 2021, the Court addressed Defendant's submissions concerning his relationship with Mr. Spitler, with Mr. Spitler asking to be relieved as standby counsel and the Court indicating it was inclined to grant the motion.  The Court adjourned the matter for two weeks, until September 2, 2021, to allow for time to appoint new standby counsel.

40

On August 31, 2021, the Court held a status conference where the new standby counsel agreed to accept the appointment, but the Court noted it would officially relieve Mr. Spitler of his position and assign new standby counsel at the status conference on September 2, 2021, which Defendant would be present for.

On August 25, 2021, Defendant filed a notice of appeal as to his motion for recusal of the Court from this case.

On September 2, 2021, a status conference was held at which the Court informed the parties that the anticipated replacement standby counsel had notified the Court that he was unable to take the assignment due to personal circumstances that had arisen since the August 31, 2021 status conference.  The Government excluded time on the record pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(b)(iv).[18]  A status conference took place on September 24, 2021, and then again on September 29, 2021, the latter date when Mr. Spitler was relieved of his position as standby counsel and Mr. Singer was appointed as new standby counsel.

The Court finds that time was automatically excluded from the date of Defendant's motion to "recuse" Mr. Spitler, until the date that he was relieved of that appointment and replacement standby counsel, Mr. Singer, accepted the

---

[18] A Speedy Trial Order was later docketed, excluding time from July 22, 2021 until September 29, 2021. Dkt. No. 634.  Any interests-of-justice exclusion backdated to July 22, 2021, however, is not permissible. "A retroactive finding that a continuance was granted in order to further the ends of justice to create excludable time is not permitted." *United States v. Sachakov*, 812 F. Supp. 2d 198, 205 (E.D.N.Y. 2011), citing *United States v. Kelly*, 45 F.3d 45, 47 (2d Cir. 1995); *see United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985) ("Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period.").

appointment.  Moreover, again, there were many other motions pending (*see infra*, Appendix) that automatically excluded time pursuant to 18 U.S.C. § 3161(h)(1)(D). Defendant argues that the Court should not have taken as long, *i.e.*, 70 days, as it did to find and appoint replacement standby counsel.  As previously stated, each time Defendant has changed attorneys, it has been an increasingly more difficult task to find conflict-free counsel for Defendant.  In addition, the process was further delayed because the first CJA attorney the Court identified as an anticipated replacement ultimately determined he could not take on the assignment.

Thus, zero days ran during this timeframe.

### E.    2 days have run on the Speedy Trial Clock; 68 days remain

In sum, 2 days have elapsed on the Speedy Trial Clock in the periods Defendant takes issue with, meaning 68 days remain.  In the alternative, pursuant to § 3161(e), 156 days have run (2 days from the December 10, 2019 through January 13, 2020 period, and 154 days from the March 27, 2020, through December 17, 2020 period), and 24 days remain.  As such, denial of Defendant's motion to dismiss on these grounds is warranted.

### III.   Due Process Claim

Finally, in arguing that his constitutional rights were violated due to the amount of time it has taken to bring the case to trial, Defendant refers a few times to an alleged violation of his Fifth Amendment due process rights (Dkt. No. 661, pp. 1, 7, 11, 16).  However, his motion papers contain no substantive argument that there was such a violation; he only argues that the Government delayed the case in order

42

to obtain a "tactical advantage[ ]" over Defendant, by engaging in alleged misconduct at the grand jury proceedings.[19]

"To prevail on a claim of unconstitutional pre-indictment delay, a defendant bears the heavy burden of proving both that he suffered actual prejudice because of the alleged pre-indictment delay and that such delay was a course intentionally pursued by the government for an improper purpose." *United States v. Merced*, 19 Cr. 0832 (ER), 2021 WL 5647827, 2021 U.S. Dist. LEXIS 229659, *12 (S.D.N.Y. Nov. 30, 2021), quoting *United States v. Cornielle*, 171 F.3d 748, 751 (2d Cir. 1999) (internal quotation marks and citations omitted) (emphasis added); *see United States v. Marion*, 404 U.S. 307, 324 (1971) (defendant must show that the pre-indictment delay "caused substantial prejudice to [his] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.").

The Court views Defendant's due process argument as an attempt to resurrect his motion (Dkt. No. 596) pursuant to Federal Rule of Criminal Procedure 6 for grand jury materials, which was denied by the Court in its November 18, 2021 Decision and Order (Dkt. No. 657) concerning various pretrial motions.[20]  Because Defendant has demonstrated neither actual prejudice nor bad faith as to a pre-

---

[19] To the extent this could be construed as an argument that Defendant's Fifth Amendment due process rights have been violated based solely on the length of his pretrial detention, Defendant advanced that argument in connection with his bail motion (Dkt. No. 702), and the Court will therefore address it when it resolves his bail motion.

[20] Defendant has since filed a motion for reconsideration (Dkt. No. 705) of his Rule 6 motion, which is pending.

indictment delay, the Court finds that there has been no violation of Defendant's Fifth Amendment rights and that no further discussion on this point is necessary.

## **CONCLUSION**

For the reasons set forth herein, the Court DENIES Defendant's motion to dismiss (Dkt. No. 661) because his speedy trial rights under both the Speedy Trial Act and the Sixth Amendment were not violated, and there is no Fifth Amendment pre-indictment delay due process violation. Defendant's request for "immediate release by the law" is likewise DENIED.[21]

The parties shall report for the previously scheduled (*see* Dkt. No. 716) status conference on June 2, 2022 at 2:30 p.m. for Mr. Foti to meet with Defendant in person and for Mr. Singer to turn over the case files to him, in addition to any other issues that may arise in the meantime. As further indicated by the Court, a hearing on Defendant's due process motion to dismiss (Dkt. No. 679) is scheduled for June 13 and 14, 2022, and a tentative date for jury selection has been set for September 27, 2022, the latter which is of course dependent on the outcome of Defendant's due process motion to dismiss.

**SO ORDERED.**

    *s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  June 1, 2022
        Buffalo, New York

---

[21] The Court heard oral argument on Defendant's bail motion (Dkt. No. 702) on May 25, 2022, and a decision on that motion is forthcoming.

**APPENDIX**

| Date Filed / Docket Number | Motion or Significant Event |
|---|---|
| 11/20/2019, Dkt. No. 523 | Second Circuit Mandate vacating Defendant's conviction and remanding the case for a new trial |
| 12/2/2019, CM/ECF Minute Entry | Joseph La Tona, Esq. conditionally appointed Defendant's CJA counsel pending determination of his qualification for Court-appointed counsel |
| 1/13/2020, Dkt. No. 527 | **Mr. LaTona appointed as CJA defense counsel** |
| 2/25/2020, Dkt. No. 534 | Defendant's motion for permission to file pre-trial motions |
| 3/13/2020, Dkt. No. 540 | Defendant's motion for permission for defense counsel to review all documents and the *in camera* testimony regarding the issuance of search warrant |
| 3/20/2020, Dkt. No. 543 | Government's motion request to file a sur-reply |
| 3/27/2020, Dkt. No. 547 | Mr. LaTona's motion to withdraw as defense attorney |
| 6/22/2020, Dkt. No. 565 | Defendant's motion to delete a portion of his reply memorandum (*i.e.*, to strike a portion of his papers stating he would not oppose a protective order concerning the search warrant materials) |
| 10/7/2020, Dkt. No. 574 | Government's motion requesting a status conference |
| 11/18/2020, Dkt. No. 577 | Government's motion and renewed motion requesting a status conference |
| 12/11/2020, Dkt. No. 579 | Mr. LaTona's renewed motion to withdraw as defense attorney; Defendant's motion to grant Defendant's request to proceed *pro se* and appoint standby counsel |
| 12/17/2020, CM/ECF Minute Entry | **Mr. LaTona's motions to withdraw granted; Court appoints Kevin Spitler, Esq. as CJA counsel** |
| 1/29/2021, CM/ECF Minute Entry | Mr. Spitler mentions Defendant's intent to appear *pro se* |
| 2/10/2021, CM/ECF Minute Entry | ***Faretta* colloquy at which the Court determines Defendant may proceed *pro se*; Mr. Spitler relieved as defense counsel but appointed as standby counsel** |
| 3/5/2021, Dkt. No. 591 | Defendant's motion for extension of time to file |
| 3/11/2021, Dkt. No. 593 | Defendant's motion to recuse the Court |
| 4/1/2021, Dkt. No. 596 | Defendant's motion to produce (*i.e.*, motion to compel production of Rule 6 material) |
| 4/7/2021, Dkt. No. 598 | Defendant's motion to amend the protective order |
| 4/7/2021, Dkt. No. 599 | Government's motion to seal (*i.e.*, Defendant's motion at Dkt. No. 596, and any filings that address grand jury testimony) |
| 4/15/2021, Dkt. No. 605 | Defendant's motion for permission to file pre-trial motions (filed *pro se*, asking to adopt the motions filed by Mr. LaTona); motion for deletion of a portion of the reply memorandum |
| 4/23/2021, Dkt. No. 609-1 | Government's proposed, amended protective order (Exh. A) |
| 5/3/2021, Dkt. No. 610 | Defendant's motion to file document and assign docket number |

| 8/20/2021 (dated 7/19/2021), Dkt. No. 628 | Defendant's motion for a status conference and motion to "recuse" standby counsel, Mr. Spitler |
| --- | --- |
| 8/19/2021, CM/ECF Minute Entry | Mr. Spitler's oral motion to be relieved as standby counsel |
| 8/25/2021, Dkt. No. 632 | Defendant's notice of appeal of Court's denial of motion for recusal |
| 9/2/2021, Dkt. No. 631 | Defendant's motion for waiver of fees |
| 9/10/2021, Dkt. No. 635 | Government's motion to set a date for trial |
| 9/13/2021, Dkt. No. 636 | Defendant's motion for a private investigator |
| 9/29/2021, Dkt. No. 644 | **Mr. Spitler relieved as standby counsel; Robert Singer, Esq. appointed as standby counsel** |
| 10/5/2021 (dated 7/19/2021), Dkt. No. 647 | Defendant's motion for a ruling on Defendant's motion to recuse the Court (Dkt. No. 593), motion to recuse Mr. Spitler, and motion for a status conference |
| 10/12/2021, Dkt. No. 651 | Oral Argument held on various, pending pretrial motions |
| 11/18/2021, Dkt. No. 657 | Decision and Order on the parties' pretrial motions (Dkt. Nos. (Dkt. Nos. 534, 540, 596, 598, 599, 610, 631, 635, 636) |
| 11/19/2021, Dkt. No. 659 | Defendant's notice of appeal of Court's denial of pretrial motions |
| 11/22/2021, Dkt. No. 661 | Defendant's motion to dismiss on speedy trial grounds |
| 12/9/2021, Dkt. No. 670 | Defendant's letter request for an extension of time |
| 12/9/2021, Dkt. No. 671 | Defendant's motion for preclusion of acquitted conduct |
| 1/13/2022, Dkt. No. 679 | Defendant's motion to dismiss on due process grounds; **motion for recusal of standby counsel Mr. Singer** |
| 1/21/2022, Dkt. No. 683 | Government's motion to set a date for trial |
| 1/21/2022, Dkt. No. 684 | **Mr. Singer's motion to be converted from standby counsel to advisory counsel only, or in the alternative to withdraw from the case** |
| 2/9/2022, Dkt. No. 689 | Second Circuit Mandate dismissing Defendant's two interlocutory appeals due to lack of appellate jurisdiction |
| 2/28/2022, Dkt. No. 691 | Government's motion to hold Defendant motion to preclude acquitted conduct in abeyance |
| 3/15/2022, Dkt. No. 696 | Government's motion to exclude time and schedule a status conference |
| 3/25/2022, Dkt. No. 698 | Decision and Order granting in part and denying in part Government's motion to exclude time and schedule a status conference; further briefing schedule set for Defendant's motion to dismiss on due process grounds; May 25, 2022 status conference set for attorney-client issue and to possible set date for retrial |
| 4/19/2022, Dkt. No. 702 | Defendant's bail motion |
| 5/6/2022, Dkt. No. 705 | Defendant's motion for reconsideration of Rule 6 motion (Dkt. No. 596) |
| 5/6/2022, Dkt. No. 706 | Government's motion for miscellaneous relief, including setting a date for trial in advance of the next status conference |
| 5/17/2022, Dkt. No. 709 | Text Order denying Government's motion to set a trial date before the May 25, 2022 status conference; notifying parties |

| | |
|---|---|
| | that a hearing on Defendant's due process motion (Dkt. 679) will be scheduled on May 25, 2022, to take place sometime between May 31, 2022 through June 16, 2022 |
| 5/17/2022, Dkt. No. 711 | Defendant's motion to produce witnesses for due process hearing |
| 5/25/2022, Dkt. No. 716, CM/ECF Minute Entry | Status conference held, at which **the Court grants Defendant's motion to "recuse" Mr. Spitler as standby counsel and Mr. Singer's motion to withdraw; the Court appoints Mark Foti, Esq. as new standby counsel. Defendant requests that he remain *pro se* until his pending motions are decided, and then be appointed an attorney to fully represent him during the retrial. The Court states it will consider Defendant's request.**<br><br>Hearing on Defendant's due process motion is set to take place on June 13 and 14, 2022; the Court also indicates it will appoint Mr. Singer counsel to independently represent him should he testify at the hearing.<br><br>The Court hears argument on Defendant's bail motion and Fifth Amendment due process argument concerning the length of his pretrial detention; the bail motion is deemed submitted.<br><br>The Court reports that based on Mr. Foti's availability, the retrial may not take place in July or August. **A tentative trial date is set for September 27, 2022 (dependent on the outcome of Defendant's two pending motions to dismiss).** |
| 5/26/2022, Dkt. No. 717 | Defendant's motion to produce/ motion for a subpoena for camera footage from Cattaraugus County Jail, for purposes of June 13 and 14, 2022 due process hearing |