UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

RODERICK ARRINGTON,

             Defendant.

**DECISION AND ORDER**
15-CR-33-A

Pending before the Court is Defendant's *pro se* motion (Dkt. No. 702) for

"immediate release" from custody pursuant to (1) the Bail Reform Act of 1984, 18

U.S.C. § 3141, *et seq.*, and (2) the due process clause of the Fifth Amendment.[1]

The motion was filed on April 21, 2022.  On May 11, 2022, the Government

filed opposition papers (Dkt. No. 708), and on May 25, 2022, the Court heard oral

argument on the motion and deemed it submitted (*see* Dkt. Nos. 709, 716 [CM/ECF

Minute Entry, 05/25/2022]).  At a further status conference on June 2, 2022,

however, Defendant stated that he had mailed the Court a supplement to his bail

motion, which the Court had not yet received.  Defendant's supplemental bail motion

papers (Dkt. No. 728) were docketed later that same day, and the Government

responded (Dkt. No. 729) on June 7, 2022.  The Court has also considered

character letters (Dkt. Nos. 701, 715, 720) submitted on Defendant's behalf in

---

[1] Defendant also asks for dismissal of the Superseding Indictment, with prejudice, for the alleged due process violation.

determining the motion.  Upon review of all the papers and hearing argument from the parties, the Court hereby DENIES Defendant's motion.

## DISCUSSION

The Court assumes the parties' familiarity with the prior proceedings, which are discussed at length in the Court's Decision and Order that denied Defendant's motion to dismiss the Superseding Indictment on speedy trial grounds, *see* Dkt. No. 724, pp. 1-13, and the Court's Decision and Order that decided various pending pretrial motions of the parties, *see* Dkt. No. 657, pp. 3-8.

Preliminarily, and as previously noted (*see* Dkt. No. 703), scattered throughout Defendant's arguments concerning bail and due process, he reiterates and builds upon arguments made in his motion to dismiss on speedy trial grounds (Dkt. No. 661), which the Court denied on June 1, 2022 (Dkt. No. 724).  He likewise resurrects arguments from his motion to dismiss on due process grounds (Dkt. No. 679) concerning an incident at Cattaraugus County Jail in December 2021. The latter motion resulted in a due process hearing that was held on June 13 and June 14, 2022 (*see* Dkt. Nos. 733, 734), with post-hearing argument scheduled for the first week of August, after which the matter will be deemed submitted.  The Court has considered these arguments only to the extent that they are pertinent to Defendant's bail motion and due process motion to dismiss predicated on the length of his pretrial detention.

Defendant also resurrects his arguments made in his motion to compel and motion to dismiss based on alleged irregularities in the grand jury proceedings and for *in camera* review of grand jury material (Dkt. No. 596), which the Court denied on

November 18, 2021 (*see* Dkt. No. 657, pp. 21, 30).  The Court elects to address those arguments separately when it rules upon Defendant's pending motion for reconsideration (Dkt. No. 705) of his Rule 6 motion, which was filed on May 6, 2022.

## I.    Bail Motion

Under the Bail Reform Act of 1984, a criminal defendant awaiting trial must be released on bail unless the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  In making this determination, the Court must consider the factors listed in 18 U.S.C. § 3142(g), *i.e.*, (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

Due to the nature of the charges against Defendant, the rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community" applies.  18 U.S.C. § 3142(e)(3).  When the § 3142(e) rebuttable presumption applies, the Government retains the burden of persuasion, yet "a defendant must introduce some evidence contrary to the presumed fact[s] to rebut the presumption." *United States v. Rodriguez*, 950 F. 2d 85, 88 (quotation omitted) (2d Cir. 1991). "Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be

considered when deciding whether to release a defendant." *Id.* (quotation omitted).

The § 3142(e) presumption, if unrebutted, is alone sufficient to sustain the

Government's burdens of proof on danger and serious risk of flight. *See id.*; *see*

*also United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014).

With respect to the history of Defendant's pretrial detention, he was

temporarily detained at an initial appearance before Magistrate Judge Hugh B. Scott

in 14-CR-204-A on November 1, 2014 (14-CR-204-A, Dkt. No. 1).[2]  A detention

hearing was then held on November 13, 2014, with the Government again moving

for detention and the parties proceeding by proffer.  The Court found Defendant a

flight risk by a preponderance of the evidence and a danger by clear and convincing

evidence, and ordered Defendant detained (14-CR-204-A, Dkt. No. 11).  When

Defendant was arraigned before Magistrate Judge Scott on July 8, 2015, following

the return of the Superseding Indictment in this case (15-CR-33-A), and the

Government again moved for detention.  The Court continued Defendant's detention

status based on its findings from the related, 4-CR-204-A case (Dkt. No. 18).

Defendant has remained in pretrial detention since then, aside from the period of

years he was incarcerated in the Federal Bureau of Prisons following his conviction

---

[2] As the Court previously explained, Defendant was initially arrested via criminal complaint and indicted in 14-CR-204-A (*see* 14-CR-204-A, Dkt. Nos. 1, 9). He was charged alone with violations relative to a search warrant executed at his mother's residence on or about October 31, 2014 (*see* 14-CR-204-A, Dkt. No. 9). On February 20, 2015, a grand jury in this District returned an Indictment charging Hicks and Worthy (again, who were to become Defendant's co-defendants in this case), with one count of narcotics conspiracy, in the instant case, 15-CR-33-A (Dkt. No. 1). Approximately four months later, on June 19, 2015, a grand jury returned a 15-count Superseding Indictment in 15-CR-33-A (Dkt. No. 17). The Superseding Indictment also included all four charges from the Indictment in 14-CR-204-A, in Counts 9 through 12. The Indictment in 14-CR-204-A was then dismissed by the Government with leave of the Court (*see* 14-CR-204-A, Dkt. No. 40), and the Government proceeded against Defendant and to trial on the Superseding Indictment in 15-CR-33-A.

from the first trial in this case, without modification to the detention order.  During an

appearance before this Court on December 16, 2021, following Defendant's

conviction and sentence to multiple terms of life imprisonment, the return of the

Second Circuit Mandate vacating Defendant's conviction and remanding the case

for a retrial, and Defendant's election to proceed *pro se*, Defendant first noted that

he wished to file a bail motion.  The Court explained that Defendant could do so at

any time, as he was acting as his own attorney in the case.[3]

Following a detention hearing, such as the hearing held before Magistrate

Judge Scott in this case, the hearing may be reopened "at any time before trial if the

judicial officer finds that information exists that was not known to the movant at the

time of the hearing and that has a material bearing on the issue whether there are

conditions of release that will reasonably assure the appearance of such person as

required and the safety of any other person and the community."  18 U.S.C. §

3142(f)(2).  Alternatively, the Court "may . . . permit the temporary release [of a

defendant] . . . to the extent that the [Court] determines such release to be

necessary for preparation of the person's defense or for another compelling reason."

18 U.S.C. § 3142(i).  "New and material information for Section 3142(f)(2)(B)

purposes consists of something other than a defendant's own evaluation of his

character or the strength of the case against him: truly changed circumstances,

something unexpected, or a significant event."  *United States v. Garrett*, 11-CR-

---

[3] While there is no transcript of the December 16, 2021 remote proceeding on the Docket, the Court specifically remembers the exchange with Defendant concerning his expressed desire to file a bail motion.  *See* Dkt. No. 674 (CM/ECF Minute Entry, 12/16/2021 ["Def wants to file a bail motion in the meantime, noting that he is on quarantine; the Court states Def may file a bail motion."]).

195S, 2012 WL 2573292, 2012 U.S. Dist. LEXIS 100814, *6 (July 2, 2012) (internal quotation marks and citation omitted).

The Court concludes that Defendant has not presented any new information that would warrant a change in his custody status pursuant to 18 U.S.C. § 3142(f)(2) or temporary release pursuant to 18 U.S.C. § 3142(i).

In his supplemental bail motion papers (Dkt. No. 728), Defendant argues that on May 26, 2022, his father was informed that he is terminally ill with stage-IV cancer and that he is not expected to live much longer, and that on the same day, his family received the news that his "grandmother's health is failing rapidly also." He asserts that his family needs assistance in caring for those two family members because three of his uncles have passed away and his aunt, who is the only family member left to care for them, works during the day. While the Court empathizes with Defendant's family circumstances, it agrees with the Government's response that Defendant has failed to present any new information material to his detention (Dkt. No. 729, p. 3 [citing a string of district court cases from the Second Circuit rejecting similar claims by defendants relative to their family member's health conditions]).

Although Magistrate Judge Scott previously entered a detention order, the Court will nevertheless go through its own analysis of Defendant's bail status.[4]

Defendant asserts the 18 U.S.C. § 3142(g) factors weigh in his favor, and he does not pose a danger that cannot be alleviated by any combination of available

---

[4] The Court cannot glean Magistrate Judge Scott's reasoning solely from the minute entries regarding Defendant's bail, and there is no written order of detention or transcript from those proceedings.

bail conditions, nor a serious risk of flight for which no conditions will reasonably assure his appearance in Court and as otherwise required.  He proposes that the Court release him to home incarceration and electronic monitoring and asserts that he will comply with any Order of the Court.

The nature and circumstances of the offense charged and weight of the evidence against Defendant are factors that weigh heavily against release of Defendant.

Defendant is charged in a 15-count Superseding Indictment (Dkt. No. 17), with charges that include racketeering conspiracy, narcotics conspiracy, murder and attempted murder in aid of racketeering, and possession and discharge of a firearm in furtherance of crimes of violence.  These charges are unquestionably serious, with a mandatory minimum term of life imprisonment on the murder in aid of racketeering charge, alone.  *See* 18 U.S.C. § 1959(a)(1).  Moreover, as the Second Circuit noted was established at the first trial, Defendant's role as a member of the Schuele Boys (a violent gang in Buffalo, New York) was described as the "enforcer," and the Second Circuit has previously rejected Defendant's sufficiency challenge to his retaliatory murder of Quincy Balance and attempted murder of Damon Hunter on August 30, 2012, in aid of racketeering activity—noting "the strong evidence that [Defendant] shot them."  As also recognized by the Second Circuit, "the evidence of [Defendant]'s personal involvement in the murder was overwhelming.  Three eyewitnesses identified [Defendant] as the shooter."  Defendant was sentenced on December 20, 2017 to an aggregate term of two terms of life imprisonment to run consecutively, plus a 30-year consecutive sentence (Dkt. Nos. 309, 310).

Defendant argues that there is "new evidence" that has changed the nature and circumstances of the offense, and that the weight of the evidence against him has "totally changed" as well.  These arguments, again, circle back to Defendant's allegations of prosecutorial misconduct in the grand jury, which have been previously adjudicated and are pending in his motion for reconsideration.

With respect to Defendant's history and characteristics, when he was sentenced following his conviction at the first trial, he was assessed at Criminal History Category V.  His criminal history stretches back to 1998, when, at the age of 16, he pled guilty to attempted criminal possession of a loaded firearm in the third degree, a Class E felony, and was adjudicated as a youthful offender.  He was subsequently convicted of various misdemeanors and infractions, as well as possession of crack cocaine in the fourth degree in 2002 at age 20 and attempted criminal possession of a weapon in the second degree (a Class D felony) at age 24. The weapons offense involved Defendant aiming a handgun and firing several shots at an individual, which struck the individual's vehicle, and then telling the individual over the phone, "F*** you mother f***er.  If I wanted to kill you, I would have.  I was just trying to wing you."  (Dkt. No. 311 [revised PSR], ¶¶ 55-63).  Defendant has violated probation in the past and once absconded from probation, the latter incident resulting in a conviction for attempted failure to appear (Dkt. No. 311, ¶¶ 55, 58, 61). Additionally, the alleged instant offense was committed while under a criminal justice sentence (Dkt. No. 311, ¶ 65).

According to his revised PSR, Defendant has a history of both drug and alcohol abuse, and he reported previous employment positions as a laborer that

8

have not been verified (Dkt. No. 311, ¶¶ 102-105, 108-112).  Defendant obtained a high school equivalency diploma in September 2017, while incarcerated (Dkt. No. 311, ¶ 107).  He is a lifelong resident of Buffalo, New York, aside from his reported residence in Columbus, Ohio from approximately 2001 until the end of 2004 (Dkt. No. 311, ¶ 94).  Defendant has three children from three separate relationships, for whom he owed child support payments before his sentencing (Dkt. No. 311, p. 2, ¶ 91-93, 115).

Defendant argues that he is "very positive" and a "great father" to his children, a "God fearing man that went to church," and he had a couple of "under-the-table" construction jobs in the past.  Defendant also asserts that he "always helped people in the community" and has "always been a positive role model for [his] children and the kids in the neighborhood."  He also notes the toll that the case has had on his mental and physical health, the latter insofar as he has been infected and exposed to COVID-19 during outbreaks at the jail where he is housed.

As evidenced by the letters submitted on Defendant's behalf by two family members and a friend, he does have some family and community support, and the Court is also cognizant of the difficulty that his lengthy imprisonment in local jails must have posed to him, particularly during the COVID-19 pandemic.  Even so, both Defendant's self-serving and conclusory assertions and those made in the aforementioned letters (*see* Dkt. Nos. 701, 715, 720) do not persuade the Court that Defendant's history and characteristics support his release.

As to nature and seriousness of the danger posed to any other person or the community should Defendant be released, Defendant again asserts unfounded

statements that he would pose no danger to anyone and that he would serve as a "positive role model" to his community upon release.  The Court stresses again its reasoning regarding the first two § 3142(f)(2) factors in concluding this factor likewise does not weigh in favor of releasing Defendant.

In sum, after carefully analyzing all the circumstances, the Court finds that Defendant shall not be release pursuant to either 18 U.S.C. § 3142(f)(2) or 18 U.S.C. § 3142(i).  Moreover, the Court finds that Defendant has failed to overcome the presumption of detention; pursuant to 18 U.S.C. § 3142(e), no conditions of release, or combinations of conditions, will reasonably assure the safety of the community or reasonably assure Defendant's appearances as required.

## II.     Fifth Amendment Due Process Claim

Defendant's bail motion also contains an argument that the length of his pretrial detention has rendered his detention punitive, rather than regulatory, thereby violating the Due Process Clause of the Fifth Amendment.

"It is well-settled that so long as pretrial detention is administrative rather than punitive, it is constitutional."  *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (collecting cases).  "Pretrial detention constitutes punishment in violation of the Fifth Amendment's Due Process Clause when it is excessive in relation to non-punitive purposes of detention, such as preventing danger to the community . . . or ensur[ing] [a defendant's] presence at trial [ . . . ]."  *United States v. Hill*, 462 Fed. Appx. 125, 126 (2d Cir. 2012) (summary order) (internal quotation marks and citations omitted).  To resolve challenges to lengthy pretrial detention, the Second

Circuit has established a multi-factor test in determining whether continued detention violates due process:  "a court must weigh: (1) its length, (2) the extent of the prosecution's responsibility for delay of the trial, (3) the gravity of the charges, and (4) the strength of the evidence upon which detention was based, *i.e.*, the evidence of risk of flight and dangerousness."  *El-Hage*, 213 F.3d at 79.  The Court has assessed each of these factors and concludes that Defendant's continued detention does not violate his due process rights at this time.

The Second Circuit has "recognized that the due process limit on the duration of preventive detention requires assessment on a case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement." *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988) (per curiam) (internal quotation marks and citations omitted).  To determine whether a due process violation has occurred, the Court reviews "the totality of the circumstances."  *Hill*, 462 Fed. Appx. at 127.

Defendant focuses his argument on the first factor, length of detention that includes future, non-speculative detention.  Length of detention "will rarely by itself offend due process."  *United States v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993).

As of today, it has been approximately 31 ½ months since the Second Circuit issued the Mandate (Dkt. No. 523 [Mandate dated November 20, 2019]) that vacated Defendant's conviction and remanded the case for a new trial.  A trial date has been set, with jury selection scheduled to take place on September 27, 2022, although the Court previously indicated it may move that date up to the week of September 7, 2022.  According to the Government, the trial is anticipated to last

approximately 3 weeks.  Thus, it is projected that Defendant will have been in
pretrial detention for approximately 34 or 35 months by the conclusion of the trial.

Defendant calculates his time spent in pretrial detention as over 90 months,
from the time he was detained at his initial appearance before Magistrate Judge
Scott in 14-CR-204-A on November 1, 2014.  In doing so, he does not factor in the
time spent in Federal Bureau of Prisons custody between his sentencing on
December 20, 2017 and the issuance of the Second Circuit Mandate on November
20, 2019.  Moreover, as discussed in the Court's prior Decisions and Orders (*see*
Dkt. No. 657, 724), when the Mandate was issued, Defendant insisted on filing
further pretrial motions rather than simply setting the case for a retrial.  Since then,
the Government's stated viewpoint has been that the case was "remanded for trial"
and no other purpose and requested an immediate trial.  The Court generously
permitted Defendant to reopen discovery and file further motions, which precluded
setting an immediate date for retrial.  Defendant has since engaged in voluminous
motion practice that required the Court to decide these issues before a new trial
could be scheduled.[5]

Without question and including the time preceding the issuance of the
Mandate or not, this is a lengthy period for a defendant to be detained and awaiting
trial.  Even so, Second Circuit case law assures the Court that the length of
detention has not reached unconstitutional limits, and moreover, this not the only

---

[5] Moreover, as described in great detail in the Court's Decision and Order on Defendant's speedy trial motion (*see* Dkt. No. 724, pp. 5, 18, 21-23), the Mandate was issued only a few months before the onset of the COVID-19 pandemic, which created additional complications to moving the case to retrial.

factor the Court must evaluate.  "Indeed, the Second Circuit has held, in certain circumstances, that periods of pre-trial detention of up to and including 40 months do not violate a defendant's due process rights."  *United States v. Speed*, 09-CR-329, 2013 WL 6531950, 2013 U.S. Dist. LEXIS 175411, *5-6 (Dec. 12, 2013) (collecting cases) (denying defendant's motion for reconsideration of the Magistrate Judge's Decision and Order denying his motion for release from custody, even when the defendant had been incarcerated for approximately 50 months and by the time the case would be ready for trial it could be "close to 55 months"); *see United States v. Kidd*, Case # 15-CR-98-FPG-HKS-3, 2018 WL 2723991, 2018 U.S. Dist. LEXIS 95322, *20-22 (W.D.N.Y. June 6, 2018) ("The Court recognizes that [possible excess of 38 months of pretrial detention] is an undoubtedly long period of time, but the Second Circuit and other courts in this district have held that much longer pretrial detention periods did not violate the Due Process Clause.") (collecting cases).

The second factor, the extent to which the Government is responsible for the delay, was previously addressed in painstaking detail in analyzing the second *Barker* factor of a Sixth Amendment speedy trial motion to dismiss (*see* Dkt. No. 724, I.B, at pp. 16-23; *see also Barker v. Wingo*, 407 U.S. 514 (1972)), which the Court finds it need not rehash.  In short, much of the delay in this case has stemmed from repeated substitution of counsel (including Defendant's election to proceed *pro se*, and his most recent request that he be assigned trial counsel, which the Court granted), and Defendant's filing of numerous pretrial motions, both dispositive and

non-dispositive, which Defendant asked the Court to adjudicate.  Additionally, there were COVID-19 pandemic-related delays attributable to neither party.[6]

The third and fourth factors, the gravity of the charges and the strength of the evidence upon which detention is based, were necessarily addressed in the Court's analysis of Defendant's bail motion (*see supra*, p. 7) and weigh heavily in the Government's favor.

The case law Defendant relies upon is distinguishable.  In *Ojeda Rios*, the Second Circuit ordered release of the defendant after 32 months of pretrial detention.  The defendant was facing the prospect of several more months of detention "at the earliest" before his trial would begin, and the trial itself was expected to last "many months."  *See Ojeda Rios*, 846 F.2d at 168-169.  The Second Circuit explicitly stated, in ordering the release of the defendant on conditions, that it was "mak[ing] this decision solely on the facts of the instant case, without attempting to set a bright-line precedent for future cases."  *Id.* at 169.  In *United States v. Gonzales Claudio*, 806 F.2d 334 (2d Cir. 1986), the Second Circuit vacated detention orders after 14 months, when the prospective detention of the defendants was predicted at 26 months (until the conclusion of the anticipated, eight-month-long trial) and the detention orders were based solely on risk of flight. *Id.* at 335-337.  The Court again clarified that the ruling was "under the

---

[6] Defendant argues that the Government most recently delayed the time-to-trial by unconstitutionally searching his jail cell and seizing his papers in December 2021, in violation of his due process rights, which precipitated that motion to dismiss and a hearing.  Again, that due process motion remains pending and is set for argument in early August 2022.  The Court has considered the delay relative to that incident and concludes that it does not significantly alter the Court's analysis of Defendant's Fifth Amendment due process motion relative to the length of his pretrial detention.

circumstances of this case." *Id.* at 335.  It then focused on the Government having significantly contributed to the pretrial delay by both "inexplicabl[y]" failing to timely disclose the existence of certain videotapes and by taking an excessive amount of time to translate tapes and documents, the latter delay which it "could have substantially shortened . . . by devoting sufficient resources to complete the task expeditiously." *Id.* at 341-343.

### **CONCLUSION**

For the reasons stated above, it is hereby ORDERED that Defendant's motion (Dkt. No. 702) for "immediate release" from custody pursuant to the Bail Reform Act of 1984 and the due process clause of the Fifth Amendment is DENIED.

**SO ORDERED.**

 *s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   July 8, 2022
         Buffalo New York