UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

=================================================

UNITED STATES OF AMERICA,

     v.

RODERICK ARRINGTON,

               Defendant.

**DECISION AND ORDER**
15-CR-33-A

=================================================

On October 6, 2022, the Court orally granted the Government's motion *in limine* (Dkt. No. 865) and supplemental motion *in limine* (Dkt. No. 869) to admit evidence in its rebuttal case as part of *pro se* Defendant Roderick Arrington's retrial, which commenced with jury selection on September 7, 2022.  Arrington orally opposed admission of this evidence.  Due to the numerous trial delays that resulted in the Court sending the jury home on several non-consecutive days, and the Court's resulting reluctance to delay the trial even further, the Court noted on the record that its brief oral decision would be followed by a detailed decision explaining its reasoning.  That reasoning is contained herein.

## BACKGROUND

On October 3, 2022, Arrington elected to testify in his own defense.  In pertinent part, he testified that on August 30, 2012, the date of the Quincy Balance murder and Damon Hunter attempted murder, he and Iesha Arrington went to the Regal Elmwood movie theater to see the movie *Prometheus* following time spent by

Arrington and Iesha Arrington with family members at a local park.  Iesha Arrington had testified about a week beforehand, as the first defense witness, that she and Arrington saw a movie that day, but she did not identify the movie.

On October 4, 2022, the morning after Arrington took the stand, the Government filed a motion *in limine* seeking to introduce evidence in its rebuttal case of Regal Elmwood movie showings from *The Buffalo News* newspaper, pursuant to Federal Rule of Evidence 803(17) and/or Rule 807, to rebut Arrington's alibi testimony about seeing *Prometheus* on August 30, 2012.

The same day this issue was raised, the Court heard testimony of Buffalo Police Detective Brian Tripp outside the presence of the jury.  In short, just after Arrington testified, and with this new information about the specific movie Arrington claimed he saw and location of that movie showing, Detective Tripp went to the local library to review 2012 movie listings from advertisements in *The Buffalo News*, on microfilm/ microfiche.  Detective Tripp testified that he checked movie advertisements from August 30, 2012 (which showed that *Prometheus* did not play at the Regal Elmwood on that date), and explained his process of discovering that July 19, 2012 was the last day *Prometheus* was listed for that theater.  Detective Tripp took photographs of the movie theater listings that he viewed on microfilm/ microfiche, from both August 30, 2012 and July 19, 2012.

After this proffer, Arrington asked for additional time to conduct his own investigation about the moving showings, seeking records from Regal Cinemas corporate headquarters in Tennessee.  The Court granted this request, in part, adjourning the trial until October 6, 2022.

The morning of October 6, 2022, the Government filed a supplemental motion, noting that in the interim, Detective Tripp had obtained full copies of *The Buffalo News* from the library, for both July 19, 2012 and August 30, 2012, as well as copies of each movie directory page from *The Buffalo News* for each day between July 19, 2012 and August 30, 2012.  The latter did not list *Prometheus* as being shown on any of those dates—further supporting the Government's position that July 19, 2012 was the last date the movie was shown at Regal Elmwood.

The Government had also obtained records from Regal Cinemas corporate headquarters listing the movies that were shown on August 30, 2012 at the Regal Elmwood—and *Prometheus* was not on that list.  *See* Dkt. No. 869, pp. 6-8 (Exhibit A).  The Government noted that Regal Cinemas corporate headquarters could not provide a witness to testify about the records on such short notice.  Rather, the Government sought to introduce them through the Regal Elmwood General Manager, who the Court also had testify outside the presence of the jury.  The General Manager testified that although the Regal Elmwood did not retain records from 2012, he had received records from corporate headquarters that listed the movies that played at Regal Elmwood on August 30, 2012.  He also testified that "Unit 341" on the records stood for, and was unique to, Regal Elmwood.

Partway through argument on this issue, the Government further obtained a "Certificate of Authenticity" as to the Regal Cinemas corporate headquarters records.

The Court then held that *The Buffalo News* movie listings records were admissible pursuant to Rule 803(17), and the Regal Elmwood Center movie records

were admissible pursuant to Rule 807 because they were a "near miss" for meeting the criterion of Rules 902(11) and 902(13) (these latter two rules reference Rule 803(6)).  The Court ruled that these records would be admitted in conjunction with testimony by Detective Tripp and the Regal Elmwood General Manager, to establish a foundation for the admissibility of these records based on their personal knowledge.  Those two rebuttal witnesses then testified before the jury and the respective records were admitted into evidence.

## DISCUSSION

Preliminarily, on October 4, 2022, when this evidentiary issue was first raised, Arrington questioned the authenticity of the movie listings in *The Buffalo News*, arguing that they were forged.  This argument was largely predicated on the screenshots Detective Tripp had first taken of the movie listings from the newspaper—which did not contain any headings to confirm they were from *The Buffalo News*.

The Second Circuit has explained that "[t]he bar for authentication of evidence is not particularly high."  *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007).  "Rule 901's requirements are satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (internal quotations omitted). "Authentication is essentially a question of conditional relevancy; indeed, it is the jury that ultimately resolves whether evidence admitted for its consideration is that which the proponent claims." *United States v. Gammal*, 831 Fed. Appx. 539, 542 and n.4 (2d Cir. Oct. 26, 2020) (summary order), citing Fed. R. Evid. 901(a) Advisory

Committee's Note; *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014); *United States v. Sliker*, 751 F.2d 477, 499 (2d Cir. 1984).

The Court concluded on October 6, 2022 that the evidence proffered by the Government was sufficient for the jury to reasonably conclude that the copies of the movie listings were authentic.[1]

In addition, on October 6, 2022, Arrington argued that any evidence concerning the *Prometheus* movie should be excluded because it would be a waste of time under Rule 403.  He argued that his allegedly mistaken recollection of which movie he had seen on August 30, 2012 was simply due to a lapse in his memory, as the events of that day occurred 10 years ago.  Moreover, he argued that the evidence was irrelevant pursuant to Rule 401 because he saw the movie six or seven hours after the murder and attempted murder were committed at 1:00 or 2:00 p.m.  In response, the Government argued that the murder and attempted murder occurred at 6:30 p.m.,[2] Arrington himself wanted to conduct his own investigation (the reason for the Court granting a brief continuance of the trial), and the Court should permit admission of the records so that the Government could rebut Arrington's proclaimed whereabouts on the date in question—a fact he put in issue with his testimony on direct examination.

---

[1] Moreover, Fed. R. Evid. 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."

[2] The Court notes that at least two witnesses, Buffalo Police Detective Michael Mordino (who responded to the scene of the shooting on August 30, 2012) and Lawrence Grant (who lived in the neighborhood of the shooting) testified that the shooting occurred at around 6:30 p.m.  Of course, this is a factual issue for the jury to resolve.

The Court concluded that the evidence was certainly relevant[3] and not a waste of time, and Arrington had opened the door to the Government's rebuttal of his testimony that he had viewed *Prometheus* on August 30, 2012.

## I.      *The Buffalo News* Movie Listings Records

The Government argued that the movie listings from *The Buffalo News* were admissible under Rule 803(17) and/or Rule 807, and the Court held they were admissible under Rule 803(17).[4]

Rule 803(17) provides an exception to the hearsay rule for "Market quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations."

"The kinds of publications contemplated by Fed. R. Evid. 803(17) are those which deal with compilations of relatively straightforward objective facts not requiring . . . a subjective analysis of other facts."  *Cordis Corp. v. Arterial Vascular Engineering, Inc.*, 97-CV-778A, 1998 U.S. Dist. LEXIS 23871, *7-8 n.4 (W.D.N.Y. Mar. 19, 1998).  "The basis of trustworthiness [to Rule 803(17)] is general reliance by the public or by a particular segment of it, and the motivation of the compiler to foster reliance by being accurate."  *King v. Wang*, 14-CV-7694, 2021 U.S. Dist.

---

[3] "Evidence need not be conclusive in order to be relevant . . . Nonconclusive evidence should still be admitted if it makes a proposition more probable than not; factors which make evidence less than conclusive affect only weight, not admissibility."  *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003).

[4] "Rule 807 permits the introduction of hearsay evidence that is not otherwise covered by Rules 803 and 804. . ."  *United States v. Hunter*, 2022 WL 1166623, 2022 U.S. App. LEXIS 10632, *10 (2d Cir. Apr. 20, 2022) (summary order) (internal quotations and citation marks omitted).

6

LEXIS 218 243, *41 (S.D.N.Y. Nov. 9, 2021), quoting Fed. R. Evid. 803(17) Advisory Committee Note.

As with other hearsay exceptions, the admissibility of such evidence is "predicated on the two factors of necessity and reliability." *King*, 2021 U.S. Dist. LEXIS 218 243, at *41, quoting 5 *Weinstein's Federal Evidence* Section 803.19[1] (2021). "Reliability is based, at least in part, on evidence that the compilers 'stake their business or public reputations on the accuracy' of a compilation." *Id.* (internal citation omitted). In contrast, compilations "done for litigation," for example, "do not contain the similar guarantees of reliability." *Wantanabe Realty Corp. v. City of New York*, 2004 WL 188088, 2004 U.S. Dist. LEXIS 1225, *9-10 (S.D.N.Y. Feb. 2, 2004).

As one treatise on evidence notes,

> There is some difficulty in determining how narrowly the exception for market reports and similar commercial publications should be interpreted. Publications such as market quotations in newspapers and directories state readily ascertained facts about which there can be no real dispute. Admitting them without the possibility of cross-examining the persons who supplied the data makes little difference. On the other hand, there are publications relied on by the public or individuals in particular occupations that are not concerned with simple objective facts. Whether such a publication meets the requisite standard of trustworthiness entitling it to hearsay exemption must be determined on a case by case basis.

5 Weinstein's Federal Evidence § 803.19[2][a] (2022).

In the instant case, the parties each analogized facts from state court opinions in support of their respective positions as to the admissibility of *The Buffalo News*

movie listings.[5]  The Court finds that the case law cited by the Government, in which state courts admitted evidence under exceptions to the hearsay rule akin to Rule 803(17), is generally more persuasive.  *See State v. Williams*, No. 6-88-16, 1990 WL 88784, 1990 Ohio App. LEXIS 2938 (Ohio Ct. App. June 27, 1990) (defendant testified that at the time of the aggravated burglary, he was at his ex-wife's home watching a Cinemax television broadcast of *Predator*, and the prosecution offered rebuttal evidence including a television directory that did not show *Predator* as playing on the Cinemax channel at that time); *Connell v. State*, 470 N.E.2d 701 (Ind. 1984) (television listing from newspaper admitted to help rebut defendant's alibi that he was at an individual's residence at the time of the alleged crime watching cartoons, as lack of scheduled cartoons suggested that no cartoons were broadcast then and the alibi witness was not to be believed); *State v. Banta*, 452 A.2d 119 (N.J. Super. Ct. Law Div. 1982) (defendant, who was charged with criminal sexual contact, sought admissibility of a television program guide from a daily newspaper revealing that *Frankenstein* was not listed as showing on any local television channels at time of the crime, to discredit stepdaughter victim who testified that the criminal acts occurred while she was watching *Frankenstein* on television).

To the contrary, the case law cited by Arrington is readily distinguishable on the facts.  *See Samuel Sheitelman, Inc., v. Hoffman*, 255 A.2d 807 (N.J. Sup. Ct. App. Div. 1969); *State v. Otis Elevator Co.*, 92 A.2d 385 (N.J. 1952).

---

[5] The Court notes that many states have a rule of evidence that is either similar or identical to Rule 803(17).  *See* 6 Weinstein's Federal Evidence Article VIII [Rules 80316-80318] (2022) (providing state-by-state comparator of those state rules with Rule 803(17)).

Arrington argued that movie listings in newspapers are changed periodically and are frequently inaccurate. The court in *Connell* rejected a similar argument against admissibility of comparable evidence, and the defendant in *Banta* conceded that "[o]ccasionally, there are last-minute, unannounced [television] program changes, [and] sometimes the newspapers may omit a scheduled program or contain a typographical error"—and yet the Court did not preclude admission of the television program. *See Connell*, 470 N.E.2d at 707; *Banta*, 452 A.2d at 122 n.9.

In the instant matter, the Court found that *The Buffalo News* movie listings met "the requisite standard of trustworthiness entitling it to hearsay exemption" under Rule 803(17). 5 Weinstein's Federal Evidence § 803.19[2][a] (2022). The listings contain simple, objective facts, *i.e.*, the locations, dates, and times of the movie showings. Such information is generally relied upon by the public to plan their viewing schedules at theaters, and the accuracy of the movie listings is compelled by the business interest of newspapers and theaters to satisfy their customers.

## II.    Regal Elmwood Center Movie Records

The Government also sought to admit records obtained from Regal Cinemas corporate headquarters, listing the movies that were shown on August 30, 2012 at the Regal Elmwood Center—in which *Prometheus* was not listed as one of those movies. The Government explained that it had it known the importance of these records prior to the trial, it would have obtained them at that time and either moved for their admission as self-authenticating without a custodian, pursuant to Rules 902(11) and 902(13), or in the alternative, secured testimony from a custodian of records from Regal Cinemas corporate headquarters to authenticate the records.

Because of the time constraints posed by the circumstances regarding this evidence, the Government instead moved for their admission pursuant to Rule 807, with purported good cause to excuse pre-trial notice.  The Court held that these records were admissible pursuant to Rule 807, as they were a "near miss" of the other rules cited by the Government.

Rule 807 is known as the "residual" exception to the rule again hearsay or "the 'catch-all' hearsay exception."  *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004).  " 'Congress intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances.' "  *United States v. Griffin*, 811 Fed. Appx. 683, 686 (2d Cir. 2020) (summary order), quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991).  "Indeed, an overly broad interpretation of Rule 807 could swallow whole the general rule against hearsay.  Or, it could obviate entirely the need for the exceptions expressly enumerated under Rules 803 and 804."  *United States v. Prevezon Holdings, Ltd.*, No. 13-cv-6326 (WHP), 2017 U.S. Dist. LEXIS 70992, **14 (S.D.N.Y. May 9, 2017).

"Notably, Rule 807 was amended in 2019 'to fix a number of problems that the courts' encountered in its application.'"  *Cont'l Indus. Grp. v. Altunkilic*, 14-CV-790 (AT) (JLC), 2020 WL 3884312, 2020 U.S. Dist. LEXIS 116763, *16 (S.D.N.Y. July 1, 2020), quoting Fed. R. Evid. 2019 Advisory Committee Notes.

> Under the amended rule, a court 'should proceed directly to a determination of whether the hearsay is supported by guarantees of trustworthiness.' . . . 'The amendment specifically requires the court to consider corroborating evidence in the trustworthiness enquiry.' . . . Additionally, the amended 'rule provides that the focus for trustworthiness is on circumstantial

guarantees surrounding the making of the statement itself, as
well as any independent evidence corroborating the statement.'

*Id.*, quoting Fed. R. Evid. 2019 Advisory Committee Notes.

Although the residual hearsay exception should be used "sparingly . . . the rules on hearsay should be read to exclude unreliable hearsay but to admit reliable hearsay. . . . [S]uch reliable hearsay has, of course, the effect of promoting the truth-seeking function of a [ ] trial and, therefore, ought to be presented to the finders of facts." *Id.* at *16 (internal quotation marks and citations omitted).

As far as notice is concerned, "Rule 807 of the Federal Rules of Evidence requires that in order for a statement to be admissible, the proponent give the adverse party reasonable notice of the intent to offer the statement and its particulars . . ." *United States v. Humphrey*, 10-CR-00025A(Sr), 2013 WL 3244333, 2013 U.S. Dist. LEXIS 89538, *38 (W.D.N.Y. June 25, 2013). The rule further states, in pertinent part, that notice may be provided "in any form during the trial . . . if the court, for good cause, excuses a lack of earlier notice." Fed. R. Evid. 807(b).

The Court concluded that the notice requirement of the residual hearsay exception was met. As stated above, the movie that Arrington claimed he saw on the date of the murder and attempted murder only first came out during Arrington's testimony. The Government filed a motion and a supplemental motion, in writing, shortly after that testimony, and provided copies of the exhibits it wished to offer into evidence to the defense. Moreover, Arrington, like the Government, sought the same records from Regal Cinemas corporate headquarters, so he had a "fair opportunity" to challenge those records.

Moreover, the Court found that the statements contained in the records from Regal Cinemas corporate headquarters were "supported by sufficient guarantees of trustworthiness" when considering corroborating evidence and the totality of the circumstances in which they were made.  Fed. R. Evid. 807(a)(1).  They bore similar guarantees of trustworthiness to those found in Rule 803(6), the business records hearsay exception.  The Advisory Committee Note to the 2019 amendment of Rule 807 notes that "a court assessing guarantees of trustworthiness may consider whether the statement is a 'near-miss' of one of the Rule 803 or 804 exceptions.  If the court employs a 'near-miss' analysis it should—in addition to evaluating all relevant guarantees of trustworthiness—take into account the reasons that the hearsay misses the admissibility requirements of the standard exception."

Despite the "Certificate of Authenticity" provided by the Government, it could not fully comply with Rule 902(11) or Rule 902(13) because of the notice requirements of those rules.  Rule 902(11) provides that business records are self-authenticating if (1) "a certification of the custodian or another qualified person" shows that the "original or a copy of a domestic record" complies with Rule 803(6)(A)-(C); (2) the certification "complies with a federal statute or a rule prescribed by the Supreme Court"; and (3) "*[b]efore the trial* . . ., the proponent . . . give[s] an adverse party reasonable written notice of the intent to offer the record" and "make[s] the record and certification available for inspection—so that the party has a fair opportunity to challenge them" (emphasis added).  Rule 902(13) provides that business records are self-authenticating when they are "generated by an electronic process or system that produces an accurate result" as demonstrated by

12

"a certification of a qualified person" that complies with Rule 902(11)'s certification requirements.  The proponent of that evidence "must also meet the notice requirements of Rule 902(11)."

As cross-referenced in Rules 902(11) and 902(13), Rule 803(6) provides that evidence is "not excluded by the rule against hearsay" if (A) "the record was made at or near the time by — or from information transmitted by — someone with knowledge"; (B) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit"; and (C) "making the record was a regular practice of that activity."  In addition, the conditions set forth in Rule 803(6)(A) through (C) must either be shown by the testimony of a record custodian or other qualified witness, or by a certification that complies with Rule 902(11), and "the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness."  Rule 803(6), (D)-(E).

Thus, "Rules 902(11) and 803(6) are . . . designed to work in tandem."  *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014).  Indeed, "Rule 902(11) extends Rule 803(6) by allowing a written foundation in lieu of an oral one."  *United States v. Malka*, S3 19-CR-497 (NSR) (05)(09), 2022 WL 1488568, 2022 U.S. Dist. LEXIS 86361, *44 (S.D.N.Y. May 11, 2022), quoting *United States v. Rom*, 528 Fed. Appx. 24, 27 (2d Cir. 2013) (summary order).

The Court concluded that the Government complied with each of the requirements set forth in Rule 902(11), Rule 902(13), and Rule 803(6), other than the requirement that its "reasonable written notice" be provided before the trial

began.  The Certification of Authenticity repeats the requirements of Rule 803(6)(A)-
(C) nearly verbatim, and it is signed pursuant to 28 U.S.C. § 1746 (unsworn
declarations under penalty of perjury), *see* 2000 Advisory Committee Note to Rule
902(11).  In addition, the records from Regal Cinemas corporate headquarters,
revealing that *Prometheus* was not shown at the Regal Elmwood on August 30,
2012, were corroborated by *The Buffalo News* movie listings and testimony by the
Regal Elmwood General Manager—further guarantees of the records'
trustworthiness.

The Court also concluded that this evidence was "more probative on the point
for which it [was] offered than any other evidence that the [Government could] obtain
through reasonable efforts."  Fed. R. Evid. 807(a)(2).  The Government had
diligently sought evidence concerning Arrington's assertion that he had seen
*Prometheus* at the Regal Elmwood on August 30, 2012 since the day that assertion
was made, and could not reasonably obtain the testimony of a record custodian from
another state in the midst of the trial, so close to the completion of the testimony
phase of the trial.  The evidence was more probative on the issue of what movies
were showing at Regal Elmwood on August 30, 2012 than what could have
otherwise been obtained.

The Court did not make light of Congress's intent that Rule 807 is to be used
"only in exceptional circumstances."  *Griffin*, 811 Fed. Appx. at 686.  In this particular
set of circumstances, admitting this evidence pursuant to Rule 807 fulfils policy
reasons for the residual hearsay exception, including "[t]o provide sufficient flexibility
to permit the courts to deal with new and unanticipated situations" and "[t]o facilitate

14

the basic purpose of the Federal Rules of Evidence: truth ascertainment and fair adjudication of controversies." 5 Weinstein's Federal Evidence § 807.02 [1] (2022), citing *United States v. Nivica*, 887 F.2d 1110, 1127 (1st Cir. 1989) and *United States v. Doe*, 860 F.2d 488, 491–492 (1st Cir. 1988). The Court reasoned that the jury should not be deprived of this reliable hearsay; rather, the jury, as the finder of facts, should be presented with both Arrington's testimony concerning his whereabouts on August 30, 2012, as well as the Government's rebuttal evidence on that subject.

## CONCLUSION

For the reasons explained above, the Court granted the Government's motion *in limine* (Dkt. No. 865) and supplemental motion *in limine* (Dkt. No. 869) to admit evidence relative to the showing of the movie *Prometheus* in its rebuttal case.


**SO ORDERED.**

_s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT


Dated:   October 11, 2022
         Buffalo, New York