UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

plaintiff,

vs.

RODERICK ARRINGTON, A.K.A Rah-Rah

Defendant.

FILED
APR 0 5 2023
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

NOTICE OF MOTION
FOR A DISMISSAL OF
THE INDICTMENT

CASE No. 15-CR-33-A

PLEASE TAKE NOTICE, that the undersigned RODERICK ARRINGTON proceeding pro se, upon all the papers and proceedings previously had herein, hereby moves this Court respectfully, for an order Granting the dismissal of the Superseding indictment with prejudice, because a pattern of Outrageous and egregious prosecutorial Misconduct been committed during the prosecution of this case. Also pursuant to Fed. R. Crim. P. 12(b)(i) defects in the institution of the prosecution.

## STANDARDS

Mr. Arrington, submits this filing without having any formal training or study in the science of the law. Per the U.S. Supreme Court, Pleadings filed by pro se litigants are to be liberally construed as to due justice and held to less standards than that of trained attorneys. see Haines V. Kerner, 404 US 519, 520 (1972); Erickson V. Pardus, 551 US 89, 94 (2007); Harris V. Miller, 818 F.3d 49 (2d Cir. 2016).

## SUPPORTING AFFIRMATION

I, RODERICK ARRINGTON, being duly sworn, deposes and states:

I am proceeding pro se in this case. This affirmation is submitted in support of defendant's motion for a dismissal with prejudice, because a pattern of Outrageous and egregious prosecutorial misconduct has been committed during the prosecution of this case. Also pursuant to Fed. R. Crim. P. 12 (b)(1) defects in the institution of the prosecution.

On April 8, 2020, Hon. Michael J. Roemer, U.S. Magistrate Judge, issued a search warrant (20-MJ-5061), The warrant application and the affidavit was specifically for the investigation involving "EVIDENCE FROM A SEPARATE CASE/ INVESTIGATION," involving a homicide victim by the name of Michael Payne a.k.a Juice, that had No connection to this superseding indictment. In this affidavit for the search warrant, FBI SA Robert Colunga used Fed. R. Crim. P. 41(c), and described those items for which that warrant was based upon "ONLY". The affidavit for the warrant did not state, for the use to compare DNA buccal samples for "ACQUITTED EVIDENCE," in which, Mr.

Arrington was acquitted by a petit Jury (6) Six years ago at Arrington's first trial. Mr. Arrington is no longer a target nor a suspect in that case, those evidence Mr. Arrington is no longer charged with, which makes him a innocent man. Mr. Arrington's DNA buccal samples was not a match for any of those items stated in the affidavit for the warrant, which it was based upon.

The Warrant application was only authorized for the items pursuant to Fed. R. Crim. P. 41 (c), (1) evidence of a crime; (2) contraband, fruits of crime, or other items illegally possessed; (3) property designed for use, intended for use, or used in committing a crime; or (4) a person to be arrested or a person who is unlawfully restrained.

AUSA Tripi, AUSA Lenihan, and AUSA Lipman has violated Mr. Arrington's constitutional rights, and the Substantive Due Process, along with the Fourth Amendment. This is conduct that shocks the conscience: Illegally taking Mr. Arrington's DNA buccal samples from another case/investigation after learning Arrington is no longer the targeted suspect in that investigation. Takes Arrington DNA buccal samples and "further compare it with the "Acquitted Evidence", that Arrington was found "NOT Guilty", by a petit Jury (6) Six years ago at his first trial, made Arrington an innocent man for those

page 3 of 32

evidence. (SEE DKT.NO. 240)

This Outrageous and egregious prosecutorial misconduct to obtain evidence, trying to get a second bite at the apple, is bound to offend even hardened sensibili- ties. They are Methods too close to the rack and the screw to permit of constitutional differentiation.

AUSA Tripi, AUSA Lenihan, and AUSA Lipman, illegally and intentionally took evidence from another case, Misleading this court, which lead to this court to Make incorrect decisions in the following motions (DKT.NOS. 596, 671, 705). citing Boyd V. U.S., 116 US 616, THE Supreme Court of the U.S., reversed and remanded the Judgment of the lower Court, with directions to award a new trial. In the customs case for forfeiture where appellant importer was compelled to give incriminating evidence against himself. Appellee federal government had seized cases of appellant's plate glass, pursuant to the Act of June 22, 1874, 18 Stat. 186 §12 (1874). At trial, appellant was compelled under §5 of the Act to produce the incrimin- ating invoice. Appellant produced the invoice, but objected to its validity and constitutionality because in a forfeiture suit, no evidence could be compelled from the claimants themselves. The Court agreed with appellant, and held that

the Act was unconstitutional and void, as it violated the
Fifth Amendment. The Court held that a forfeiture action
was an in rem action that was criminal in nature, and
accordingly, appellant was entitled to protection under
the Fourth and Fifth Amendments.  Also citing Rochin
V. California, 342 US 165, The Court reversed defendant's
conviction for possession of Morphine, because police
officers entered his home without a warrant, tackled
him to the ground, and then made a doctor pump
his stomach against his will.  Here in Mr. Arrington's
case, FBI SA Colunga came to (CCJ) Cattaragus County
Jail with the Search and Seizure Warrant for Arrington's
DNA buccal samples. Arrington denied it and asked for
time to talk to appointed Counsel Joseph La Tona, who
told Arrington, that AUSA Tripi said that the DNA buccal
samples was not for this Superseding indictment, its for
another investigation, which was later found out to be the
Payne investigation. (see the Warrant and DNA reports as an
exhibit to support this motion to dismiss).

THE AUSA Lenihan and AUSA Lipman intentionally omitted
falsified DNA reports as "New Evidence" and Brady
discovery evidence into the prosecution of this case
during oral arguments on October 12, 2021, (DKT.No.651),
and made intentional misleading statements and omissions
to this Court.

OF particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. citing Hazel-Atlas Glass Co. V. Hartford-Empire Co., 322 U.S. 238 (1944); Universal Oil Products Co. V. Root Refining Co., 328 U.S. 575, 580 (1946). This "Historic power of equity to set a side fraudulently begotten Judgments," Hazel-Atlas, 322 U.S. at 245, is necessary to the integrity of the courts, for "tampering with the administration of Justice in this manner involves far more than an injury to a single pro se litigant. It is a wrong against the institutions set up to protect and safeguard the public." Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. Universal Oil, supra, at 580.

The inherent power of the district court includes the power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith. Under circumstances involving a lawyers' negligent or reckless failure to perform his or her responsibility as an officer of the court, sanctions may be justified absent a finding of bad faith given the court's inherent power to manage its

own affairs so as to achieve the orderly and expeditious disposition of cases. The prosecution has a special duty not to mislead; the government should, of course, never make affirmative statements contrary to what it knows to be the truth.

Mr. Arrington is showing strong factual issues that the AUSA's... intentionally premeditated calculated by design purposely lied and misrepresented to the Hon. Judge Arcara information concerning the "ACQuitted Evidence" As "New discovery evidence" in this case, through affirmative statements that were false. The omissions concerning material information that the government knew would have caused this court to have an incorrect understanding as to the facts in the following motions (DKT. Nos. 596, 602, 671, 705). The government knew if they switch the records involving the outrageous government misconduct from AUSA Wei Xiang, when he instigated known perjury to the grand jury on 01/16/2015, when the AUSA Xiang was presenting Jaquan Johnson testimony to the grand jury. This court would deny Mr. Arrington's request for this court to conduct an in camera inspection for both grand jury proceedings to see if the government procured and instigated known perjury on 01/16/2015 and on 06/19/2015 to see if the government fixed the perjury from D. Hunter and J. Johnson, (see DKT. No. 602) when AUSA Lenihan

lied and switch the grand Jury testimony and used J.J.
trial testimony in the response motion (DKT.No. 602). This
outrageous and egregious misconduct by the government
is a fraud upon this court, and a serious violation
of Mr. Arrington's constitutional rights. This unfair
prejudice need a further investigation by this court
to prevent a miscarrigge of justice.

The Second Outrageous and egregious prosecutorial
misconduct claim is when AUSA Lenihan intentionally
suppressed Impeaching evidence, and instigated Known
perjury from D. James during trial about prior criminal
conduct involving three (3) criminal cases, the government
been Knew about and helped prolong the prosecution in
all three (3) cases until D. James testified at the trial/
retrial.

It is well established that the prosecution has an obligation
under the due process clause to disclose to the defendant
material exculpatory and Impeaching evidence. To
establish a Brady Violation, a defendant must show that:
(1) the prosecution, either willfully or inadvertently, suppressed
evidence; (2) the evidence at issue is favorable to the
defendant; and (3) the failure to disclose this evidence
resulted in prejudice. The suppression of exculpatory or
impeaching evidence does not constitute a constitutional

Violation unless the evidence is material. Undisclosed evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. And the prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case.

The denial of the "right of effective cross-examination" is constitutional error of the first magnitude requiring automatic reversal. In fact, effective cross-examination is so important in the legal system that it is described as beyond any doubt the greatest legal engine ever invented for the discovery of truth. Here is the lies that was told at the retrial a small summary of the trial testimony: T.T. on page 64, lines 1-25, Q. That letter was a lie because soon as you released from Jail on October 18, 2021, you was arrested for unlawfully fleeing from a police officer in a motor vehicle third degree, reckless driver, and aggravated unlicensed operation, correct? Mr. Lenihan: Objection. THE Witness: No. THE Court: Sustained. By the Defendant: Q. So, you didn't get arrested? MR. Lenihan: Objection. THE Court: Sustained. By THE Defendant: Q. How about on August 2nd, 2012 at 3:26pm., you threatened to kill Shanique Devost and a juvenile with a gun and at one point, almost hitting Ms. Devost and the juvenile while threatening to kill them.

Witness 1 and Witness 2 signed statements supporting the Victim's narrative. You remember that incident? Mr. Lenihan: Objection, Judge, This isn't what we discussed. THE Court: Sustained. By the Defendant: Q. Was you charged with this crime on August 2nd, 2022? A. Yes. I was charged with a crime. T.T. on page 65, lines 1-25, Q. You was charged with threatening Shaniqua Devost and the juvenile correct? Mr. Lenihan: objection. THE CourT: Sustained. By the Defendant: Q. So, you remember being -- endangering the welfare of a child that day? Mr. Lenihan: Objection. THE CourT: Sustained. By the Defendant: Q. Was you just recently -- did you get caught with another weapon recently? A. No. Q. You never got caught with a weapon recently? A. No. Q. You don't have any knowledge of that? A. No. Q. So, you don't know you have a warrant for your arrest right Now? A. I have a warrant for my arrest? Q. Yes. A. No. Q. Do you know about that indictment? A. No.

The AUSA Lenihan on this day, 09/12/2022, went so far as to make arrangements with the U.S. Marshal's, Not to arrest D. James on this day, because Mr. James had to continue his cross-examination the next day, and the AUSA did not want James to come in to trial the next day with Jail clothing on because the Jury would have known James lied to them about the firearm possession.

AUSA Lenihan went out his duty intentionally trying to cover up D. James criminal cases as their witness. If this Impeachment disclosure was disclosed the outcome would have been in favor of the defense.

Rule 16 (a) and Rule 16, upon request of the defendant, the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial. A district Court has broad discretion in fashioning a remedy for the government's violation of its obligations under Rule 16 (a), including ordering the exclusion of evidence that was the subject of a Rule 16 (a) violation, is not grounds for reversal unless the violation caused the defendant "Substantial prejudice", citing U.S. V. McElroy, 697 F.2d 459; "Substantial prejudice" means "the prejudice resulting from the government's untimely disclosure of evidence, rather than the prejudice attributable to the evidence itself. citing U.S. V. GAF Corp, 884 F.2d 670.

In Mr. Arrington's case, the AUSA Lenihan failed to disclose evidence that the defense might have used to impeach the

government's witnesses or a witness "D. James", by showing bias or interest. Impeachment evidence, however, as well as exculpatory evidence, falls within the Brady rule. citing Giglio V. U.S., 405 U.S. 150, 154 (1972). Such evidence is "evidence favorable to an accused", Brady, 373 U.S. at 87, referencing Davis V. Alaska, 415 U.S. 308 (1974); also citing Bagley V. Lumkin, 719 F. 2d 1462; "so that if disclosed and used effectively, it may make the difference between conviction and acquittal. Also see motion to compel (DKT. No. 757) on 08/22/2022, compelling AUSA Lenihan to disclose all Brady and Impeachment/3500 material. AUSA Lenihan and his fBI SA's all knew D. James was out there committing violent crimes. There is a total of (3) three Buffalo Police Reports labeled Complaints; (1) dated 22-2140576, August 2, 2022; (2) Dated October 18, 2021, 21-2881108 and; (3) Dated August 7, 2021, there is nothing in the system of this crime, when the securing order claims that the charges of 265.0303, criminal possession of a weapon, a loaded firearm, have an incident date of August 7, 2021. Now keep in mind the arrest warrant was only generated 13 months later on 09/09/2022, at the start of Mr. Arrington's retrial. It is very difficult and disturbing to believe that the government and its fBI SA's had no idea the person in possession of a weapon was "D. James" some (13) months later. How was the incident generated if they THE Federal Government or the Buffalo

Police", had no identity of the person "Guilty of the charge". It is also ironic that "D. James" warrant only emerges when the government is near to putting "D. James on the stand. There isn't even an arraignment date nor records that shows D. James being processed for this crime. AUSA Lenihan intentionally suppressed these Impeachment evidence from the defense, and help cover it for (13) months until this witness testify at the retrial. This Impeachment evidence was material because D. James lied about it because he thought the government had his back, because they allowed him to commit crimes as an protective witness. This is Outrageous and egregious Misconduct that calls for an order to dismiss this indictment with prejudice.

The third (3rd) claim of Outrageous and egregious prosecutorial Misconduct is when AUSA Lenihan instigated Known perjury from another (4) four trial witnesses, J. Kazukiewicz, J. Grant, M. Worthy, and Henry Lloyd.

In asserting a prosecutorial Misconduct claim, the defendant face a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of their right to a fair trial. In evaluating a prosecutorial Misconduct claim, the Court considers: (1) the severity of the alleged misconduct, (2) the curative

Measures taken; and (3) the likelihood of conviction absent any misconduct.

It is serious misconduct for a prosecutor to obtain a conviction through the knowing use of false evidence citing U.S. V. Wallach, 935 F. 2d 445, 473 (2d Cir. 1991); also citing Miller V. Pate, 386 U.S. 1, 7 (1967) (prosecution misrepresented paint-stained shorts as blood-stained) or merely "Allows it to go uncorrected when it appears." Napue V. Illinois, 360 U.S. 264, 269 (1959) (prosecutor failed to correct witness's false testimony that he had no agreement prosecution).

Here at Mr. Arrington's retrial, the government's key-witnesses committed perjury, and the AUSA Lenihan instagated and procured the false testimony, and instead of taking steps to minimize the perjury, and its effects, the government improperly attempted to rehabilitate the witnesses. For an example, government witness Jerome Grant sent numerous letters to this Court, without his counsel's knowledge. On numerous occasions Hon. Hugh B. Scott admonished J. Grant not to send letters to the Court. (see on 01/06/2015 DKT.No. 137 Hon. Judge Scott warns Grant, again on 06/03/2015 DKT.No. 197, and again on 07/26/2015 DKT.No. 251). AUSA Lenihan known about the numerous letters and Bail motion's sent by J. Grant himself signed by a public notary, without his counsel's knowledge.

On direct examination, the government did not address Grant about his prior assertions under oath in a sworn affidavit to support his Bail motion for pretrial release. AUSA Lenihan known that J. Grant made sworn statements under oath that J. Grant was "Not a Gang Member Nor a drug dealer", when Grant filed his bail motion on this Court's record as true ("see government's trial exhibit #3506 BB Jerome Grant's Bail motion as an exhibit to support this instigation of perjury"). Also see J. Grant trial testimony on page 54, lines 3-19, Q. If you read it, if you go to the page, could you read to the jurors what it says -- application of bail motion. It says, Dear Judge Scott. Could you continue to read that to the jurors, please? A. Dear, Judge Scott -- want me to read the whole letter? Q. Yes, where it get to -- I'll tell you to stop when you get there. A. Application for bail motion. Dear, Judge Scott; as you know, I have been detained since July of 2014. I have been charged with one count of conspiracy on August 4th, 2014. I was ordered with detained but without prejudice. Although I am still currently on federal probation, I have not been violated by any means by the Honorable Judge Skretny. Although I reference my innocence in this case against me. According to the criminal complaint and discoveries, my relevant conduct is minimum in both. I am not a gang member and or a drug dealer. Nor is this -- (DKT. No. 972). Jerome Grant direct Trial Testimony by AUSA Lenihan states on page 18, lines 14-17. (DKT. No. 972), Q. Is that a

neighborhood-based street gang? A. Yeah. Q. Would you consider
yourself a member of the Schuele Boys? A. Yeah. Grant
also gave false testimony that Arrington sold him drugs in
2000 and 2014, T.T. on page 20, lines 8-20, (DKT.No.972). AUSA
Lenihan never addressed Grant's prior statements made under oath
in the affidavit supporting Grant's Bail motion. AUSA Lenihan
procured this false testimony, and instigated this false testimony
trying to get a conviction No matter how far he had to go to
do it. This Outrageous and egregious prosecutorial misconduct
calls for an dismissal with prejudice.

Government witness Marcel Worthy committed perjury, and AUSA
Lenihan instigated and procured that false testimony. AUSA
Lenihan tried to suppress M.Worthy affidavit he sent to Mr.
Arrington on April 6, 2016, But, Arrington objected and the Court
compelled the government to disclose it to the defense. On direct
examination AUSA Lenihan addressed prior statements made by Worthy
during an interview by FBI SAs when Worthy denied being a witness to
any alleged criminal activity committed by Arrington. But, the AUSA
did not address the prior sworn affidavit Declaration pursuant
to 28 U.S.C. § 1746 under penalty of perjury, from M.Worthy, sent
to Mr. Arrington. Government witness M.Worthy sent Mr. Arrington a
sworn Affidavit on April 6, 2016, under penalty of perjury that
he never conspired to sell drugs with Arrington, Nor did he have
any Knowledge Nor witness Arrington involved with any illegal
activities. The affidavit was sent to Arrington, by Worthy after

he signed into an cooperation proffer agreement with the government in 2014 and 2015. (see defense exhibit #5 as an exhibit to support this motion to dismiss). AUSA Lenihan Known that M. Worthy was lying, but, took no steps to correct what he Knew to be false, but, procured the false testimony and instigated it. citing Napue V. Illinois, 360 U.S. 264, 269 (1959). This Outrageous and egregious prosecutorial Misconduct calls for an dismissal of the indictment with prejudice. (Trial Testimony on pages 75, 76, 77, lines 1-25, on 9/26/22).

Government witness J. Kazukiewicz testified on 09/13/22, the following is a brief summary. the perjury testimony AUSA procured and instigated when the AUSA and FBI SA Colunga, Knew that the witness was never in a secure room. T.T. on page 19, lines 12-20, Q. During this recess we just took, a five-minute recess, a ten-minute recess -- A. Okay. Q. did anybody come in the room and say anything to you or threaten you or say anything to you when you just stepped out the courtroom? When they just took you out of here, did any agents or anybody come in the room, say anything to you, threaten you? A. why would they? AUSA Lenihan Knew this witness was given false testimony, But, took no steps to correct what he Knew to be false, But, He procured the false testimony, and continued to instigate that false testimony. Once the AUSA asked the Judge for a brief recess. see T.T. on page 21, lines 13-25, MR. Lenihan: We want to bring something up with the Court

page 17 of 32

THE COURT: You want me in here? MR. Lenihan: Please.
THE COURT: All right. Ladies and gentlemen could you step
outside? (THE Jury left the room at 3:08 p.m.) Once the
Jury left the courtroom, AUSA Lenihan made false
statements to the Court, instigating the perjury
testimony that the witness was in a secure room
outside the courtroom, and No one had access to
this witness, and the defendant is mad that the
witness identified him as the shooter.   FBI SA Colunga
threw AUSA Lenihan under the Bus, and confirms that
AUSA Lenihan Lied to this Court, when he instigated the
Known perjury from J.K.   Here is the Trial Testimony
from FBI SA Colunga on 09/27/22, page 74, lines 5-12,
Q. So, she was never in a room where the — as the
government told the Court, she was never in this secure
room, correct? A. She was not in a room. She did not want
to go into a room. Q. And she sat with you on the bench the
whole time for the 20 minutes, correct? A. That's correct.

On 09/14/2022, when Mr. Arrington requested the Court to sub-
poena the Camera footage from outside the Courtroom to
confirm who had access to the trial witness J.K, and to
confirm if she was ever in a secure room. (SEE DKT. No. 832).
Once the Court granted Mr. Arrington's request for the camera
footage from outside the courtroom, for where the witness was
suppose to be held as the AUSA claimed, and made affirmative

page 18 of 32

Statements to this Court on 09/13/22, that No one had access to this witness, because, she was in a secure room. AUSA Lenihan made affirmative statements intentionally misleading the court, when AUSA Lenihan instigated Known false testimony. (See oral arguments after the hearing when the camera footage exposed the truth, and AUSA Lenihan got caught instigating the false testimony on 09/14/2022).

This Outrageous governmental Misconduct has infected the trial proceedings and interfered with the jury's ability to weigh the trial testimony. This Outrageous and egregious prosecutorial Misconduct calls for an dismissal of the indictment with prejudice.

THE AUSA's is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that Justice shall be done. As such, he is in a peculiar and very definite sense the servant of law, the two fold aim of which is that guilt shall not escape or "innocence suffer". He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction, as it is to use every legitimate means to bring about a just one. citing Berger

V. U.S., 295 U.S. 78, 88 (1935).

After reviewing a number of instances of prosecutorial mis-
conduct, including, inter alia, failing to warn the jurors of
a credibility problem of a key witness or witnesses as the
constitutional law requires. This outrageous and egregious
governmental misconduct requires a dismissal of the super-
seding indictment with prejudice.

The use of such false testimony has "involved a corruption
of the truth-seeking function of the pretrial and the trial
process." THE taint of J. Kazukiewicz, J. Grant, D. Hunter,
Jaquan Johnson, M. Worthy, D. James, H. Lloyd, and
AUSA Lenihan procuring the false testimony, and took
further steps to instigate it, is not erased, because their
untruthfulness affects the credibility of all the witnesses,
and the AUSA's Lenihan's, AUSA Tripi, AUSA Lipman, and
AUSA Wei Xiang. Also "the retrial Jurys estimate of the
truthfulness and reliability of the AUSA's, and a given
witness may well be determinative of guilt or innocence.,"

THE perjury testimony from the AUSA, and his witnesses
has unfairly prejudice Mr. Arrington's retrial to the point
that all constitutional rights was violated, which denied Mr.
Arrington a fair trial, and Due process, But, most Importantly
without all the perjury testimony, the jury would have found Mr.

Arrington "Not" "Guilty" on all Counts 1 through 8, and it would have Never Been a Deadlock Jury which resulted in a Mistrial.

At Mr. Arrington's retrial, the Outrageous and egregious prosecutorial Misconduct has violated Arrington's due process rights, and his rights to a fair trial, to call defense witness JaRon Ruth, when AUSA Tripi threaten Ruth not to testify for the defense. Defense witness JaRon Ruth was threaten by AUSA Tripi, AUSA Tripi, told Mr. Ruth, if he testify on Mr. Arrington's behalf, AUSA Tripi would make sure Ruth got the Maximum sentence in his criminal case. But, if Ruth help the government and testify as their witness against Arrington, AUSA Tripi would make sure Ruth got time served in his criminal case. This is what caused Ruth to plead the Fifth Amendment when Arrington called Ruth in to trial as the defense witness. Mr. Ruth reached out to Arrington's family, because Ruth was stressed out that the AUSA on his case threaten him. Ruth was stressed out because he knew Henry Lloyd was lying for AUSA Lenihan to get out of Jail, because Lloyd was found guilty at his trial, and was facing a lot of time.

Mr. Arrington, Ruth, and H. Lloyd was all housed at Cattaragus County Jail together on J-Dorm, and Ruth trial testimony would have proved that Lloyd's trial testimony was false, and made up by the government and his FBI SAS. Ruth, and Mr.

page 21 of 32

Arrington never trusted nor dealt with H. Lloyd do to his history of cooperating and being a known jail house informant.

This Outrageous prosecutorial misconduct has violated Mr. Arrington's rights to a fair trial, and also violated Arrington's due process rights. The Sixth Amendment guarantees a criminal defendant the right to present witnesses to establish his defense without fear of retaliation against the witness by the government's attorney's. In addition, the Fifth Amendment protects the defendant from improper governmental interference with his defense. Thus, substantial government interference with a defense witness choice to testify may violate the due process rights of the defendant. This prosecutorial intimidation is a clear error. citing U.S. V. Stein, 541 F. 3d 130.

Mr. Arrington's rights to a fair trial has been violated, along with his due process rights, in its entirety. A defendant has a fundamental right under the Fifth Amendment to fairness in the criminal process, including the ability to get and deploy in his defense all resources lawfully availiable to him, free of knowing or reckless government interference. This is conduct that shocks the conscience, when AUSA Tripi, who's prosecuting a unconnected case,

threaten's and coerced the defendant in his case, who is the defense witness, JaRon Ruth, not to testify at Arrington's trial, denied Arrington's Fifth and Sixth Amendment rights to due process and a fair trial. This Outrageous and egregious prosecutorial Misconduct requires an dismissal of the Superseding indictment with prejudice. Also the prejudice and unfair prejudice Arrington suffered from this misconduct was the ability to get and deploy in his defense all resources lawfully availiable to him, which was calling Mr. Ruth as his rebuttal witness for the false testimony from H. Lloyd. If the AUSA would not have interferred with Arrington's defense the Jury would have found Arrington "Not Guilty" on all counts and Arrington Lost those rights.

THe (4th) Fourth claim of Outrageous and egregious prosecutorial Misconduct, is when AUSA Lenihan offered a total of (3) three inmates time off to lie at Mr. Arrington's up and coming trial. Henry Lloyd's co-defendant Roman Dunnigan was offered time off to lie to the grand Jury, about the bogus Search and Seizure Warrant executed right after Mr. Arrington's retrial, which ended in a mistrial. (Also see affidavits from Dunnigan and Mr. Fletcher to support the misconduct and how it was so easy for Henry Lloyd to lie for a get out of jail free card to say what ever the government want you to say). (see affidavits as an exhibit attached).

During the bogus Search and Seizure, AUSA Lenihan used a taint team to gain access to the defense strategy, in which AUSA Lenihan took privileged materials that "was not covered" in the scope of the warrant, and went so far as to hide the privileged material in the protective order as if they were protected materials, that was part of the government's 3500 disclosures (see DKT. Nos. 922, 912, 952) as an exhibit to support this motion to dismiss.

Those privileged materials came from Mr. Arrington's own independent investigation and was part of the (3rd) third trial defense strategy, which been exposed already due to the AUSA's violating Fed. R. Crim. P. 16(b)(2). (Also see P.I. Paul Lawrence affidavit as an exhibit to support this motion to dismiss).

This Court Also requested and ordered the government to produce all names of everyone from the government's team involved in this Search and Seizure, the documents thats been retained, and the taint review process, including explaining their roles in connection with those events. The government have Not complied with the courts orders as of date. (see text order DKT. No. 912) Nor did the government's response state such. (see response DKT. No. 952).

The Sixth Amendment to the U.S. Constitution provides the rights to a fair trial. The privileged materials and documents are not within the scope of documents authorized by the Warrant. (see Search and Seizure Warrant as an exhibit to support this motion to dismiss). Arrington's rights to a fair trial has been violated in its entirety. A defendant has a fundamental right under the Fifth Amendment to fairness in the criminal process, including the ability to get and deploy in his defense all resources lawfully availiable to him, free of Knowing or reckless government interference. The U.S. Constitution provides the defendant protection under the due process clause to fundamental fairness to prepare an adequate defense for trial. Citing U.S. V. Stein, 541 F. 3d 130.

Materials Not subject to disclosure, pursuant to Fed. R. Crim. P. 16 (b)(2), which embodies a "Work product" principle, A defendant does not have to disclose "reports, memoranda's, or other documents" made in connection with the preparation of the case, statements made by the defendant or by government witnesses to the defendant, or the defendant's attorneys or investigators. citing U.S. V. Nobles, 422 U.S. 225, 234-36 (1975).

Public documents was not covered in the protective order, Nor did the Search and Seizure warrant state such. All materials

from the seizure was public information from Arrington's own personal independent investigation. Pursuant to Rule 16 (b)(2) work product doctrine, Scope of protection, is privileged documents that was never suppose to been disclosed nor not returned back to Mr. Arrington. This is the second time, the government and it FBI SA's have infringed upon Arrington's constitutional rights by Searching and Seizing evidence out Arrington's jail cell. The first illegal Search and Seizure without a search Warrant the government and his FBI SA's Robert Colunga destroyed evidence that proved Arrington's innocence. This Outrageous and egregious prosecutorial misconduct requires a dismissal of the indictment with prejudice.

Also the unfair notice that was prejudicial to Mr. Arrington's retrial has interferred with Mr. Arrington's ability to defend and to respond to the unfair notice, which was deliberate.

The government had a witness "Henry Lloyd" take the stand and give testimony that alleged that I, committed violent and heinous crimes that were not charged in this indictment. The allegations included multiple violent acts, including murder. Neither I, Nor this Court, had received prior notice that the government intended to present this evidence. We learned of that intention at the

same time that the jury heard this evidence.

This was a clear violation of the requirements of Rule 404, and of the directives of this Court.

On August 11, 2022, this Court issues a pretrial order directing the government to submit a memorandum of law outlining facts and legal arguments. The memorandum was to include all foreseeable evidentiary issues that may arise at trial. The deadlines for this memorandum and any motions in limine was set for August 25, 2022.

On September 1, 2022, at the pretrial conference, the government turned over additional 3500 materials in an electronic format. The government and Court was made aware that I was just moved to Niagara County Jail and in quarantine, and I did not have any access to electronic material, yet. I requested physical copies, and the Court encouraged the government to give me physical copies as soon as possible, but the government maintained that it would only provide me physical copies for use in the courtroom.

In the disclosure on September 1, 2022, that I did not yet have access to, there was 164 documents. Some of those documents were individually over 100 pages. Buried within

page 27 of 32

all of those documents were sixteen 3500 exhibits for Henry Lloyd.

The government did not provide any notice, oral or written, that they intended to admit evidence under Rule 404(b) based on 302 reports buried within the 3500 materials.

Neither I, nor the Court, would have any reason to think that the government intended to offer 404 evidence related to information buried in the 3500 material, as the statute specifically requires them to give written notice, which includes the requirement that they "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."

This requirement was specifically added to the statute on December 1, 2020, when the statute was amended to clarify and increase the government's notice obligations.

The government did not provide notice sufficient to satisfy the 2020 amendments. They are taking the position that information buried in 3500 material provides sufficient notice, but that does not meet the requirements of Rule 404. That would not have even been sufficient under the statute

prior to the amendments.

The government did make motions to admit other items of evidence under rule 404, which I was given time to respond to and the Court was given time to consider. There was no reason to think that this evidence could be treated differently.

Instead, this evidence of alleged violence and murder, was snuck in through witness testimony and the unfair prejudice of that evidence is so substantial that there was no way that Mr. Arrington received a fair trial.

This was not evidence of other minor crimes. This was evidence of some of the most heinous acts that could possibly be alleges, and the government did not give the Court any notice that they intended to do this, and they did not give me notice, as required by the statute so I could have time to object in advance and prepare. This is a clear violation, also this misconduct requires a dismissal of the indictment with prejudice.

As Mr. Arrington points out in this motion and supporting affidavit, the Outrageous and egregious prosecutorial misconduct has tampered with the administration of Justice.

The AUSA's intentionally lied and Misrepresented to the Court "_Acquitted evidence_," "_The grand Jury testimony_" in government's response motion (DKT. No. 602), instigated Known perjury at the grand Jury proceedings on 01/16/2015 and 06/19/2015. Instigated Known perjury at Arrington's retrial.

Pursuant to Fed. R. Crim. P. 12 (b) (1) allows a defendant in a criminal prosecution to Move to dismiss the indictment "based on defects in the institution of the prosecution." Moreover, the Court is empowered to inquire whether the grand jury's function in this case was undermined by irregularitiess occurring before that body, although, "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." Bank of Nova Scotia V. U.S., 487 U.S. 250, 254 (1988). That case noted that dismissal of an indictment is appropriate where "the structural protections of the grand Jury have been so compromised as to render the proceedings fundamentally unfair." Id. at 257.

On August 22, 2022, right before the retrial, AUSA Lenihan sent a letter to this court, standby counsel Mr. Foti, and Mr. Arrington explaining that he unredacted FBI 302's reports, and grand Jury testimony for the following witnesses:

Spencer Rogers JR, Jaquan Johnson. (see AUSA Lenhan's Letter as an exhibit to support this motion for a dismissal).

The disclosures and unredacted grand jury testimony supports Mr. Arrington's strong particularize need for this court to conduct a in camera inspection on both dates, dates that shows Known perjury was submitted to the grand jury. Jaquan Johnson grand Jury testimony on 02/30/2015 and Damon Hunter's grand Jury testimony was never fixed on 06/19/2015 when AUSA Wei Xiang superseded the indictment. The disclosures of Rogers and Johnson grand Jury testimony on August 22, 2022, supports Arrington's Rule 6 motion to produce (DKT. No. 596).

Consequently, Mr. Arrington is respectfully requesting that this Court grant this motion for an order dismissing this Superseding indictment with prejudice, because of Outrageous and egregious prosecutorial misconduct during the prosecution of this case, also pursuant to Fed. R. Crim. P. 12(b)(1) defects in the institution of the prosecution.

COUNTY OF NIAGARA } ss.
STATE OF NEW YORK }
SWORN AND SUBSCRIBED TO BEFORE ME
THIS 2ND DAY OF APRIL, 2023

Respectfully Submitted.
RODERICK ARRINGTON pro se
P.O. Box 496
Lockport, N.Y. 14095
Roderick Arrington
Dated: April 2, 2023.

PAUL H. LAWRENCE
Notary Public - State of New York
Registration No. 01LA5084737
Qualified in Erie County
My Commission Expires: Sept. 8, 20 25

page 31 of 32

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,
      plaintiff,

   V.S.

RODERICK ARRINGTON a.k.a Rah-Rah
      Defendant.

CERTIFICATE
OF SERVICE

CASE No. 15-CR-33-A

I, RODERICK ARRINGTON, hereby certify that on
April 2, 2023, I sent by U.S. Postal Service mail,
proceeding pro se, filed this motion for a dismissal
because of Outrageous and egregious prosecutorial
Misconduct, also pursuant to Rule 12 (b)(i), with the clerk
of the U.S. District Court for the Hon. chief Judge
Wolford, and Arrington mailed this to the following
participants:

         Respectfully Submitted.
US Attorney's office     RODERICK ARRINGTON pro se
Jeremiah Lenihan, AUSA    P.O. Box 496
Timothy Lynch, AUSA     Lockport, N.Y. 14095
138 Delaware Ave      Roderick Arrington
Buffalo, N.Y. 14202

Dated: April 2, 2023.

COUNTY OF NIAGARA
STATE OF NEW YORK } SS.
SWORN AND SUBSCRIBED TO BEFORE ME
THIS 2ND DAY OF APRIL, 2023

page 32 of 32

PAUL H. LAWRENCE
Notary Public - State of New York
Registration No. 01LA5084737
Qualified in Erie County
My Commission Expires: Sept. 8, 20 25

# Exhibit F



**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

| | |
|---|---|
| *Federal Center* | *716/843-5700* |
| *138 Delaware Avenue* | *fax 716/551-3052* |
| *Buffalo, New York, 14202* | *Writer's Telephone: 716/843-5805* |
| | *Writer's fax: 716/551-3052* |
| | *Jeremiah.Lenihan@usdoj.gov* |

August 22, 2022

Mr. Roderick Arrington

Re:   **United States v. Roderick Arrington**
        **15-CR-33-A**

Dear Mr. Arrington:

Please be advised that in reviewing the 18 U.S.C. § 3500 materials related to Damario James, the government believes that previously redacted information should have been provided to you due to the potential exculpatory nature of the information. Notably, according to a FBI 302 report from a proffer interview the FBI conducted with Damario James on August 7, 2014, James told the FBI that a person who he identified as Tremaine Jacobs a/k/a Teeter told James that Jacobs witnessed Aaron Hicks shoot and kill Quincy Balance in retaliation for the murder of Walter Davison. This information was previously redacted and the 302 was marked as 3502F. The government learned that this material had been undisclosed and redacted late last week. We took the following steps: a) met with Damario James and b) unredacted all of Damario James and other the government cooperating witness's 302s, as well as Grand Jury testimony and c) provided the unredacted materials to the Allegany County Jail on August 19, 2022. The Allegany County Jail notified the United States Attorney's Office on August 22, 2022 that the Jail would not accept the emailed materials, and instead required the materials to be mailed. Also, in meeting with James, he does not remember if Jacobs told him that Jacobs witnessed the shooting or if Jacobs heard from others that Hicks committed the murder.

Because this information may be material to your defense, we believed this information should be highlighted for you. Additionally, we will make efforts to subpoena Tremaine Jacobs a/k/a Teeter should you so require. Please contact your standby counsel, Mark Foti, Esq., if you seek our assistance in this regard.

Very truly yours,

TRINI E. ROSS
United States Attorney

BY:   Jeremiah E. Lenihan
        Assistant United States Attorney

Cc: Mark Foti Esq.
Judge Arcara's Chambers
JEL/swb

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                            Case No. 1:15-CR-00033(EAW)(HKS)

RODERICK ARRINGTON a/k/a Ra-Ra,

Defendant.

_____/

Assigned to: Hon. Elizabeth A. Wolford

## **SUPPORTING AFFIDAVIT**

DECLARATION OF ROBERT B. FLETCHER

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1). I, Robert B. Fletcher, do hereby solemnly swear and depose that my date of birth is August 15, 1990.

2). I am currently incarcerated in the Niagara County Correctional Facility in Lockport, New York and my inmate ID is 148236.

3). On November 28, 2022 I pled guilty in my Federal Criminal Case that was prosecuted by Jeremiah Lenihan from the U.S. Attorney's Office.

4). Within a week after I pled guilty my attorney Barry Donohue called the jail and left a message for me to contact him.

5). As soon as I called my attorney he asked me if I felt comfortable having a conversation over the phone, considering the government had previously admitted to recording my calls with my attorney. Did I feel they were still doing this?

1

6). Because I had already pled guilty, I didn't feel that they were still recording my calls with my attorney.

7.) My attorney told me if I were to cooperate with the U.S. Attorney regarding Roderick Arrington my sentence time would be less than my plea to 87 months.

8.) My attorney said he knew that I did not cooperate regarding any of my people but seeing how I didn't know Roderick Arrington the government was wondering if I would cooperate with them regarding his upcoming trial.

9.) The government knew that Roderick Arrington and I were housed in the same unit at the Niagara County Correctional Facility.

10.) My attorney said that the government wanted me to provide them with anything I heard about Roderick Arrington.

11.) I was amazed that I was being asked about what I heard instead of what I would know from direct conversations with Roderick Arrington.

12.) I have never had any conversations with Roderick Arrington about his or my case and have had no real relationship with him.

13.) If needed I am willing to appear as a witness at any future proceeding for Roderick Arrington.

14). I have read the following statement consisting of two pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 18th day of March 2023.

Robert B. Fletcher
NCCF ID 148236

PAUL H. LAWRENCE
Notary Public - State of New York
Registration No. 01LA5084737
Qualified in Erie County
My Commission Expires: Sept. 8, 20 25

County of Niagara
State of New York } SS
Sworn and Subscribed to before me
This 18th day of March, 2023

2

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

.v.                                          Case No. 1:15-CR-00033(EAW)(HKS)

RODERICK ARRINGTON a/k/a Ra-Ra,

                        Defendant.

_____/

Assigned to: Hon. Elizabeth A. Wolford

## **SUPPORTING AFFIDAVIT**

DECLARATION OF ROMAN A. DUNNIGAN

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1). I, Roman A. Dunnigan, do hereby solemnly swear and depose that my date of birth is March 29, 1979.

2). I am currently incarcerated in the Niagara County Correctional Facility in Lockport, New York and my inmate ID is 114138.

3). Around November 2022 my attorney, Brian Parker, called the jail and left message for me to call him.

4). I called Brian Parker and he asked if I was locked up with Roderick Arrington. I said I was.

5). My attorney said that AUSA Lenihan, who is the prosecutor in my case, wanted to know if I would come downtown to talk about Roderick Arrington. My attorney told them no before speaking with me.

1

6). After speaking with me my answer was No.

7.) The US Attorney was asking if I was shown court paperwork and protected materials by Roderick Arrington.

8.) I had never spoken with Roderick Arrington about his case and was never shown any court documents including protective material by Roderick Arrington.

9.) I never discussed with Henry Lloyd anything regarding Roderick Arrington's court paperwork or court protected materials, all of which I have never seen as I indicated in #8.

10.) I have never had any conversations with Roderick Arrington about any illegal activity.

11). I have read the following statement consisting of two pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 25th day of March 2023.

Roman A. Dunnigan

NCCF ID 114138

PAUL H. LAWRENCE
Notary Public - State of New York
Registration No. 01LA5084737
Qualified in Erie County
Commission Expires: Sept. 8, 20 25

County of Niagara
State of New York   SS
Sworn and Subscribed to before me
This 25th Day of March, 2023

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                              Case No. 1:15-CR-00033

RODERICK ARRINGTON,

Defendant

_____/

Assigned to: Hon. Elizabeth A. Wolford

# SUPPORTING AFFIDAVIT

DECLARATION OF PAUL H. LAWRENCE

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1). I, Paul H Lawrence, do hereby solemnly swear and depose that my date of birth is September 8, 1969 and that I currently reside at 132 Snug Haven Ct, Tonawanda, New York 14150.

2). I am a Licensed Private Investigator in the State of New York, the sole owner of Empire Investigations and have been conducting investigations for 28 years.

3). I have been an assigned investigator for the defendant Roderick Arrington for the purposes of conducting defense investigation into his criminal case. Because

1



Roderick Arrington is acting Pro Se I report directly and only to him with investigative materials for his defense, as per his instructions.

4). As part of my recommendations to Roderick Arrington and with his concurrence I began to conduct inquiries into both government & defense witnesses for the purposes in part to determine credibility.

5). My searches of each individual were done through the online Federal Court public access system known as PACER, New York State Department of Corrections Incarcerated Lookup found on their public site and the Erie County Clerk's Office of Actions & Proceedings onsite public access computer.

6). PACER records if available would be reviewed online and saved as PDF documents. Any available records from NYS DOC would be saved as a PDF.

7). Erie County Clerk would require a signed request form to be completed in order to review any available court records and also for obtaining any certificates of disposition or copies of court documents.

8). Law Enforcement Agency records would be requested via a FOIA letter under Public Officer's Law and redacted copies of reports would be for the most part provided by the agency to us electronically as a PDF document.

9). All documents were saved in my master file system under the case file number assigned to Roderick Arrington's case. Only I have access to this file and its contents.

10). All those documents that I believed were relevant to Roderick Arrington's defense were printed by me and brought by me to the Niagara County Jail. From there a copy of all those documents that I was going to review and leave with Roderick Arrington were photocopied by Deputies. I was instructed that I could only provide him with the copies they made for me and not my originals.

11). I provided Roderick Arrington copies of documents from Federal Court case 1:03-mj-02198-HBS-1 regarding Demario James. A total of seven pages were provided consisting of the case docket summary and document #27, Information Pursuant to 21 U.S.C.

12). I provided Roderick Arrington copies of documents from Federal Court case 1:05-cr-00145-RJA regarding Demario James. A total of twenty-six pages were provided consisting of document #30 Plea Agreement and Rule 11



Acknowledgments, document #34 Judgment in a Criminal Case and document #46 Judgment in a Criminal Case.

13). I provided Roderick Arrington copies of documents from Federal Court case 1:14-cr-00134-RJA-HBS regarding Damario James. A total of forty-five pages were provided consisting of document #53 Indictment, document #518 Plea Agreement, document #709 Judgment in a Criminal Case, document #893 Motion to Reduce Term of Supervised Release by One Year, document #898 Notice of Motion, document #898-1 Defendant's Exhibit A, document #896 Arrest Warrant, document #907 Notice of Motion, document #910 The Government's Opposition to Defendant's Motion to Release, document #925 Notice of Motion, document #929 Order and document #937 Order Dismissing Violation Petition for Offender Under Supervision.

14). I provided Roderick Arrington copies of documents from the Erie County Clerk's Office Actions & Proceedings regarding Damario James. A total of thirteen pages were provided consisting of a Certificate of Disposition, Writ of Habeas Corpus Ad Prosequendum and Indictment from Erie County Indictment No. 2013-1123, a Certificate of Disposition, Writ of Habeas Corpus Ad Prosequendum and Indictment from Erie County Indictment No. 01417-2019 and a Certificate of Disposition, Writ of Habeas Corpus Ad Prosequendum, Indictment and Affidavit Consenting to be Sentenced in Absentia from Erie County Indictment No. 05233-2003.

15). I provided Roderick Arrington copies of police reports that involve Damario James that were provided to me under FOIA from the Buffalo Police Department. A total of twenty pages were provided consisting of complaint numbers 22-2140576, 22-2881108, 19-1380168, 18-2880465, 14-1170514, 14-0230501, 13-2060582, 13-1850333, 13-1140784, 11-0430031, 10-2600373, 10-1400792, 09-2280589 and 03-3150264.

16). I provided Roderick Arrington copies of records on file with the Erie County Sheriff's Department that involve Damario James and were received under FOIA. A total of three pages were provided consisting of a Bail Certificate of Release, Securing Order and Summary of Charges from Erie County Indictment IND-72801-22/002.

17). I provided Roderick Arrington copies of documents from Federal Court case 1:14-cr-00134-RJA-HBS regarding Jerome Grant. A total of forty-six pages were provided consisting of document #319 Plea Agreement, document #570 Defendant

3



Grant's Statement with Respect to Sentencing Factors, document #570-1 letter from Tonya Marie Carmichael, document #588 Judgment in a Criminal Case, document #913 handwritten statement by Jerome Grant, document #975 handwritten statement by Jerome Grant and document #981 Decision and Order.

18). I provided Roderick Arrington copies of documents from Federal Court case 1:07-cr-00200-WMS-JJM regarding Henry Lloyd. A total of twenty-five pages were provided consisting of the case history, document #1 Indictment, document #2 Order Setting Conditions of Release, document #41 Judgment in a Criminal Case, document #52 Plea Agreement and document #61 Notice of Motion and Motion to Set Conditions of Release.

19). I provided Roderick Arrington copies of documents from Federal Court case 1:12-cr-00181-RJA regarding Henry Lloyd. A total of sixty-nine pages were provided consisting of the case history, document #1 Information, document #3 Plea Agreement, document #4 Order Setting Conditions of Release, document #13 Notice of Motion and Motion for Bail Revocation, document #19 Government's Response to Defendant's Bail Motion, document #20 Exhibits A, B & C, document #67 Judgment in a Criminal Case, document #78 Amended Judgment in a Criminal Case, document #79 Request for Modifying the Conditions, document #82 Amended Petition for Offender Under Supervision and document #110 Notice of Motion.

20). I provided Roderick Arrington copies of documents from Federal Court case 1:17-cr-00119-RJA-JJM regarding Henry Lloyd. A total of twenty-five pages were provided consisting of document #1 Indictment, document #198 Jury Verdict and document #314 Government's Supplemental Response to the Presentencing Report.

21). I provided Roderick Arrington copies of documents from Federal Court case 1:15-cr-00020-RJA-HBS regarding Damon Hunter. A total of forty-six pages were provided consisting of the case history, document #1 Indictment, document #35 Plea Agreement, document #43 Defense Sentencing Memorandum, document #46 Judgment in a Criminal Case, document #50 Request for Modifying the Conditions, document #60 Plea Agreement, document #65 Order Modifying Conditions of Supervision, document #71 Judgment in a Criminal Case and document #75 Arrest Warrant.

22). I provided Roderick Arrington copies of police reports that involve Damon Hunter that were provided to me under FOIA from the Buffalo Police Department.

4

A total of nineteen pages were provided consisting of complaint numbers 22-2300519, 13-1500640, 13-0980827, 12-2870601, 12-2430722, 12-1340807, 12-1120908, 10-1410083, 08-2330414, 07-3170607, 07-3170426 and 07-0550299.

23). I provided Roderick Arrington copies of police reports that involve Damon Hunter that were provided to me under FOIA from the Town of Tonawanda Police Department. A total of six pages were provided consisting of complaint numbers 22-242075, 22-240581, 22-240510 and 22-230396.

24). I provided Roderick Arrington copies of NYS Department of Corrections Inmate Information on Damon Hunter that were available on the publicly accessible NYS DOC website under incarcerated lookup. A total of two pages were provided consisting of DIN 09B0239 report and DIN 14B3841 report.

25). I provided Roderick Arrington copies of documents from Federal Court case 1:14-cr-00134-RJA-HBS regarding Spencer Rogers. A total of thirty-six pages were provided consisting of document #255 Plea Agreement, document #740 Sentencing Memorandum, document #740-1 Letters to Judge Arcara by Spencer Rogers and supporters and document #787 Judgment in a Criminal Case.

26). I provided Roderick Arrington copies of court case information from Ohio Courts, a publicly accessible site, regarding Spencer Rogers. A total of twenty-six pages were provided consisting of case information on criminal cases CR-85-199017-B, CR-89-237386-ZA, CR-91-266764-ZA, CR-91-268411-ZA, CR-93-294829-ZA, CR-94-310367-ZA and CR-95-323870-ZA.

27). I provided Roderick Arrington copies of NYS Department of Corrections Inmate Information on Spencer Rogers that were available on the publicly accessible NYS DOC website under incarcerated lookup. A total of one page was provided consisting of DIN 09B1147 report.

28). I provided Roderick Arrington copies of police reports that involve Deshawn Allen that were provided to me under FOIA from the Buffalo Police Department. A total of fifteen pages were provided consisting of complaint numbers 17-3320676, 16-0590343, 15-2460521, 15-1850439, 15-1270256, 12-2220918, 12-2070869, 12-1580669, 12-1580609 and 12-1540738.

29). I provided Roderick Arrington copies of documents from the Erie County Clerk's Office Actions & Proceedings regarding Deshawn Allen. A total of nine pages were provided consisting of a Certificate of Disposition, Indictment and Uniform Sentence & Commitment from Erie County Indictment No. 00883-2015

and a Certificate of Disposition, Statement Pursuant to CPL 400.21 Second Felony Offender and Uniform Sentence & Commitment from Erie County Indictment No. 02423-2017.

30). I provided Roderick Arrington copies of NYS Department of Corrections Inmate Information on Deshawn Allen that were available on the publicly accessible NYS DOC website under incarcerated lookup. A total of two pages were provided consisting of DIN 16B1352 report and DIN 18B2357 report.

31). I provided Roderick Arrington copies of police reports that involve Christopher Paige that were provided to me under FOIA from the Buffalo Police Department. A total of twenty pages were provided consisting of complaint numbers 21-1841009, 20-2370427, 20-1200324, 18-1930879, 16-1461046, 15-1940084, 15-1240862, 15-1240529, 15-0681003, 14-1870349, 13-2260845, 13-2070187, 13-1690330, 12-3600171 and 12-0810449.

32). I provided Roderick Arrington copies of documents from the Erie County Clerk's Office of Actions & Proceedings regarding Christopher Paige. A total of five pages were provided consisting of a Certificate of Disposition, Waiver of Indictment, Waiver of Appeal, IDV Referral Form and New Arrest Notice from Erie County Indictment No. 00993-2016.

33). I provided Roderick Arrington copies of police reports that involve Nathan Sanders that were provided to me under FOIA from the Buffalo Police Department. A total of forty-one pages were provided consisting of complaint numbers 22-1870246, 21-2400383, 21-1320708, 20-0630835, 19-3390249, 19-3360585, 16-2671034, 16-2591027, 16-2380636, 16-2080811, 14-2120382, 13-3080421, 13-1310778, 12-0440499, 11-2920803, 11-1171050, 10-3340326, 10-2460467, 10-2460307, 10-1880297, 10-1820243, 09-1891115, 08-1841060, 08-1520751, 06-3361144, 05-2070464, 05-0590191, 05-0060209 and 04-3640623.

34). I provided Roderick Arrington copies of documents from the Erie County Clerk's Office Actions & Proceedings regarding Nathan Sanders. A total of one page was provided consisting of a Certificate of Disposition from Erie County Indictment No. 00874-2013.

35). I provided Roderick Arrington copies of police reports that involve Renee Smith that were provided to me under FOIA from the Buffalo Police Department. A total of nine pages were provided consisting of complaint numbers 22-1870612, 16-2570525, 16-2141068, 16-2030873, 16-1930132, 12-1951318 and 12-1941183.



36). I provided Roderick Arrington copies of police reports that involve Roxanne Mascho that were provided to me under FOIA from the Buffalo Police Department. A total of twelve pages were provided consisting of complaint numbers 22-1500030, 21-2990681, 20-3390312, 19-2450345, 18-2660242, 18-1430335, 16-0770277, 15-2040558, 12-2480745 and 09-3240190.

37). I provided Roderick Arrington copies of police reports that involve Terrell Hagans that were provided to me under FOIA from the Buffalo Police Department. A total of twenty-two pages were provided consisting of complaint numbers 19-2920966, 18-30000390, 16-2300708, 16-1780203, 16-1770867, 16-0130187, 16-0130099, 15-3150590, 15-2490240, 14-1560102, 13-1870296, 13-1310778 and 09-2240151.

38). Attached to this affidavit is a copy of the relevant pages from the expenses portion of my previously submitted CJA eVoucher with the lines for copies of the above referenced documents highlighted.

7). I have read the following statement consisting of seven pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

I declare under penalty of perjury, that the foregoing is true and correct.


Executed on this 16th day of February 2023.



Paul H. Lawrence

7



**COUNTY OF ERIE**
**DEPARTMENT OF**
**CENTRAL POLICE SERVICES**
**FORENSIC LABORATORY**

45 ELM STREET, FOURTH FLOOR
BUFFALO, NEW YORK 14203-2600
PHONE: (716) 858-7409
FAX: (716) 858-7426

## DNA ANALYSIS REPORT

**LAB NUMBER: 14-07483**

SUBMITTING AGENCY: Federal Bureau of Investigation
CASE NAMES:    Arrington, Roderick - Defendant
CASE NO.: 245D-BF-3068082
DATE OF REPORT: (12/5/2014)    REFERENCE NO.:
INV. OFFICER: Paris

**Report Number 2**

DNA was extracted from the swab of the semi-automatic pistol (Item 1B194.1). It was amplified using the polymerase chain reaction (PCR) and typed using capillary electrophoresis at the following genetic loci: D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, D2S1338, D19S433, vWA, TPOX, D18S51, Amelogenin, D5S818 and FGA.

**Conclusion:**

Based on the PCR results, the DNA profile obtained from the swab of the semi-automatic pistol (Item 1B194.1) is a mixture of DNA from at least three unknown individuals, including at least one male individual and one female individual. The major DNA profile is that of an unknown female individual and was entered and searched in CODIS Local (Local DNA Databank). No matching DNA profiles were found. The major DNA profile does not qualify for submission to the State and National DNA Databanks. Known buccal samples are required for further comparison.

*only 3?*

Item 1B194.1 DNA extracts will remain in laboratory custody.

I affirm that I conducted the analysis documented herein.
This report may contain the conclusions, opinions and/or interpretations of the analyst whose signature appears on the report.
This report does not constitute the entire case record, which may include worksheets, images, analytical data, and other documents.

CERTIFICATION: Pursuant to Criminal Procedure Law Sections 180.60(8) and 190.30(2), I certify that this copy is a true and accurate report concerning the results of tests and examinations which I, Sarah Murrin, public servant and Forensic Biologist II, conducted at the Erie County Central Police Services Forensic Laboratory as recorded in this Laboratory Case Number 14-07483, Report # 2. I am aware that false statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the New York State Penal Law.

Sarah Murrin
Forensic Biologist II

*1st Trial*
*Evidence*

*Exhibit #6*

*My DNA*
*Was not on*
*This firearm*

Case 1:15-cr-00033-EAW-HKS  Document 995  Filed 04/05/23  Page 47 of 63 *Rule 6*
Case 1:15-cr-00020-RJA-HBS  Document 1  Filed 01/28/15  Page 1 of 5

*Exhibit #3*

# IN THE DISTRICT COURT OF THE UNITED STATES

## for the Western District of New York

---

NOVEMBER 2014 GRAND JURY
(Impaneled 11/07/2014)

THE UNITED STATES OF AMERICA

-vs-

DAMON HUNTER

**INDICTMENT**

Violations:
Title 18, United States Code,
Sections 1512(c)(2) and 1623(a)
(2 Counts)

### INTRODUCTION

#### The Grand Jury Charges That:

#### At All Times Relevant to This Indictment:

1.     The United States Attorney's Office for the Western District of New York,
the Federal Bureau of Investigation, and the City of Buffalo Police Department were
investigating the murder of persons on the East Side of Buffalo.  The investigation
specifically focused on murders that: were suspected to have been committed by convicted
felons with firearms; were suspected to have been committed in furtherance of federal drug
trafficking crimes or federal crimes of violence; or were suspected to have been committed
by gang members or associates in aid of racketeering activity.  Multiple provisions of federal
law, including Title 18, United States Code, Sections 922(g)(1), 924(c), and 1959(a), and
others, prohibited the possession and use of firearms by convicted felons; the possession and
use of firearms in furtherance of federal drug trafficking crimes and federal crimes of
violence; and murder in aid of racketeering.

*The agreement and the lies*

JOHNSON -- MR. PARISI -- 9/18/17                      514

1    A.  No, not -- no.

2    Q.  Not yet?

3    A.  No.

4    Q.  So, that day when you went back, did you go to law

5    enforcement, the police and did you tell them, I saw this

6    happen?

7    A.  No.

8    Q.  You didn't?

9    A.  No.

10   Q.  Why not?

11   A.  Because I don't -- I didn't feel like -- well, I don't

12   know.  It was -- I just didn't.

13   Q.  Were you scared?

14           MR. LOTEMPIO:  Objection.  Leading.

15           THE COURT:  Overruled.

16   BY MR. PARISI:

17   Q.  Were you scared?

18   A.  No.

19   Q.  Did there ever come a point in time when you came forward

20   and you told law enforcement about what you saw that night?

21   A.  Yes.

22   Q.  Was that in January of 2015?

23   A.  Yes.

24   Q.  How did you come forward to law enforcement?

25   A.  What do you mean?

GA 576

*admitted to the agreement lies*

JOHNSON -- MR. PARISI -- 9/18/17                                    515

1   Q.  Did you -- did law enforcement come find you or did you

2   reach out to somebody in law enforcement?

3   A,  I reached out to somebody in law enforcement.

4   Q.  Why did you do that?

5   A.  I don't know.  Like, what do you mean?

6   Q.  Well, I guess -- had you already pled guilty to the gun

7   case that you had in county court?

8   A.  Yes.

9   Q.  Had you already been sentenced for that case?

10  A.  Yes.

11  Q.  Were you receiving any benefit for coming forward?

12  A.  Yes.

13  Q.  Well, what benefit are you receiving for coming forward?

14  A.  Well, right now?

15  Q.  Yes.

16  A.  Nothing.

17  Q.  Did you ever receive a benefit for coming forward and

18  talking to the police?

19  A.  Yes.

20  Q.  What benefit did you receive?

21  A.  Stolen car case.

22  Q.  What happened to that stolen car case?

23  A.  It got dropped.

24  Q.  That was dismissed?

25  A.  Yes.

*(handwritten, right margin)* The lies and Nick Names

Never say any thing about Black As the Alleged driver

JOHNSON -- MR. PARISI -- 9/18/17                                    516

1   Q.  Did the government agree to dismiss those charges or did

2   that happen on its own?

3   A.  I guess it happened on its own or something.

4   Q.  Was there -- did you ever enter into an agreement with

5   the government to dismiss the stolen car charges?

6   A.  Yes.

7   Q.  I'm sorry?

8   A.  Yes.

9   Q.  When was that?  That was back in January 2015?

10  A.  Yes.

11  Q.  When you met with law enforcement back in January 2015,

12  did you tell them what you told us here today?

13  A.  Yes.

14  Q.  Did you tell them who shot Shooter?

15  A.  Yes.

16  Q.  Did you receive any reduced sentence on a violation of

17  probation in exchange for your testimony?

18  A.  No.

19  Q.  I could show you Government Exhibit 34F.  Do you

20  recognize who that is?

21  A.  Yes.

22  Q.  Who is that?

23  A.  Dame.

24  Q.  Is that the same Dame that you saw in the car with

25  Shooter on October 30th, 2012?

*My Attorney*

The (ies
and Dont
ask about
black
To cover
up for
government

JOHNSON -- MR. LOTEMPIO -- 9/18/17          537

```
 1   A.   Yes.

 2   Q.   Okay.  And that somebody must have went forward to the

 3   D.A.'s office to talk the D.A. into giving you a plea bargain

 4   to allow probation?

 5   A.   Yes.

 6   Q.   And that usually that District Attorney had a plea policy

 7   of not offering pleas on gun cases.  Do you remember all of

 8   that?

 9   A.   I don't recall.

10   Q.   And then, you got put on probation, right?

11   A.   Yes.

12   Q.   And you know that a probation violation then would carry

13   the original three-and-a-half-year sentence?

14   A.   Yes.

15   Q.   And while that new case for the stolen car was pending,

16   you came forward, right?

17   A.   Yes.

18   Q.   And you told the government that Mr. Arrington shot

19   Quincy Balance, right?

20   A.   Yes.

21   Q.   But you also told the Grand Jury that one of the reasons

22   you were doing that is because the word on the street was is

23   that Cheese shot him.  We just showed you that testimony,

24   right?

25   A.   Yes.
```

✓

Here

# 8 Exhibits

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### Western District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>RODERICK ARRINGTON, located in the Cattaraugus<br>County Jail | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.   20-M- 5061 |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ **Western** _____ District of _____ **New York** _____
*(identify the person or describe the property to be searched and give its location):*

The person of RODERICK ARRINGTON, currently located in the Cattaraugus County Jail.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

DNA buccal samples from RODERICK ARRINGTON, containing DNA

**YOU ARE COMMANDED** to execute this warrant on or before _April 22, 2020_ (not to exceed 14 days)
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ **United States Magistrate Judge Michael J. Roemer** _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _April 18, 2020_
_1:03 pm_

City and state:    **Buffalo, New York**

_____
*Judge's signature*

**Honorable Michael J. Roemer, U.S. Magistrate Judge**
*Printed name and title*

#8 Exhibits

Erie County Central Police Services Forensic Laboratory
45 Elm St.
Buffalo, New York 14203-9600
(716) 858-7409



## REQUEST FOR LABORATORY EXAMINATION

| SUBMITTING AGENCY: | DISTRICT/BUREAU: | CASE/CD NUMBER: Buffalo |
|---|---|---|
| FBI Safe Streets | FBI 245D-BF-306808L | 13-115-0547 |
| **INVESTIGATING OFFICER:** | **BUSINESS PHONE:** | **E-MAIL ADDRESS:** |
| SA Rob Colunga | 716-715-4144 | rcolunga@fbi.gov |
| **CHARGES:** | **DATE/TIME OF OCCURRENCE:** | **PROSECUTOR:** AUSA Tripi |

CHECK IF APPLICABLE:  ☐ Sale of controlled substance   ☐ Asset Forfeiture Case   ☐ Evidence Previously Submitted in this case

| DEFENDANT(S): (last name, first name) | Date of Birth: | VICTIM(S): last name, first name | Date of Birth: |
|---|---|---|---|
| Arrington, Roderick | 12/81 | | |
| | | | |
| | | | |

| CPS Item #: | Agency Item #: | DESCRIPTION OF EVIDENCE: | EXAMINE FOR: | ADDRESS & WHERE OBTAINED: |
|---|---|---|---|---|
| 1 | | NYS DNA Buccal Swab | compare other DNA | seal to Tripi |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

COMMENTS:

**DO NOT WRITE IN THE SHADED AREAS**

| THIS SIDE TO BE COMPLETED BY THE SUBMITTING OFFICER | THIS SIDE FOR LABORATORY USE ONLY |
|---|---|
| SUBMITTED BY: _(signature)_ | RECEIVED: ☒ Sealed ___KIT___ |
| _SIGNATURE_ | ☐ Unsealed _____ ☐ Not Inventoried |
| PRINT NAME: Rob Colunga | ☐ Improper Seal _____ |
| LOCKER NO.: 36 | ☐ Received with cross outs/write overs |
| DATE/TIME SUBMITTED: 04/22/2020  1100 | DATE/TIME REC'D: 4-23-2020   0739 |
| By signing this form you acknowledge that the Laboratory will select the appropriate items to be analyzed and the methods of analysis. | RECEIVED BY: Don Crowe |
| | LAB NO.: 14-07483   0 |
| Go to www.erie.gov/forensiclab for Laboratory information, guidelines and forms. | SUBMISSION #: 2    PAGE #: 1 OF 1 |
| | RESUBMISSION ☐ |

DCPSL-5
Issued by: Michelli Schmitz
Issue date: 01/12/18

2994
Revision 4
Page 1 of 1

*Exhibit Rule 6*
*#4*

b. The defendant knew and recognized the shooter as Roderick Arrington a/k/a Ra-Ra. The defendant also knew and recognized three individuals at the shooting associated with Arrington as Marcel Worthy a/k/a Cheese, Aaron Hicks a/k/a Boog a/k/a Boogy, and James Robbs a/k/a Jimmy. The defendant knew all four individuals through personal interactions with them on the East Side of the Buffalo, and knew that they believed that the defendant and Balance were involved in the shooting murder of Walter Davison a/k/a Matt on or about August 26, 2012, on Carl Street, Buffalo, New York.

c. Hours after the shooting on August 30, 2012, the defendant gave a true statement to City of Buffalo Homicide Detectives detailing the circumstances of the shooting. The defendant accurately described how he and Balance stopped to speak with Hicks regarding the Davison murder, how Worthy and Robbs arrived and surrounded them in separate cars, and how Arrington walked up with a handgun, shot Balance until he fell, then discharged the handgun at the defendant while the defendant ran away. The defendant also truthfully identified Arrington, Worthy, and Robbs via photographic lineup to police.

d. On or about November 14, 2014, a Grand Jury of the United States District Court for the Western District of New York was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 922(g)(1), 924(c), and 1959(a) had been committed during the shooting and murder of Quincy Balance and the attempted murder of the defendant on or about August 30, 2012, in the City of Buffalo, New York. It was material to said investigation to identify the person who had possessed, used, and discharged a firearm during the murder of Balance and attempted murder of the defendant, as well as to identify the persons who caused the commission of and conspired to commit the aforementioned violations of federal law.

*Confirms the Date*

e. The defendant, while appearing as a witness under oath at a proceeding before the Grand Jury, falsely recanted his identification of Arrington as the person who killed Balance and shot at the defendant. The defendant testified that he was mistaken about Arrington being the shooter, when he knew that he had observed Arrington as the shooter. Among other reasons for lying to the Grand Jury, the defendant was afraid of retribution from Arrington and his associates and for being labeled as a "snitch" if Arrington were indicted based on the defendant's testimony. The defendant was also upset at not receiving any sentencing benefit in his Erie County firearm conviction for cooperating with the federal investigation.

1

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

3                                        )
                                         ) Case No. 1:15-CR-00033-3
4                                        )          (RJA)(HBS)
                    Plaintiff,           )
                                         )
5   vs.                                  )
                                         ) September 14, 2022
6   RODERICK ARRINGTON,                  ) 12:34 p.m.
                                         )
7              Defendant.                )

8              TRANSCRIPT OF ORAL ARGUMENT AFTER HEARING
               BEFORE THE HONORABLE RICHARD J. ARCARA
9                 SENIOR UNITED STATES DISTRICT JUDGE

10

    APPEARANCES:
11

    For the Plaintiff:      TRINI E. ROSS, ESQ.
12                          UNITED STATES ATTORNEY
                            BY:   JEREMIAH LENIHAN, ESQ.
13                          ASSISTANT UNITED STATES ATTORNEY
                            138 Delaware Avenue
14                          Buffalo, NY 14202

15                          U.S. DEPARTMENT OF JUSTICE
                            ORGANIZED CRIME SECTION
16                          BY:   JULIE ANN FINOCCHIARO, ESQ.
                            1301 New York Avenue, NW
17                          Suite 7th Floor
                            Washington, DC 20530
18
    For the Defendant:      RODERICK ARRINGTON, PRO SE
19

    Stand-by counsel:       MARK A. FOTI, ESQ.
20                          16 W. Main Street, Suite 100
                            Rochester, NY 14614
21

    Court Reporter:         MEGAN E. PELKA, RPR
22                          Robert H. Jackson US Courthouse
                            2 Niagara Square
23                          Buffalo, NY 14202
                            (716) 364-6449
24

25

12:34PM
12:34PM
12:34PM
12:34PM

12:34PM  1    THE DEFENDANT:  Your Honor, the camera speaks for

12:34PM  2  itself, Your Honor.  When she got escorted out of here without

12:35PM  3  your permission, as a testifying witness that was -- you gave

12:35PM  4  her ten minutes to refresh her recollection.  The government

12:35PM  5  had her removed to an unsecure location.

12:35PM  6    And as you can see, in Exhibit 3, that when she come out

12:35PM  7  and she being escorted down the hall, you see Special Agent

12:35PM  8  Colunga come from the window, goes over to this blind spot and

12:35PM  9  was over there with her talking to her for the whole 20-

12:35PM  10  something minutes off camera.

12:35PM  11    If you do the read back on her testimony, before she left

12:35PM  12  out of here, Your Honor, she was hostile with the government.

12:35PM  13  She was refusing to identify me.  She was -- she didn't

12:35PM  14  identify me.  And the whole time she's over there talking to

12:35PM  15  Special Agent Colunga.

12:36PM  16    She comes in and says -- blurting out stuff, saying stuff,

12:36PM  17  you know, that I wasn't even questioning her about, and

12:36PM  18  changes her story, and starts screaming out that I know what I

12:36PM  19  did.  You know what you did.  And I'm like, what are you

12:36PM  20  talking about?  What's going on?  I'm not even asking you a

12:36PM  21  question.  She start blurting out, you killed him, you know

12:36PM  22  what you did.

12:36PM  23    And I'm moving for a mistrial with prejudice, Your Honor,

12:36PM  24  because whatever Colunga told her to come here and say, she

12:36PM  25  said it, and the jury's heard that, and you can never take

Case 1:15-cr-00033-EAW-HKS Document 995 Filed 04/05/23 Page 57 of 63
US v ARRINGTON --09/14/2022 -- ORAL ARGUMENT AFTER HEARING

2

| | | |
|---|---|---|
| 12:36PM | 1 | that from the jury's minds.  And it's not fair.  It's unfair. |
| 12:36PM | 2 | And they took it upon they self when they seen a situation |
| 12:36PM | 3 | going left, and it's going out of -- whatever they thought |
| 12:36PM | 4 | that she was going to testify to. |
| 12:36PM | 5 | But as I'm here going to trial, Your Honor, saying I'm |
| 12:36PM | 6 | innocent, I didn't commit this crime, and for the testimony to |
| 12:37PM | 7 | go totally different for the government, and she's not |
| 12:37PM | 8 | cooperating with the government, and she's saying that she |
| 12:37PM | 9 | never seen me, and she never seen my face, and then come in |
| 12:37PM | 10 | here and changes her story, Your Honor, because a special |
| 12:37PM | 11 | agent that's been constantly involved in this case, raiding my |
| 12:37PM | 12 | cell, seizing my materials, my materials coming up missing, |
| 12:37PM | 13 | he's going by my alibi witness's house trying to get them to |
| 12:37PM | 14 | tell them what she going to testify to, he's constantly, |
| 12:37PM | 15 | constantly, reappearing in this case, Your Honor, doing foul |
| 12:37PM | 16 | things. |
| 12:37PM | 17 | And when that witness was on the bench during her |
| 12:37PM | 18 | examination testimony, the government calls her out so the |
| 12:37PM | 19 | agents can have they way with her.  And it!s not fair.  And |
| 12:37PM | 20 | you can never erase what she said out of the jury's minds, |
| 12:38PM | 21 | Your Honor.  During trial, I'm sitting here during trial. |
| 12:38PM | 22 | This is a witness that was with the deceased or the person |
| 12:38PM | 23 | that got killed, Your Honor.  She never identified me, Your |
| 12:38PM | 24 | Honor.  And the government seen it wasn't going their way, and |
| 12:38PM | 25 | they took this recess, and without you being on the bench, |

12:38PM  1    they took it upon they selves to get her outside to change her

12:38PM  2    story and I'm moving this court for a mistrial with prejudice,

12:38PM  3    Your Honor.

12:38PM  4         THE COURT:  Mr. Lenihan?

12:38PM  5         MR. LENIHAN:  A couple points, Your Honor.  As the

12:38PM  6    testimony bore out from Court Security Officer Scott, the

12:38PM  7    government didn't make the determination to ask

12:38PM  8    Ms. Kazukiewicz to leave the witness stand.  It was made in

12:38PM  9    the moment, for her security, to calm down a situation that

12:38PM  10   occurred in this courtroom.  And the video bears that out.

12:38PM  11        The video also corroborates Special Agent Colunga's

12:39PM  12   testimony that he was with her but he testified credibly that

12:39PM  13   he never told her to say anything, to identify the defendant;

12:39PM  14   that all he told to her was to calm down a little bit and just

12:39PM  15   tell the truth.

12:39PM  16        The witness herself corroborates all of this.  The

12:39PM  17   defendant asked the witness, did the government tell you

12:39PM  18   anything?  And her answer was, why would they tell me?  They

12:39PM  19   didn't tell me anything.  Her testimony was that no one from

12:39PM  20   the government told her what to say and to identify the

12:39PM  21   defendant.  The defendant choose to cross-examine her, and she

12:39PM  22   testified as to how she testified.

12:39PM  23        There's -- we never asked for an in-court identification.

12:39PM  24   We had briefed this issue.  The Court had precluded the in-

12:39PM  25   court identification at the first trial due to that Facebook

Case 1:15-cr-00033-EAW-HKS Document 995 Filed 04/05/23 Page 59 of 63
US v ARRINGTON - 09/14/2022 -- ORAL ARGUMENT AFTER HEARING

4

12:39PM   1   photograph that was shown to her prior to her Grand Jury

12:39PM   2   testimony.

12:39PM   3       So, when we made our representation over the weekend as to

12:40PM   4   seeking her identification evidence, it was purely for the

12:40PM   5   photo arrays; the two photo arrays where she said, on the one,

12:40PM   6   she'd have to see Mr. Arrington in person, and on the other,

12:40PM   7   she said she was 45 percent sure, but would have to see him in

12:40PM   8   person.  And Mr. Arrington started asking her about what would

12:40PM   9   happen if she saw him in person, and the answer was something

12:40PM   10  that he really didn't like.

12:40PM   11      There's no evidence of misconduct whatsoever, pure

12:40PM   12  speculation, pure conspiracy theory.  We'd ask the Court to

12:40PM   13  deny the defendant's application.

12:40PM   14              THE DEFENDANT:  Your Honor, can I say something?

12:40PM   15              THE COURT:  Yes.

12:40PM   16              THE DEFENDANT:  The video speak for itself, Your

12:40PM   17  Honor.  Colunga didn't have no right to be telling her what

12:40PM   18  to -- testimony or giving her advice of what her testimony

12:40PM   19  should say.  He's an experienced special agent.  He know the

12:40PM   20  rules of this courtroom and what he should and should not do.

12:40PM   21      Your Honor, he specifically came in here -- first and

12:41PM   22  foremost, AUSA Lenihan lied to you when you asked him about

12:41PM   23  her being secured in this room.  He said nobody had access to

12:41PM   24  her.  She was in the room the whole time.  Once he found out

12:41PM   25  the cameras was coming about, his story totally changed, Your

| | | |
|---|---|---|
| 12:41PM | 1 | Honor. |
| 12:41PM | 2 | MR. LENIHAN:  Judge, I mean, on that point, I have to |
| 12:41PM | 3 | rely on -- |
| 12:41PM | 4 | THE DEFENDANT:  I was still -- finished.  I wasn't |
| 12:41PM | 5 | finished talking.  I gave you your piece, give me my piece |
| 12:41PM | 6 | please. |
| 12:41PM | 7 | When the Judge asked you, you told the Judge that she was |
| 12:41PM | 8 | in a secure place.  Nobody had access to her.  Nobody went in |
| 12:41PM | 9 | the room with her.  Once you found out that cameras was |
| 12:41PM | 10 | involved and the Judge was getting his camera in, your |
| 12:41PM | 11 | testimony changed twice.  First you said the female special |
| 12:41PM | 12 | agent and then oh, one more. |
| 12:41PM | 13 | Colunga had direct contact with this lady in the corner |
| 12:41PM | 14 | off the camera in a blind spot sitting there with her for 20 |
| 12:42PM | 15 | minutes talking to her, giving her advice on what to testify |
| 12:42PM | 16 | to.  We couldn't hear what they were saying, but what -- her |
| 12:42PM | 17 | actions when she came back in here tells the story of what |
| 12:42PM | 18 | took place.  And it was definitely misconduct being committed, |
| 12:42PM | 19 | Your Honor.  So, I'm asking this Court -- |
| 12:42PM | 20 | MR. LENIHAN:  Judge, on that point, I wasn't present. |
| 12:42PM | 21 | I have to rely on what's told to me.  I was relying on the |
| 12:42PM | 22 | fact that there was no contact.  It was a fact-finding mission |
| 12:42PM | 23 | this morning.  As we developed more facts and we talked to |
| 12:42PM | 24 | more people, we learned that Special Agent Colunga did, in |
| 12:42PM | 25 | fact, escort her to the bathroom; and then, that Special Agent |

| | |
|---|---|
| 12:42PM | 1 | Colunga sat down on the bench.  When I made that |
| 12:42PM | 2 | representation, I didn't know that.  It was evolving this |
| 12:42PM | 3 | morning.  I'm doing the best I can to give the Court the |
| 12:42PM | 4 | information as to what I knew at the time. |
| 12:42PM | 5 | THE DEFENDANT:  Your Honor, he knew it was special -- |
| 12:42PM | 6 | THE COURT:  All right.  No, no.  No more talking. |
| 12:42PM | 7 | I've heard enough.  I've seen the evidence.  I'll render a |
| 12:42PM | 8 | decision tomorrow morning at 10 o'clock.  All right.  We'll |
| 12:43PM | 9 | recess for the day. |
| 12:43PM | 10 | (Proceedings concluded at 12:43 p.m.) |

1               *     *     *     *     *     *     *

2

3               I certify that the foregoing is a

4         correct transcription of the proceedings

5         recorded by me in this matter.

6

7

8

9                          s/ Megan E. Pelka, RPR

10                         Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Roderick Arrington, Pro Se
To Box 496
Lockport, NY 14095

Clerk of the U.S. District Court
For the Hon. Chief Judge Wolford
2 Niagara Square
Buffalo, NY 14202

USDC - WDNY
APR - 5 2023
BUFFALO

15-CR-33



CERTIFIED MAIL

7022 0410 0000 1740 0088

UNITED STATES
POSTAL SERVICE

U.S. POSTAGE PAID
FCM LG ENV
BUFFALO, NY
14202
APR 03, 23
AMOUNT
$7.57
R2309Y155249-8

RDC 99

14202