

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                  15-CR-33-EAW

RODERICK ARRINGTON a/k/a Ra Ra,

                Defendant.

---

## PLEA AGREEMENT

The defendant, RODERICK ARRINGTON a/k/a Ra Ra, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I.      THE PLEA AND POSSIBLE SENTENCE

1.      The defendant agrees to plead guilty to Count 1 of the Superseding Indictment, which charges a violation of Title 18, United States Code, Section 1962(d) (racketeering conspiracy), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years.  The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.      The defendant understands that the Court must require restitution to be paid to victims of the offenses of conviction as part of the sentence pursuant to Title 18, United States Code, Section 3663A and Sentencing Guidelines § 5E1.1(a)(1).

3.     The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.     ELEMENTS AND FACTUAL BASIS

4.     The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

    a.     there was an enterprise, as described in the Superseding Indictment, consisting of a group of persons associated together for a common purpose of engaging in a course of conduct;

    b.     the enterprise engaged in, or its activities in some way affected, interstate or foreign commerce;

    c.     the defendant was employed by or associated with the enterprise; and

    d.     the defendant knowingly and intentionally entered into an agreement that a conspirator would conduct, or participate in the conduct of, the affairs of the enterprise through a pattern of racketeering activity.

## FACTUAL BASIS

5.     The defendant and the government agree to the following facts, except as indicated below, and agree that such facts form the basis for the entry of the plea of guilty, including relevant conduct.   The defendant specifically reserves the right to raise such

disagreements as specified below regarding the factual basis with the Court at the time of sentencing.

a.  Beginning in or before 2000, the exact date being unknown, and continuing until on or about October 31, 2014, the defendant, RODERICK ARRINGTON a/k/a Ra Ra, did knowingly and willfully combine, conspire, and agree with several associates, collectively known as the "Schuele Boys," to possess with the intent to distribute and to distribute controlled substances, including cocaine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance.

b.  The Schuele Boys operated within a specifically defined geographic area in the vicinity of Schuele Street on the East Side of the City of Buffalo, New York.   Schuele Boys members and associates engaged in drug trafficking to generate income to maintain control over their territory. The defendant admits and agrees that: (i) the Schuele Boys constituted an "enterprise" as that term is defined under Title 18, United States Code, Section 1961(4), that is, an association of persons "in fact"; (ii) that the Schuele Boys enterprise engaged in, and its activities affected, interstate commerce; and (iii) that the defendant, as a member and/or associate of the Schuele Boys enterprise, agreed to participate in the conduct of the affairs of such enterprise through a pattern of racketeering activity.

c.  In or about the summer of 2011, co-defendant Aaron Hicks incorporated G.O.N.E. ENT a/k/a Gone Entertainment, a domestic corporation, in Nevada.   Co-defendant Hicks listed himself as the corporation's president, and co-defendant Letorrance Travis as treasurer. Co-defendants Hicks, Travis, Marcel Worthy, the defendant, and others, staged and created multiple music videos, produced by G.O.N.E. ENT a/k/a Gone Entertainment, for songs entitled "Front Door" and "Dinner Table." These music videos depict the defendant's association with others members and associates of the racketeering conspiracy.

d.  The defendant agrees that the enterprise engaged in the conduct of its affairs through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), and that such racketeering activity was committed either directly or indirectly by the defendant. The defendant agrees that the pattern of racketeering activity engaged in by the enterprise included the following acts, in addition to the acts set forth above:

i.  On or about June 27, 2010, co-defendant Marcel Worthy and Walter Davison a/k/a Matt, an associate of the racketeering

3

enterprise, were arrested pursuant to a Buffalo Police Department search warrant, wherein 22 bags of crack cocaine were recovered from 239 Carl Street, Buffalo, NY, a house controlled by co-defendant Aaron Hicks. Worthy and Davison possessed the crack cocaine with intent to distribute.

ii.   On or about December 18, 2010, co-defendants Aaron Hicks and Julio Contreras were arrested by Buffalo Police Department Officers and were in possession of approximately 669.5 grams of marijuana in the vicinity of 118 Courtland Avenue, Buffalo, NY, a house owned by co-defendant Letorrance Travis. Hicks and Contreras possessed the marijuana with the intent to distribute.

iii.  On or about February 18, 2014, co-defendant Aaron Hicks was arrested by the Buffalo Police Department after he had retrieved a UPS box containing approximately 33 pounds of marijuana sent by co-defendant Julio Contreras.   The package was delivered to 234 Stevens Street, Buffalo, NY, a house owned by Hicks.   Upon his arrest, Hicks was also in possession of approximately 16 grams of cocaine base. Hicks possessed the marijuana and cocaine base with the intent to distribute.

iv.   On or about November 6, 2011, co-defendant Letorrance Travis possessed drug ledgers for his cocaine distribution which showed that "RA", identified as the defendant, had obtained approximately 3.5 kilograms of cocaine on consignment from Travis. This amount is based on the parties' agreement that, during this time period, a kilogram of cocaine was selling for approximately $35,000. Specifically, the defendant agrees that one ledger contained a reference to "RA" owing Travis "12.0," or $12,000, and another contained references to "RA" owing Travis "70.0"or $70,000, and "32.0," or $32,000.

Except as otherwise noted, the defendant does not agree to the following facts:

e.   Starting in or before December 2010, co-defendant Julio Contreras supplied co-defendants Aaron Hicks and Letorrance Travis with marijuana and cocaine from South Texas. At times, co-defendant Marcel Worthy drove or rode with co-defendant Travis while Travis delivered kilogram quantities of cocaine. Co-defendants Hicks, Contreras, Travis and Worthy are convicted members of this racketeering conspiracy and participated in the affairs of the enterprise. Co-defendant Worthy also sold marijuana supplied by co-defendant Contreras to co-defendants Hicks and Travis. On or about November 6, 2011, law enforcement agents arrested co-defendant Travis and two representatives/couriers of co-defendant Contreras. Agents recovered

approximately 24 kilograms of cocaine from co-defendant Contreras that had been delivered to or were destined for the Schuele Boys enterprise in Buffalo.

f.    The government maintains that, based upon the Drug Conversion Tables in the 2016 United States Sentencing Guidelines Manual, the instant offense involved the equivalent of 59,444 kilograms of marijuana and that this amount could be readily proven by the government against the defendant as relevant conduct.  The defendant maintains that he is responsible for 2 kilograms, but less than 3.5 kilograms of cocaine as relevant conduct.

g.    On or about August 26, 2012, Schuele Boys associate Walter Davison a/k/a Matt was shot and killed in the vicinity of 253 Carl Street, Buffalo, New York.  Multiple members and associates of the Schuele Boys believed that Quincy Balance a/k/a Shooter, and D.H. killed Davison during a drug-related robbery.  On or about August 30, 2012, Balance and D.H. encountered co-defendant Aaron Hicks in the vicinity of Northland Avenue and Stevens Avenue.  The government maintains that while Balance and D.H. were speaking with Hicks, the defendant approached the group and discharged a firearm, striking and killing Balance and attempting to kill D.H.  The government maintains that the defendant intended to kill Balance and attempted to kill D.H. because he and the other Schuele Boys believed Balance and D.H. had killed Davison and wanted to retaliate. The government further maintains that the defendant committed the murder of Balance and the attempted murder of D.H. to further the conduct of the affairs of the enterprise through a pattern of racketeering activity.  The defendant disagrees that he intended to commit or participated in murder in furtherance of the racketeering conspiracy.

## III.    SENTENCING GUIDELINES

6.    The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

### Narcotics Distribution and Firearms Possession

7.      The government maintains that Guidelines §§ 2E1.1(a)(2), 2D1.1(b)(1), 2D1.1(a)(5), and 2D1.1(c)(2) apply to the offense of conviction and provide for a base offense level of **38**.  The defendant specifically reserves the right at the time of sentencing to argue to the Court that Guidelines §§ 2E1.1(a)(2), 2D1.1(a)(5), and 2D1.1(c)(7) should apply and that § 2D1.1(b)(1) should not apply, which would result in a base offense level of **26**.

### Murder and Attempted Murder

8.      The government maintains that Guidelines §§ 2E1.1(a)(2) and 2A1.1(a) apply to the August 30, 2012, murder of Quincy Balance, as set forth in paragraph 5(g), above, and provide for a base offense level of **43**.  The defendant specifically reserves the right at the time of sentencing to argue to the Court that he did not commit the murder of Balance and that this conduct should not apply to him as relevant conduct.

9.      The government maintains that Guidelines §§ 2E1.1(a)(2) and 2A2.1(a) apply to the August 30, 2012, attempted murder of D.H., as set forth in paragraph 5(g), above, and provide for a base offense level of **33**.  The defendant specifically reserves the right at the time of sentencing to argue to the Court that he did not commit the attempted murder of D.H. and that this conduct should not apply to him as relevant conduct.

## COMBINED ADJUSTED OFFENSE LEVEL

10.     Based on ¶¶ 7 through 9 of this agreement and Guidelines § 3D1.4, it is the understanding of the government that the defendant's combined adjusted base offense level is **44**, if the government's calculations apply, and **26**, if the defendant's calculations apply.

## ACCEPTANCE OF RESPONSIBILITY

11.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **41**, if the government's calculations apply, and **23**, if the defendant's calculations apply.

## CRIMINAL HISTORY CATEGORY

12.     It is the understanding of the government and the defendant that the defendant's criminal history category is V.  The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase.  The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13.     It is the understanding of the government that:

a.      If the government's calculations apply, with a total offense level of **41** and criminal history category of **V**, and taking into account the statutory maximum penalties, the defendant's sentencing range would be a term of imprisonment of **240 months**, a fine of **$50,000 to $250,000**, and a period of supervised release of **1 to 3 years**.

b.      If the defendant's calculations apply, with a total offense level of **23** and criminal history category of **V**, the defendant's sentencing range would be a term of imprisonment of **84 to 105 months**, a fine of **$20,000 to $200,000**, and a period of supervised release of **1 to 3 years**.

c.      Notwithstanding this, the defendant understands that at sentencing, the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

14.     Notwithstanding the above calculations, it is the agreement of the parties pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), the Court at the time of sentence impose a term of imprisonment between a range of **time served and 216 months** as part of the appropriate sentence in this case.  Time served is the amount of time the defendant has spent in custody from October 31, 2014 until sentencing in this matter.  The United States Probation Office will calculate the amount of time served in the Presentence Report.   If, after reviewing the presentence report, the Court rejects this agreement, the parties will be relieved of their other obligations under this agreement and the defendant shall then be afforded the opportunity to withdraw the plea of guilty.  This agreement does not affect the

amount of a fine or the length and conditions of a term of supervised release that may be imposed by the Court at sentencing.

15.     The government and the defendant reserve the right to recommend a sentence outside the applicable Sentencing Guidelines range but within the range of imprisonment set forth in ¶ 14.  This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

16.     The defendant understands that, except as set forth in ¶ 14, above, the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

17.     In the event that the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

IV.     **STATUTE OF LIMITATIONS**

18.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees not to assert the statute of limitations as a defense to any other federal criminal offense which is not time barred as of the date of this agreement.

This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.   REMOVAL

19.     The defendant represents that he is a citizen of the United States.  However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI.   GOVERNMENT RIGHTS AND OBLIGATIONS

20.     The defendant understands that the government has reserved the right to:

a.      provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.      respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.      advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment;

d.      modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e.      oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

21.     At sentencing, the government will move to dismiss the open counts of the Superseding Indictment, including the Special Sentencing Factor in Count 1, Paragraph 15, in this action as against the defendant.

22.     The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII.    APPEAL RIGHTS

23.     The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which is within or less than a term of imprisonment of **216 months**, a fine of **$50,000 to $250,000**, and a period of supervised release of **1 to 3 years**, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

24.     The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

25.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range of a term of imprisonment of **84 to 216 months**, a fine of **$20,000 to $200,000**, and a period of supervised release of **1 to 3 years** notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII.   FORFEITURE PROVISIONS

### Abandonment of Ammunition

26.     The defendant agrees to voluntarily abandon the following ammunition seized during the criminal investigation associated with this matter and waives any and all rights or interest which the defendant may possess in the ammunition or for which the defendant may have any claim.  The defendant specifically agrees to the voluntarily abandonment of the following items seized by law enforcement officers:

a.      Ten (10) rounds of assorted 9 mm ammunition seized on or about October 31, 2014, at 82 Girard Place, Buffalo, New York.


27.     The defendant agrees to waive any time restrictions, requirements, or any other applicable federal law, with respect to the abandonment of this property. The defendant further waives the provisions of 41 Code of Federal Regulations 128-48.102-1 and 41 Code of Federal Regulations 128-48.50 with respect to the abandonment of the ammunition and, if necessary, agrees to sign any and all documentation in order to assist the government in facilitating the abandonment of the said property.

28.     The defendant further understands that the United States and any law enforcement agency acting on behalf of the United States, may in its discretion, destroy the property referenced above.

29.     The defendant agrees that the ammunition is subject to abandonment and agrees to waive all statutory and constitutional rights, including but not limited to time restrictions and notice provisions with respect to the abandonment of the ammunition. The defendant agrees that he knowingly and voluntarily waives any right, title and interest in the ammunition and agrees not to contest the vesting of title in the United States Government.

30.     The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for abandonment and disposition of the ammunition survives and shall be given full force and effect.

## VII.   TOTAL AGREEMENT AND AFFIRMATIONS

31.   This plea agreement represents the total agreement between the defendant, RODERICK ARRINGTON a/k/a Ra Ra, and the government.  There are no promises made by anyone other than those contained in this agreement.  This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

<div style="margin-left: 40%;">

TRINI E. ROSS
United States Attorney
Western District of New York

BY: _____
      JEREMIAH E. LENIHAN
      Assistant United States Attorney

Dated:  April 20, 2023

</div>

I have read this agreement, which consists of pages 1 through 14. I have had a full opportunity to discuss this agreement with my attorney, Mark Foti, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
RODERICK ARRINGTON
a/k/a Ra Ra
Defendant

Dated: April 20 , 2023

_____
MARK FOTI, ESQ.
Attorney for the Defendant

Dated: April 20 , 2023